UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------- X
                        :

CLEAR CHANNEL OUTDOOR, LLC,    :

             *Plaintiff*,    :

    v.    :   Case No. _____

CITY OF NEW ROCHELLE; LUIZ    :   **JURY TRIAL DEMANDED**
ARAGON, *in his official capacity as*
*Commissioner of Development*; *and*   :
PAUL VACCA, *in his official capacity*
*as Building Official*,    :

             *Defendants*.    :

-------------------------------------------------- X

## <u>COMPLAINT</u>

Plaintiff Clear Channel Outdoor, LLC ("Clear Channel"), by and through its undersigned

attorneys, brings this action against the City of New Rochelle ("New Rochelle" or the "City"),

Luiz Aragon, and Paul Vacca, and alleges as follows:

1.     Clear Channel owns and operates sixteen billboards within New Rochelle,

including six highly profitable billboards along Interstate 95 ("I-95"). Clear Channel and its

corporate predecessors have invested tens of millions of dollars in building, maintaining, and

operating these billboards, and those investments have returned significant gains for local

landowners, local businesses, and the City's tax base.

2.     Over the past two decades, New Rochelle has waged an unlawful campaign to

take Clear Channel's billboards without due process or just compensation, to tailor its local

billboard ordinances to favor certain speakers over others, to interfere with property rights for

purely private pecuniary reasons, and now to threaten hundreds of millions of dollars in facially

unreasonable and coercive fines to prevent Clear Channel from enforcing its rights.

3.      In the late 1990s, New Rochelle enacted an ordinance prohibiting all billboards in the city.  Clear Channel's corporate predecessor and other out-of-home media companies sued; the parties resolved the suit in 2000 with a settlement agreement that allowed Clear Channel to build new signs within New Rochelle, including up to nine signs along I-95, and granted all of Clear Channel's billboards immunity through the end of 2020 from any local ordinance requiring removal of the billboards.  In exchange, Clear Channel agreed to dismiss its claims and to remove certain billboards within the City.  This agreement is memorialized in a settlement agreement (the "Stipulation"), which is attached hereto as **Exhibit A**.

4.      The Stipulation's immunity period is nearing its conclusion, and New Rochelle has ordered Clear Channel to take down every single billboard it owns within the City as of December 31, 2020.  In support of this sweeping action, New Rochelle has invoked an ordinance that unconstitutionally restricts speech, that is contrary to federal and state law, and that, in all events, on its face does not even apply to all of Clear Channel's billboards.  The City has steadfastly refused to provide Clear Channel with any clear notice of the bases for its lawless command and has refused to grant Clear Channel a hearing to present evidence or argument in opposition to the removal order.  Finally, in violation of federal law, state law, and the Stipulation, the City has refused to pay Clear Channel just compensation for the taking of its property.

5.      In ordering Clear Channel to remove its signs, the City is not seeking to advance any legitimate public interest in safety or aesthetics relating to Clear Channel's billboards. Rather, the City wants to remove Clear Channel's signs to allow it to award Clear Channel's licenses to operate billboards on I-95 to a different outdoor advertising company that has agreed to pay the City millions of dollars for the exclusive right to operate billboards in New Rochelle.

Indeed, the City has stated publicly that Clear Channel's billboards may remain in place, provided Clear Channel transfers ownership to the City's preferred provider.

6.      For months, Clear Channel has attempted to present its concerns to the City.  The City, however, has rejected Clear Channel's multiple requests for a hearing.  Instead, the City Council adopted new and unconstitutionally excessive fines against both Clear Channel and its landlords that could, together, reach as high as nearly a *quarter billion dollars* per year—and did so for the express purpose of forcing Clear Channel into abandoning its legal rights and complying with the City's unlawful removal orders.  This transparent attempt to retaliate against Clear Channel for standing on its constitutional, statutory, and contractual rights has left Clear Channel with no alternative but to seek relief from this Court.

## PARTIES, JURISDICTION & VENUE

7.      Clear Channel is a limited liability company formed under the laws of the State of Delaware with its principal place of business in San Antonio, Texas.  Clear Channel is the successor-in-interest to Universal Outdoor, Inc.

8.      New Rochelle is a body politic and municipal corporation located in and organized pursuant to the laws of the State of New York.  New Rochelle is empowered to sue and be sued.  *See* City of New Rochelle Charter ("Charter") art. 1, §1.

9.      Luiz Aragon is the Commissioner of Development for the City, and in that capacity, manages all aspects of the Department of Development, including enforcement of the City's building, zoning, and billboard ordinances.  Charter § 76.00.  Commissioner Aragon is sued in his official capacity.

10.     Paul Vacca is the Building Official for the City, and in that capacity, is responsible for enforcing various provisions of the New Rochelle Code, including New Rochelle Code § 270-16.  *See* New Rochelle Code § 130-10.  Mr. Vacca is sued in his official capacity.

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because certain of Clear Channel's claims arise under the Constitution and laws of the United States.

12.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, because the parties are citizens of different states and the amount in controversy exceeds $75,000.

13.     This Court has subject matter jurisdiction over Clear Channel's state-law claims pursuant to 28 U.S.C. § 1367, because those claims form part of the same case or controversy as Clear Channel's claims arising under federal law.

14.     This Court also has retained subject matter jurisdiction to enforce a Stipulation entered into between Clear Channel and the City on or around October 16, 2000.

15.     This Court has personal jurisdiction over all Defendants because, upon information and belief, each Defendant is a resident of the forum State and because this action arises out of each Defendant's actions or omission within the forum State.

16.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (2).

## GENERAL ALLEGATIONS

I.  **Legal Framework**

A.     **The Takings Clause of the United States Constitution**

17.     The Takings Clause of the Fifth Amendment to the U.S. Constitution prohibits the government from taking private property, unless that taking is effected for a public purpose and unless the government provides just compensation.

18.     The Takings Clause is incorporated against the States and local governments by the Fourteenth Amendment.

19.     The obligation to provide just compensation for a taking attaches the moment the government renders a final decision authorizing the taking.

20.     The Fifth Amendment's Taking Clause applies not only to physical dispossession of property, but also prohibits regulatory takings effected without just compensation.

21.     A categorical regulatory taking occurs when the government enacts a regulation that deprives an owner of all economically viable uses of their property.  A non-categorical regulatory taking occurs when the government's regulations impose a high economic impact on the regulated party, thereby interfering with the party's investment-backed expectations.

22.     The government owes just compensation to a property owner whenever the government's physical appropriation or regulation of property gives rise to a taking, regardless of whether the government acts through a physical taking, a categorical regulatory taking, or a non-categorical regulatory taking.

23.     Billboards are a well-recognized form of property protected by the Fifth Amendment against physical or regulatory taking.  Any state or local government that takes a billboard—whether physically or through a regulatory measure requiring their removal—must pay just compensation for the value of the billboard.

24.     In determining just compensation for a billboard taking, courts typically assess the fair market value of the billboard (*i.e.*, what a willing buyer would pay a willing seller) on the date of the taking.

**B.      The Federal Highway Beautification Act**

25.      In 1965, Congress enacted the Highway Beautification Act ("HBA") to "promote
the safety and recreational value of public travel, and to preserve natural beauty."  23 U.S.C.
§ 131(a).

26.      To effectuate these goals, the HBA requires states, through their localities, to
maintain "effective control" of all outdoor advertising devices (namely, billboards) located
within 660 feet of any road comprising part of the National Highway System ("NHS").  23
U.S.C. § 131(c), (t).  The HBA defines certain minimal standards for regulating the size,
location, concentration, format, and other features that states must implement to satisfy the
requirement of effective control.

27.      The NHS comprises the entire Eisenhower Interstate Highway System,
commercially and strategically significant highways, and additional urban and rural principal
arterial routes.  *See* 23 U.S.C. § 103.  Several NHS routes cross New Rochelle, including I-95,
U.S. 1 (Main Street), and North Avenue.  A map generated from the Federal Highway
Administration's website depicting NHS routes in and around New Rochelle is set forth below:



28.      As originally enacted, the HBA required States to provide just compensation for
the taking of any billboard that had been lawfully erected under State law but that became

nonconforming under the HBA.  23 U.S.C. § 131(g).  Under the HBA, the federal government is responsible for paying 75 percent of the just compensation for any signs taken to implement the billboard restrictions of the HBA.  23 U.S.C.§ 131(g).  The state pays the remaining 25 percent.

29.    In 1978, Congress amended the HBA to authorize state and local governments to "impos[e] stricter limitations" than those contained in the HBA.  23 U.S.C. § 131(k).  However, to protect the vested property interests of sign owners along the NHS, the amendments extended the just compensation requirement to any state or local law requiring the removal of a billboard. 23 U.S.C. § 131(g), (k).

30.    These amendments were added to reign in States that had pursued a more aggressive billboard abatement policy without providing sign owners just compensation.

31.    The HBA is an exercise of Congress' authority under the Spending Clause, and is enforced through reductions in federal highway funding.  If a State fails to maintain effective control, including if the State or a municipality orders the removal of a billboard subject to the HBA without just compensation, the HBA empowers the Secretary of Transportation to revoke 10% of the State's federal highway funds.  23 U.S.C. § 131(a).  In fiscal year 2021, the Federal Highway Authority has apportioned over $1.8 billion in federal highway funding for the State of New York.  *See* U.S. Dep't of Transportation, Federal Highway Administration, *Apportionment of Federal-Aid Highway Program Funds for Fiscal Year 2021* (Notice 4510.847) (Oct. 9, 2020). This means that, if the State fails to maintain effective control of advertising within the territorial jurisdiction of the HBA, it stands to lose over $180 million in critical funding.

## C.    The Federal-State Agreement & Section 88

32.    To achieve effective control, the HBA requires each State to enter into and abide by a "Federal-State Agreement" ("FSA") with the U.S. Department of Transportation.  An FSA memorializes a state's obligations under the HBA and provides clear, objective standards for

determining each State's compliance.  Among other provisions, each state's FSA must commit the state to paying just compensation when required to do so by the HBA.

33.     In 1968, New York entered into an FSA with the Department of Transportation. New York's obligations under the FSA are codified at New York Highway Law § 88 ("Section 88").

34.     The New York FSA, like the HBA itself, applies to all billboards and other advertising displays "within six hundred sixty feet of the nearest edge of the right of way and visible from the main traveled way of the" NHS.  *Id.* § 88(2).

35.     Implementing the FSA, Section 88 requires the State to pay compensation for "the taking from the owner of [an outdoor advertising] sign, display or device of all right, title, leasehold and interest in such sign, display or device," if the locality has fewer than one million inhabitants.  *Id.* § 88(7).  This just compensation applies to any sign in the State "in a commercial or industrial zone or area which is controlled pursuant to" the FSA.  *Id.*

36.     Under the original version of Section 88, courts permitted the State to compensate billboard owners for the taking of their billboards by providing a "reasonable amortization period" to the owners before the removal order was effectuated, instead of paying just compensation, even though denying just compensation in this manner would violate the HBA and FSA, and would thus jeopardize the State's highway funding.

37.     In 1989, The New York legislature abrogated that rule when it amended Section 88 to conform to the State's obligations under the FSA (the "1989 Amendments").  The 1989 Amendments made clear that municipalities must provide just compensation (*i.e.*, cash payment), not amortization, for the removal of a billboard subject to the HBA and New York FSA *or* in an

area zoned commercial or industrial, and that just compensation must be determined in accordance with Article V of New York's Eminent Domain Procedure Law ("EDPL").

38.    Additionally, the 1989 Amendments impose a requirement that a municipality must pay just compensation *before* it can require the billboard's removal.  Payment of just compensation is a *condition precedent* to removal of a sign, and not merely a post-deprivation remedy for the taking.

39.    The 1989 Amendments, and particularly the requirement that compensation precede removal of a billboard, serve a critical state interest by ensuring that a rogue municipality could not jeopardize the State's ability to maintain "effective control" over outdoor signage as required by federal law.

### D.    The Amortization Statute

40.    New York has adopted a statute that constrains municipalities' ability to order the removal of billboards.  That statute provides that, if any local ordinance "require[s] the removal of any legally erected and maintained billboard or like outdoor advertising device," the municipality must either (1) pay "just compensation … in accordance with the provisions of article five of the eminent domain procedure law" or (2) grant the billboard an amortization period of up to three to ten years, depending on the fair market value of the billboard.  N.Y. Gen. Mun. Law § 74-c (the "Amortization Statute").

41.    Amortization statutes, such as New York's, purport to excuse the government's obligation to pay just compensation for the removal of a billboard.  By providing a period of time in which the billboard can operate out of compliance with the ordinance, the theory goes, the owner is able to recoup the value of his investment in constructing and operating the billboard.

42.    No court—federal or state—has ever ruled that the New York Amortization Statute comports with the Fifth Amendment.

43.    The New York Amortization Statute includes three important limitations.

44.    *First*, amortization is not available for billboards located in areas that are zoned industrial or manufacturing.  Billboards in such zoning areas can be removed only upon payment of just compensation determined under Article V of the EDPL.  N.Y. Gen. Mun. Law § 74-c(1).

45.    *Second*, the Amortization Statute does not apply to billboards subject to the HBA and FSA.  N.Y. Gen. Mun. Law § 74-c(2).  Rather, because the HBA and Section expressly require compensation (not amortization), the Amortization Statute expressly does not reach any billboard for which "compensation therefor is provided pursuant to section eighty-eight of the highway law."  The State of New York, in a manual advising municipalities on billboard regulation, emphasizes this important point:  "Amortization is not permitted for signs along primary, National Highway System and Interstate Highways controlled by the Department of Transportation."  Division of Local Government Services, *Municipal Control of Signs: James A. Coon Local Gov't Technical Series*, State of New York (rev. 2015), *available at* https://tinyurl.com/y3gatqrp.

46.    *Third*, the Amortization Statute is not a self-effecting grant of authority to remove any billboards.  Rather, amortization is a permissible remedy only if neither of the two preceding restrictions applies, *and* the municipality has enacted a "local law, ordinance[,] or resolution" requiring the removal of previously lawful billboards.  Where a municipality seeks the removal of a billboard not subject to a local law, ordinance or resolution requiring its removal, the municipality must commence condemnation proceedings under the EDPL.

**E.    New York Eminent Domain Procedure Law**

47.    The EDPL regulates the process by which the State or a municipality may take private property for a public purpose.

48.     This process is designed to ensure an adequate forum both to determine whether the taking is lawful and to calculate just compensation for the taking.

49.     A municipality can require the removal of a billboard in one of two ways:  either by enacting an ordinance or by implementing the more onerous procedures required by Article II of the EDPL.

50.     Under the first option, a municipality may enact an ordinance requiring the removal of billboards from all or certain parts of the municipality.  In such cases, the billboard owner is entitled to a hearing on whether the ordinance is lawful and applicable to the subject billboards.  In addition, unless the Amortization Statute applies and is satisfied, the municipality must determine just compensation for any affected billboard pursuant to Article V of the EDPL.  Section 88 expressly incorporates the provisions of Article V, providing that, before any sign subject to the HBA, the FSA, or "in a commercial or industrial zone or area" may be "removed, or required to be removed," the municipality must *first* determine and pay "compensation in accordance with the provisions of article five of the eminent domain procedure law."  N.Y. Hwy. L. § 88(7).

51.     To comply with the procedural requirements of Article V, a municipality must serve notice upon any person or company whose billboard is being required to be removed.  EDPL § 502(B).  This notice must be provided within 30 days of the decision to order the billboard's removal.  *Id.* Upon receiving formal notice that a municipality is requiring the removal of a billboard, the billboard owner is entitled to file a claim for compensation with a court having jurisdiction over the taking.  *Id.* § 503(B).  After the court hears evidence from both the municipality and the billboard owner, the court determines the just compensation required for the taking and enters final judgment.  *Id.* §§ 512, 513.  This is a final, appealable order.

52.     Alternatively, where a municipality has not enacted a billboard removal ordinance or where the ordinance does not apply to the particular billboards the municipality wishes to remove, the EDPL requires the municipality to satisfy additional procedural steps to determine whether the municipality may effectuate the removal.

53.     In particular, Article II of the EDPL requires the municipality to serve notice and hold public hearings in order to determine whether the taking is for a public purpose.  EDPL § 201.  Such notice must be provided at least ten days (and no more than thirty days) before the public hearing and shall be included in "at least five successive issues of an official daily newspaper," or if there is no daily newspaper, at least two successive issues of a weekly newspaper.  EDPL § 202.

54.     At the public hearing, the municipality must outline the purpose, proposed location or alternate locations of the public project, and any other information it considers pertinent, including maps and property descriptions of the property to be acquired and adjacent parcels.  Any person in attendance must also be permitted to offer statements, arguments, or evidence for or against the condemnation.  EDPL § 203.

55.     Within ninety days of the public hearing, the municipality must make and publish a synopsis of its determination whether to condemn the property.  Those findings must include a determination that the taking is being made for an identified public use or benefit.  EDPL § 204.

56.     An aggrieved billboard owner is entitled to judicial review of the municipality's determination to condemn the property.  EDPL § 207.  The municipality may seek title to the billboard only after the court has resolved the billboard owner's challenge to the public purpose of the taking in the municipality's favor.  EDPL § 401.

57.     The municipality must take the additional step of initiating a second legal proceeding seeking title to the billboard it wishes to take.  EDPL §§ 401–02.  And the billboard owner is entitled to an opportunity to be heard in order to contest the vesting proceeding.  EDPL § 402(B)(4).

58.     Once these processes are complete, the municipality must still comply with the compensation provisions of Article V, as described above.

### F.     New Rochelle's Billboard Ordinance and Prior Litigation

59.     In or about 1996, New Rochelle adopted an ordinance that prohibited any "sign for a business, profession, activity (commercial or noncommercial), commodity or service not on the premises where the sign is located."  This ordinance operated as a total ban on "off-premises" advertising within the City, but did not include any comparable prohibitions for on-premise advertising.[1]

60.     In June 1998, several out-of-home advertising companies, including Universal Outdoor, Inc., filed suit in this District challenging the constitutionality of the ordinance under the  First, Fifth, and Fourteen Amendments.

61.     Clear Channel acquired Universal Outdoor shortly after that suit was filed.

62.     The parties resolved the litigation in 2000 through the Stipulation.

63.     The Stipulation permitted the advertising companies to build up to nine new billboards within the I-95 Corridor, which the Stipulation defined as land within 100 feet of the I-95 right-of-way.  Ex.  A ¶¶ 1(j), 5.  The City agreed to use its "best effort in good faith" to ensure that the plaintiffs could obtain all necessary regulatory approval for the new I-95

---

[1] An "off-premise" sign "advertises products or services that are not sold, produced, manufactured or furnished on the property where the sign is located."  An "on-premise" sign "advertises products or services that are sold, produced, manufactured or furnished on the property where the sign is located."  *See* OOOA, OOH Glossary of Terms, https://oaaa.org/AboutOOH/OOHBasics/OOHGlossaryofTerms.aspx#i..

billboards.  *Id.* ¶ 4.  In exchange, the plaintiffs agreed to remove certain billboards in the City according to a three-phase schedule that was partially dependent on the timing of the approval of new I-95 billboards.

64.    The Stipulation also exempted all remaining and newly authorized billboards (the "Remaining Billboards") from certain City laws.  Specifically, this immunity provision exempted the Remaining Billboards from "any provision in or amendment to the Billboard Ordinance or any other code, rule, or regulation of the City requiring the removal of such Billboards, either immediately or with the passage of time, other than a provision or amendment which provides for just compensation pursuant to the New York Eminent Domain Procedure Law."  *Id.* ¶ 10.

65.    The immunity period "expire[s] on December 31, 2020, at which time all Billboards covered by th[e] Stipulation shall become subject to all City codes, rules and regulations then in effect."  *Id.*

66.    Concurrently, the Stipulation preserved Clear Channel's right to challenge any such code, rule, or regulation upon expiration of the immunity period.  The parties agreed that neither the dismissal of the lawsuit pursuant to the Stipulation nor the statutes of limitations would preclude such future challenges.  *Id.*

67.    The Stipulation was filed on this Court's docket on October 16, 2000, and approved by the presiding judge.  Under the terms of the Stipulation, the Court retained jurisdiction to enter an order "enforc[ing] th[e] Stipulation," and to "provide for such other equitable and legal relief as the Court may deem just and proper."  *Id.* ¶ 17.

68.    On March 20, 2001, New Rochelle again amended its billboard ordinance by repealing the total and permanent prohibition of off-premise advertising within the City.  Under

the revised ordinance, the City declared that all off-premise billboards then in existence (*i.e.*, "on March 20, 2001") "may remain in existence until and shall be removed on or before … December 31, 2020." New Rochelle Code § 270-16 (the "Billboard Ordinance").

69.    This revised Billboard Ordinance does not apply to billboards erected after March 20, 2001, and did not prohibit new billboards from being built within the City. Also, like its predecessor, the current billboard ordinance contains no corresponding prohibition of on-premise advertising.

70.    The New Rochelle Billboard Ordinance remained substantively unchanged until September 22, 2020. After Clear Channel disputed the City's authority to require Clear Channel to remove all of its billboards in New Rochelle and requested a hearing, the City rushed through the Council an amendment to the Billboard Ordinance for the express and exclusive purpose of giving Clear Channel "more of an incentive to comply" with the City's removal order. The amendment was proposed at the September 16, 2020, Committee of the Whole meeting of the City Council and approved at the Council's next legislative meeting the following week.

71.    The amendment instructs the Building Officer to enforce a new escalating fine structure, set forth below in Table 1, of up to $10,000 per day per advertisement left posted after December 31, 2020, and an additional fine of up to $10,000 per day for each advertising structure left standing after December 31, 2020. These fines apply to both the billboard owner and the property owner, meaning that the City could impose fines of up to $40,000 per day for every billboard and structure on Clear Channel and its landlords.

**Table 1**

| Daily Fines | Advertisement | Structure | Total[2] |
|---|---|---|---|
| Day 1–14 | $0 | $0 | $0 |
| Day 15–Month 6 | $250 | $0 | $250 |
| Month 6–12 | $500 | $500 | $1,000 |
| Year 1–2 | $1,000 | $1,000 | $2,000 |
| Year 2+ | $10,000 | $10,000 | $20,000 |

72.     The escalating fine structure is cumulative and applies back to the day of the original notice of violation.  In other words, while the fine for not removing an advertisement is $0 for the first 14 days, on day 15, the Billboard Ordinance imposes a fine of $250 for that one day and $250 per day ($3,500 total) for the preceding 14 days.  Likewise, on day 181, the daily fine for leaving an advertisement posted escalates to $500, and the fines for days 1–180 would be retroactively increased to $500 as well.

73.     The maximum penalty of $10,000 was not part of the initial legislation. Commissioner Aragon initially proposed penalties of just $250 per day, but the Mayor of New Rochelle asked Commissioner Aragon to revise the fines to make them "more stringent" and give them "more teeth," even though Commissioner Aragon testified that a $250 per day fine was reasonable.

74.     The amendment to the Billboard Ordinance imposing a new fine structure has not yet been added to the City's official Code.  A copy of the legislation amending the Billboard Ordinance is therefore attached as **Exhibit B**.

---

[2] This column reflects the daily fine that can be assessed against Clear Channel; under the ordinance, equal fines can be assessed against Clear Channel's landlords.

II.    **Factual Background**

A.    **Clear Channel's Billboards in New Rochelle**

75.    Clear Channel is one of the largest outdoor advertising companies in the New York region.  Clear Channel operates over 1,600 advertising displays across 22 counties, including large-format billboards along I-95, the Long Island Expressway, the Cross Bronx Expressway, and other major arterials.

76.    Sixteen of these billboard structures are located within New Rochelle.  Of those sixteen billboard structures, six (carrying nine display faces) are within the I-95 corridor and therefore subject to the HBA and FSA.  An additional six structures (with ten faces total) are located on Main Street or North Avenue in New Rochelle, which are both part of the NHS, and are therefore also subject to the HBA and FSA.

77.    Clear Channel's full billboards inventory in New Rochelle is set forth in Table 2 below:

**Table 2**

| Lease No. | Address | Date Built/ Expanded | HBA? (Y/N) | Zoning[3] |
|---|---|---|---|---|
| 005225780 | 609-611 Main St. | Pre-2001 | Y | Commercial (DO-2) |
| 005304030 | 66 Beechwood Ave. | Pre-2001 | Y (I-95) | Light Industry |
| 005019530 | 727 Main St. | Pre-2001 | Y | Commercial (NB) |
| 005001240 | 4 Pleasant St. | Post-2001 | Y (I-95) | Industrial |

---

[3] New Rochelle uses a variety of labels for commercial, industrial, and manufacturing areas.  This chart therefore describes the areas that are commercial, industrial, and manufacturing in nature, and provides the specific zoning code in parentheses.

| Lease No. | Address | Date Built/ Expanded | HBA? (Y/N) | Zoning[3] |
|---|---|---|---|---|
| | | | | (Railroad) |
| 005002400 | 30 Grove Ave. | Post-2001 | Y (I-95) | Light Industry |
| 005000610 | 78 Crescent Ave. | Post-2001 | Y (I-95) | Light Industry (CUL) |
| 005015950 | 691 West Main St. | Pre-2001 | Y | Commercial (NB) |
| 005024100 | 81 Rockdale Ave. | Post-2001 | Y (I-95) | Light Industry |
| 005304000 | 342-344 North Ave. | Pre-2001 | Y | Commercial (DB) |
| 005017250 | 831 Main St. | Pre-2001 | Y | Light Industry |
| 005019890 | 20 Kings Hwy. | Pre-2001 | N | Light Industry |
| 005018440 | 484 North Ave | Pre-2001 | Y | Commercial (DO-6) |
| 005024010 | 21 Cottage Pl. | Post-2001 | Y (I-95) | Light Industry (CUL ) |
| 005018430 | 224 Union Ave. | Pre-2001 | N | Commercial (NB) |
| 005000000 | Potter Av ES 45ft S/O Fifth Av F/S – 1 | Pre-2001 | N | Commercial (FA) |
| CBSO-C | Kings Hwy SS 0.1mi N/O Rt 1 W Main St F/E - 1 | Pre-2001 | N | Light Industry |

78.     Clear Channel owns every billboard structure it operates in New Rochelle, along with the associated permits.  Each billboard stands on property leased from a landowner, subject to a long-term, renewable lease.

79.     Under New York Law, Clear Channel's billboards are treated and taxed as real property.

80.     Clear Channel also owns state-issued billboard permits for each billboard.

81.     At least five of Clear Channel's six billboards along the I-95 Corridor were built or expanded after March 20, 2001.

82.     Clear Channel's billboards in New Rochelle generate approximately $1.8 million in annual revenue.

83.     The most valuable of these billboards—in terms of both revenue and impressions[4]—are the six billboard structures located on the I-95 corridor.  Advertisers pay a premium for space on interstate billboards, both because of the number of impressions these signs generate and because advertisers can build a campaign around interstate billboards to reach a large segment of the commuting and traveling public.  In addition, under New York State law, only nine billboard structures in total may be erected along the New Rochelle portion of I-95.  N.Y. Pub. Auth. Law § 361-a(4)(d).  The fair market value of these billboards, therefore, is significant, because premiere advertising on I-95 has both a high demand and a low supply.

84.     This combination of high demand and low supply significantly increases the value of these signs.  In fact, they are among the most valuable billboards in the region because of these economic factors.

---

[4] "Impression" is an outdoor advertising metric that measures "[t]he total number of times people are likely to notice an ad on an [out of home] display."  *See OOH Glossary of Terms*, *supra* note 1.

85.     Clear Channel's billboards along I-95 are also particularly valuable because, if they are removed, they cannot be rebuilt.  Under State law, billboards along the New Rochelle portion of I-95 are permitted only if, *inter alia*, there were built pursuant to the Stipulation.  *See* N.Y. Pub. Auth. Law § 361-1(4)(d).  Thus, the City cannot lawfully permit any entity, including Clear Channel, to build new billboards on I-95.

### B.     New Rochelle 2016 Requests Proposals to Build New Billboards on I-95

86.     In August 2016, notwithstanding the limitations of N.Y. Public Authority Law § 361-a(4)(d), the City requested proposals for a City-wide Advertising Program, which included the right to build nine new billboards along I-95 (the "Billboard Contract").  According to the Request for Proposals ("RFP"), three of these billboards would become operational immediately, whereas the other six would become operational on or after January 1, 2021.  The RFP contemplated awarding a 20-year contract to the winning bidder.  As part of the RFP, the City instructed interested bidders to propose a percentage of revenue that the bidder would share with the City for the exclusive privilege of operating outdoor advertising in the City.

87.     Upon information and belief, the City has never before had a City-wide Advertising Program that conditioned the right to operate outdoor advertising in the City on revenue share payments to the City.

88.     Clear Channel currently owns six of the I-95 billboards.  Clear Channel does not pay a percentage of revenue to the City.

89.     In an attempt to preserve its right to operate its I-95 billboards without engaging in litigation, Clear Channel submitted a competitive bid to the City for the Billboard Contract.  Clear Channel did so without relinquishing any of its rights under the Stipulation or generally applicable provisions of law.

90.     Through the RFP process, the City stated that the winning bidder could operate existing billboards under the Billboard Contract, "assuming [the] incumbents will sell."

91.     In late 2016, New Rochelle awarded the Billboard Contract to a competing outdoor advertising company, not Clear Channel.  The winning bid promised to pay the City $100,000, as well as 50% of its gross revenue derived from the Billboard Contract.  It also promised to pay the City $225,000 for each digital billboard face constructed under the Billboard Contract and $75,000 for each static billboard face.

92.     The City's award of permission to a company other than Clear Channel to erect new signs along I-95 was in violation of State law, which provides that new billboard structures may be permitted along that roadway only where the new sign was the "subject of a United States District Court settlement order regarding the regulations of such signs within" New Rochelle.  N.Y. Pub. Auth. Law § 361-1(4)(d).  Whereas Clear Channel's I-95 billboard structures met this requirement, the City's newly authorized signs would not.

93.     To date, the winning bidder has built three new billboards on I-95 in New Rochelle and, on information and belief, it plans to build the remaining six as soon as Clear Channel's signs are removed.

**C.     New Rochelle's Enforcement of the Billboard Ordinance**

94.     On or about September 21, 2020, the City informed Clear Channel that it would be required to remove all of its billboards within the City by December 31, 2020.  This decision was communicated telephonically by Defendant Aragon to Clear Channel's New York Real Estate Manager.  To Clear Channel's knowledge, the City has never delivered to Clear Channel any official notice or formal determination supporting the City's decision to require removal of Clear Channel's billboards, nor has the City articulated any basis at all for ordering the removal

of billboards erected after March 20, 2001, or what public purpose is advanced by the removal order.

95.    Clear Channel has asked the City for a hearing on its determination to require removal of the billboards, but those requests have been either denied or ignored.  Instead, Defendant Aragon, the City's Commissioner of Development, informed Clear Channel that the decision was final, that the decision did not require further action by the City Council or any other entity, and that the City would begin imposing daily fines against Clear Channel and its landlords after December 31, 2020.

96.    Defendant Aragon has further stated publicly that "any billboard anywhere in the city will have to come down" on or before December 31, 2020.

97.    The City has also denied that it has any obligation to pay Clear Channel just compensation for the forced removal of its billboards, and has stated publicly that it believes "[t]here is no compensation due per the legislation passed on this matter."  The City has never specified what legislation it is referring to, but upon information and belief, Clear Channel interprets this as a reference to the Amortization Statute.

98.    Upon learning that Clear Channel disputed the City's authority to require removal of its billboards, rather than give Clear Channel a hearing, the City instead amended the Billboard Ordinance to impose exorbitant fees on any billboard left standing after December 31, 2020.  As described above, the fine schedule imposes escalating fines on both the advertisement itself and the billboard structure, and applies against both the billboard owner and the landowner.  Under this escalating fine structure, Clear Channel would face maximum penalties of over $116 million per year for its sixteen billboards.  Combined with the fines that could be imposed on landlords, the fines could reach nearly a *quarter billion dollars* every year.

99.     The City has admitted that it adopted this coercive fine structure to target and coerce Clear Channel into giving up its legal rights.  The maximum fine was increased 40-fold at the request of the Mayor, who praised the increase as giving Clear Channel "an incentive to comply" with the City's unlawful order.

100.     In a final attempt to resolve this dispute without litigation, on October 8, 2020, Clear Channel, through counsel, sent a letter to Commissioner Aragon and the Corporation Counsel laying out the claims pleaded below and requesting the City to provide a hearing, or at a minimum clear notice, of the contents and bases for its order.  Given the urgency of the matter, Clear Channel requested a response no later than October 16, 2020.  The City did not respond by that date.

101.     On October 19, 2020, the City replied to Clear Channel's letter through counsel, stating that the City would provide a response by November 6, 2020.  The response did not address the substance of any of Clear Channel's concerns, nor did it provide any of the information Clear Channel requested.

102.     Clear Channel's counsel sent a response, expressing disappointment that the City was requiring nearly a month to craft a response and inquiring "whether the City plans to respond substantively, providing the information [Clear Channel has] requested."    The City's counsel did not respond to that inquiry.

## CAUSES OF ACTION

### COUNT I
### Takings Clause: Lack of Public Purpose
### U.S. Const. amends. V & XIV; 42 U.S.C. § 1983

103.     Clear Channel incorporates the preceding paragraphs as though fully set forth herein.

104.     The City has ordered Clear Channel to remove from the City billboards that Clear Channel owns located on I-95.

105.     Defendants are acting under color of state law.

106.     The City has not issued this order in furtherance of a legitimate public purpose. Rather, the City's true purpose is to effectively transfer Clear Channel's entitlement under state lae to operate advertisements on I-95 from Clear Channel to a different private entity to financially enrich that entity.  This determination to take private property to favor one private actor over another lacks a valid public purpose.

107.     The City's conduct constitutes an unlawful taking and Clear Channel will be injured by the removal of its billboards in the City.

108.     Clear Channel is therefore entitled to the relief prayed for below.

**COUNT II**
**Takings Clause:  Just Compensation**
**U.S. Const. amends. V & XIV; 42 U.S.C. § 1983**

109.     Clear Channel incorporates the preceding paragraphs as if fully set forth herein.

110.     Clear Chanel's billboards are real property protected from an uncompensated taking under the Fifth Amendment, which is made applicable to state and local governments through the Fourteenth Amendment.

111.     State law separately also protects Clear Channel against an uncompensated taking of its billboards.

112.     If allowed to proceed, the City's enforcement of the Billboard Ordinance would both require the physical removal of Clear Channel's property and deprive Clear Channel of all economic value in its property.  The City's order requiring Clear Channel to take down its billboards thus effectuates a taking.  Clear Channel is therefore entitled to just compensation for the taking of its billboards.

113.    The Fifth Amendment requires payment of just compensation.

114.    The City has not provided compensation to Clear Channel and has refused to initiate a proceeding by which just compensation could be determined.

115.    Even if amortization were an acceptable substitute for just compensation for some or all of Clear Channel's billboards—and it is not—the City has not provided a valid amortization period for the billboards.

116.    Clear Channel will be injured by the removal of its billboards in the City without just compensation.

117.    Clear Channel is therefore entitled to the relief prayed for below.

**COUNT III**
**Deprivation of Due Process:  Notice and a Hearing**
**U.S. Const. amend. XIV; 42 U.S.C. § 1983**

118.    Clear Channel incorporates the preceding paragraphs as though fully set forth herein.

119.    At a minimum, due process requires the City to provide Clear Channel with notice and an opportunity to be heard before a neutral arbiter before it can deprive Clear Channel of its property.

120.    The City has failed to provide Clear Channel with any of the basic elements of due process.  In particular, the City has not provided Clear Channel with clear notice of the basis for the order of removal or an opportunity to be heard on why the order is unconstitutional, contrary to federal and state law, and unsupported by the Billboard Ordinance.

121.    Clear Channel was informed of the City's decision to order the removal of its billboards through a phone call from Defendant Aragon.  Neither the City nor Defendant Aragon has provided written notice of the City's decision, has explained the legal bases for the City's decision in any medium, or has permitted Clear Channel a hearing to challenge the decision.

25

122.     Defendant Aragon is not a neutral arbiter but rather represents the City, which is effectuating the taking and which stands to profit financially from an uncompensated taking.

123.     The deprivation of process, including lack of proper notice or a hearing, was prejudicial to Clear Channel, which will suffer injury if its billboards are ordered removed without notice and a hearing before a neutral arbiter.

124.     Clear Channel is therefore entitled to the relief prayed for below.

**COUNT IV**
**Deprivation of Due Process:  Failure to Provide Required Procedures**
**U.S. Const. amend. XIV; 42 U.S.C. § 1983**

125.     Clear Channel incorporates the preceding paragraphs as though fully set forth herein.

126.     State law requires the City to comply with Article V of the EDPL to determine and pay just compensation before it can take any billboard within the territorial jurisdiction of the HBA and FSA or in any area zoned industrial or manufacturing.

127.     Separately, any billboards not subject to the City's Billboard Ordinance or another generally applicable law can be taken only if the City first complies with the EDPL in its entirety, including providing public notice, holding a public hearing, and making a public purpose and just compensation determination.

128.     The City has not complied with any of these procedures before ordering the removal of Clear Channel's billboards.

129.     A complete failure to comply with the procedural requirements of the EDPL is a violation of due process.

130.     Clear Channel will be injured by the removal of its billboards without the processes guaranteed by the EDPL.

131.     Clear Channel is therefore entitled to the relief prayed for below.

**COUNT V**
**Violation of the First Amendment**
**U.S. Const. amends. I & XIV; 42 U.S.C. § 1983**

132.    Clear Channel incorporates the preceding paragraphs as if set forth fully herein.

133.    The First Amendment, made applicable to state and local governments by the Fourteenth Amendment, prohibits the City from abridging Clear Channel's freedom of speech.

134.    Billboards are a constitutionally protected form of speech.

135.    The City may not, consistent with the First Amendment, regulate speech based on its content unless the regulation is narrowly tailored to achieving a compelling government interest.

136.    The Billboard Ordinance is a content-based regulation of speech, because it regulates off-premise advertising based on the content of that speech.  Specifically, in order to enforce this law, City officials must examine the content of a sign in order to determine whether the content relates to activities occurring on those premises or not.  Thus, the Billboard Ordinance draws an unlawful content-based distinction.

137.    The Billboard Ordinance further burdens Clear Channel's speech by imposing exorbitant, mandatory fees if Clear Channel fails to remove its billboards.

138.    The City does not advance any significant, let alone compelling, interest in ordering the removal of Clear Channel's off-premise advertising or for discriminating between on-premise and off-premise advertising.

139.    The Billboard Ordinance requires the removal of all off-premise advertising by December 31, 2020, without any individualized showing that the structure is unsafe or unsightly. By contrast, on-premise advertising structures can remain in place in perpetuity, regardless of the age, condition, or appearance of the structure.

140.    The complete prohibition of off-premise advertising also is not narrowly tailored. For example, a sign-by-sign determination, applicable to both on-premise and off-premise advertising, would be a more narrowly tailored approach to advancing any public interest in safety or aesthetics.

141.    Clear Channel will be injured if the City is permitted to apply the Billboard Ordinance in a manner that violates the First Amendment.

142.    Clear Channel is therefore entitled to the relief prayed for below.

**COUNT VI**
**Violation of the Excessive Fines Clause**
**U.S. Const. amends. VIII & XIV; 42 U.S.C. § 1983**

143.    Clear Channel incorporates the preceding paragraphs as if set forth fully herein.

144.    The Eighth Amendment, made applicable to state and local governments by the Fourteenth Amendment, prohibits the City from imposing excessive fines.

145.    Fines are particularly suspect when imposed against constitutionally protected activity, such as speech.

146.    Fines are excessive when they are grossly disproportionate to the offense.

147.    The City's fine schedule imposed by the Billboard Ordinance is grossly disproportionate to any alleged violation of the Ordinance.

148.    The fine schedule in the Billboard Ordinance is mandatory:  it instructs that the Building Officer *shall* impose daily fines escalating to $20,000 per day per sign, and leaves no discretion for the Building Officer to decide, on a case-by-case basis, what fine would be reasonable.

149.    Clear Channel will be injured by the threat of and imposition of these unconstitutionally excessive fines.

150.    Clear Channel is therefore entitled to the relief prayed for below.

## COUNT VII
### Violation of the New York FSA
### N.Y. Highway Law § 88

151.    Clear Channel incorporates the preceding paragraphs as if set forth fully herein.

152.    The HBA and FSA apply to at least twelve of Clear Channel's sixteen billboards in the City.  In addition, the just compensation provision of Section 88, which implements the State's obligations under the FSA, reaches both HBA billboards and non-HBA signs that are "in a commercial or industrial zone or area."  All of Clear Channel's billboards are either subject to the HBA and FSA or are in a commercial or industrial zone.

153.    The New York FSA mandates that the City must pay just compensation—not amortization—for signs within the HBA's territorial jurisdiction.  This compensation, moreover, must be determined according to the just compensation procedures of Article V of the EDPL.

154.    The New York FSA further mandates that such compensation must be paid *before* a municipality may order the removal of any billboard.

155.    The City purports to have ordered the removal of all of Clear Channel's billboards within New Rochelle, most of which are covered by the HBA.

156.    The City has not complied with Article V of the EDPL and has refused to provide just compensation for the removal of Clear Channel's billboards.

157.    Clear Channel will be injured by the uncompensated removal of its signs.

158.    Clear Channel is therefore entitled to the relief prayed for below.

## COUNT VIII
### Violation of the EDPL

159.    Clear Channel incorporates the preceding paragraphs as if stated fully herein.

160.    The EDPL establishes procedures that the City must follow before it can take private property.  It requires, among other steps, public notice, a public hearing, findings of fact, and judicial review before the City can condemn and take title to private property.

161.    In addition to these condemnation-related procedural requirements, Article V of the EDPL outlines the process for determining just compensation.  Article V provides property owners with a judicial proceeding to adjudicate just compensation owed, and allows the property to introduce evidence challenging the government's valuation of the property.

162.    Article V of the EDPL expressly applies to any takings of billboards covered by the FSA or in areas zoned industrial or manufacturing.  The EDPL applies in its entirety to takings that are not effected pursuant to a local ordinance or law.

163.    The City has not complied with any provision of the EDPL in ordering the removal of Clear Channel's billboards.

164.    Clear Channel has been and will be injured by the uncompensated removal of its signs without compliance with state law.

165.    Clear Channel is therefore entitled to the relief prayed for below.

**COUNT IX**
**Declaratory Judgment:  Scope of the Billboard Ordinance**
**28 U.S.C. § 2201**

166.    Clear Channel incorporates the preceding paragraphs as if stated fully herein.

167.    The City's Billboard Ordinance applies only to signs that "existed on March 20, 2001, without any enlargement at any time thereafter permitted."

168.    At least five of Clear Channel's billboards within the I-95 Corridor, were erected or enlarged after March 20, 2001.  Other Clear Channel's billboards in New Rochelle may have been enlarged after March 20, 2001.

169.    The City has ordered Clear Channel to remove all of its billboards in the City pursuant to the Billboard Ordinance no later than December 31, 2020, regardless of whether the billboards were erected or enlarged after March 20, 2001.

170.    An actual, present, and justiciable controversy exists between Clear Channel and the City concerning the applicability of the Billboard Ordinance to Clear Channel's billboards.

171.    Clear Channel will be injured if the City completes its threatened coerced removal of billboards not covered by the City's Billboard Ordinance removal mandate.

172.    Clear Channel is therefore entitled to the relief prayed for below.

## COUNT X
### Breach of Contract

173.    Clear Channel incorporates the preceding paragraphs as if stated fully herein.

174.    The Stipulation is a valid and enforceable contract governed by the laws of the State of New York.

175.    Under the Stipulation, Clear Channel's billboards were granted immunity from "any provision in or amendment to the Billboard Ordinance or any other code, rule, or regulation of the City requiring the removal of [Clear Channel's] Billboards, either immediately or with the passage of time" until December 31, 2020.  Stipulation ¶ 10.

176.    Clear Channel procured this immunity period in exchange for good and valuable consideration, including an agreement to remove certain signs within the City and to dismiss its then-pending challenges to the Billboard Ordinance.

177.    Clear Channel has fully performed its obligations under the Stipulation.

178.    The City has breached the Stipulation period by purporting to treat the immunity period as amortization for a forced taking of Clear Channel's billboards.  This violates the Stipulation in two distinct ways.  *First*, the City has breached the Stipulation by seeking to apply

31

the Billboard Ordinance against Clear Channel during the immunity period. *Second*, the City has breached the Stipulation by attempting to count the immunity period granted under the Stipulation for purposes of amortization to support removal of the billboards.

179.    Clear Channel has been and will be injured by the City's breach of contract inasmuch as Clear Channel is being deprived of the benefit of its bargain.

180.    Clear Channel is therefore entitled to the relief prayed for below.

## COUNT XI
### Motion to Compel Compliance with the Stipulation

181.    Clear Channel incorporates the preceding paragraphs as if stated fully herein.

182.    This Court retains jurisdiction to enter an order compelling compliance with the Stipulation, and to award further equitable and legal relief as the Court may deem necessary.

183.    The City has breached the Stipulation for all the reasons identified above.

184.    Clear Channel will be injured absent an order compelling the City to comply with the stipulation and awarding further equitable and legal relief as appropriate to prevent further breaches of the stipulation and to remedy any harm caused to Clear Channel.

185.    Clear Channel is therefore entitled to the relief prayed for below.

## COUNT XII
### Tortious Interference with Contract and Business Relations

186.    Clear Channel incorporates the preceding paragraphs as if stated fully herein.

187.    Clear Channel has business relationships with landlords who own the property where Clear Channel's billboards sit.  These business relations are valuable to both Clear Channel and the property owner.

188.    The City is aware of the existence of these business relations.

189.    On September 22, 2020, in an effort to give Clear Channel "more of an incentive to comply" with its order to remove Clear Channel's billboards, the City enacted a new, coercive

fine applicable to any property owner that does not remove nonconforming billboards from their property.  Defendant Aragon has also told Clear Channel that the City intends to enforce these fines against landlords unless Clear Channel removes its billboards.

190.    This new fine threatens Clear Channel's landlords with daily fines up to $20,000 per day if they do not breach or terminate their contract with Clear Channel.

191.    The City's threat to enforce an unreasonable and baseless fine is wrongful and is intended to disrupt Clear Channel's business relationship with its landlords.

192.    Clear Channel has been harmed by the City's wrongful conduct.  In particular, Clear Channel has been impeded in its ability to negotiate extensions to its contracts with property owners who the City has wrongfully threatened.

193.    Clear Channel is therefore entitled to the relief prayed for below.

## PRAYER FOR RELIEF

Clear Channel demands judgment on the City of New Rochelle and on Luiz Aragon and Paul Vacca, in their official capacities, on all counts, and further requests the following relief as appropriate:

A.    Enjoin the Defendants, both preliminarily and permanently, from:  (1) ordering the removal of any of Clear Channel's billboards; (2) ordering the removal of Clear Channel's billboards erected or expanded after Match 20, 2001; (3) ordering the removal of Clear Channel's billboards unless and until the City pays just compensation; and/or (4) imposing fines, or threatening to impose fines, against Clear Channel or its landlords for the non-removal of Clear Channel's billboards or advertising structures;

B.    Declare that the Defendants have violated Clear Channel's rights under the Takings Clause of the Fifth Amendment, the Due Process Clause of the Fourteenth Amendment,

the Free Speech Clause of the First Amendment, the Excess Fines Clause of the Eighth

Amendment, the New York FSA, the New York EDPL, the New Rochelle Billboard Ordinance,

the Stipulation, and the New York common law;

C.    Further declare that: (1) the Billboard Law is facially unconstitutional, and in all

events, does not apply to Clear Channel's billboards erected or enlarged after March 20, 2001;

and (2) any future efforts to order the removal of Clear Channel's billboards must provide just

compensation, must comply with the procedural requirements of the EDPL and may not

unlawfully target speech based on its content.

D.    Compel the Defendants to comply with the terms of the Stipulation, and enjoin

future breaches of the Stipulation;

E.    Award compensatory, consequential, and nominal damages in an amount to be

proven at trial;

F.    Award Clear Channel just compensation in the form of the fair market value of

any billboards ultimately ordered removed by the City;

G.    Assess pre- and post-judgment interest;

H.    Award attorneys' fees and costs as authorized by the Stipulation, pursuant to 42

U.S.C. § 1988, and to the extent otherwise permitted by law; and

I.    Enter such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Clear Channel demands a trial by jury on all issues and claims so properly triable.

November 5, 2020                              Respectfully submitted,

                                              /s/ David M. Rody
Gordon D.  Todd*                             David M.  Rody
Daniel J.  Hay†                              Sidley Austin LLP
Laura C.  Mulherin*                          787 Seventh Avenue
Mackenzi J.  Siebert*                        New York, New York 10019
Sidley Austin LLP                            Tel.:  (212) 839-5300
1501 K Street, N.W.                          Fax:  (212) 839-5599
Washington, D.C.  20005                      drody@sidley.com
Tel.:  (202) 736-8000
Fax:  (202) 736-8711
gtodd@sidley.com
dhay@sidley.com
lmulherin@sidley.com
mehrett@sidley.com

\* *pro hac vice* forthcoming
† application for admission filed

*Counsel for Clear Channel Outdoor, LLC*