September 23, 2022

**Via ECF Only**

Hon. Nelson S. Román
United States District Judge
United States Courthouse
300 Quarropas Street
White Plains, NY 10601

MEMO ENDORSED

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: _9/26/2022_

**HARRIS BEACH** PLLC
ATTORNEYS AT LAW

99 GARNSEY ROAD
PITTSFORD, NEW YORK 14534
585.419.8800

**DARIUS P. CHAFIZADEH**
MEMBER
DIRECT:   914.683.1212
FAX:      585.419.8801
DCHAFIZADEH@HARRISBEACH.COM

      RE:    Clear Channel Outdoor, LLC v. City of New Rochelle, et al.
             Index No. 7:20-cv-09296

Dear Justice Román:

      I write on behalf of Defendants with respect to their Objections to certain parts of the Report and Recommendation issued by Magistrate Judge Andrew E. Krause on September 9, 2022 on Plaintiff's motion for partial summary judgment.  More specifically, I write to request permission to file limited portions of Defendants' Memorandum of Law under seal.

      In Defendants' Memorandum of Law there are references to—and quotes from—certain documents from Plaintiff's discovery productions upon which Plaintiff has placed various levels of confidentiality designations.  Judge Krause granted Defendants leave to seal this information during briefing on the underlying motion.  *See* ECF Doc. No. 117.  Defendants seek the same relief here.  Accordingly, Defendants respectfully request leave to file the Memorandum of Law whereby specific references to documents that have been designated by Plaintiff as confidential are redacted.

      In accordance with the rules of the Court, we are contemporaneously filing a publicly available version of the Memorandum of Law in redacted form and a separate entry of the Memorandum of Law filed under seal with the proposed redactions shown with highlights.

      I appreciate your time and attention to this matter.  Please let me know if you have any questions.

The redacted document at ECF No. 176 is accepted as the public version of this filing at this time, and Defendants' request to file limited portions of Defendants' Memorandum of Law under seal is GRANTED. If, however, the Court determines that the specific information that has been withheld in this filing is integral to the Court's ruling on the motion for partial summary judgment, the Court may reconsider the decision to allow this information to remain under seal.  Defendants are also directed to provide two courtesy copies via mail and one electronic copy of their unredacted Memorandum of Law to Chambers.

Respectfully,

HARRIS BEACH PLLC

Darius P. Chafizadeh

The Clerk of the Court is directed to terminate the motion number at ECF No. 176.

Dated: September 26, 2022
   White Plains, NY

SO ORDERED:

HON. NELSON S. ROMÁN
UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

CLEAR CHANNEL OUTDOOR, LLC,

               Plaintiff,

      v.

CITY OF NEW ROCHELLE; LUIZ ARAGON, in his official capacity as Commissioner of Development; and PAUL VACCA, in his official capacity as Building Official,

               Defendants.

Case No.: 20-cv-09296-PMH

**DEFENDANTS' OBJECTIONS TO THE REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE ANDREW E. KRAUSE REGARDING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNT IX**

**HARRIS BEACH PLLC**
*Attorneys for Defendants*
445 Hamilton Avenue, Suite 1206
White Plains, NY 10601

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................. iii

SUMMARY OF ARGUMENTS MADE TO JUDGE KRAUSE ON CLEAR CHANNEL'S
MOTION FOR PARTIAL SUMMARY JUDGMENT ................................................ 1

THE LEGAL ERRORS IN THE R&R THIS COURT SHOULD CORRECT ............................ 4

BACKGROUND ............................................................................................ 6

APPLICABLE STANDARD .............................................................................. 10

ARGUMENT ............................................................................................... 11

POINT I  THE COURT SHOULD CORRECT THE R&R'S
MISINTERPRETATION OF UNAMBIGUOUS PROVISIONS
IN THE STIPULATION AND CITY CODE ..................................... 11

    A.  *The R&R Incorrectly Found that the Stipulation and Code
Section 270-16 Does Not Alone Require Removal of I-95
Billboards* ....................................................................... 11

    B.  *Although the R&R Determined that The Issue Was "Beyond
the Scope" Given Clear Channel's Decision to Move With
Respect to the Meaning of Section 270-16 Only, it Should Be
Noted that Section 270-4 Also Requires Removal* ..................... 13

POINT II  THE COURT SHOULD CORRECT THE R&R'S FAILURE TO
CONSIDER CLEAR CHANNEL'S COURSE OF CONDUCT
TO RESOLVE ANY AMBIGUITIES IN THE STIPULATION
AND SECTION 270-16 ............................................................ 14

    A.  *Clear Channel's RFP Response Establishes its Agreement
that the I-95 Billboards Were Required to Be Removed as of
December 31, 2020* .............................................................. 15

    B.  *Clear Channel's Internal Documents Reveal it Has Always
Agreed the Stipulation and City Code Require it to Remove
Its I-95 Billboards by December 31, 2020* ................................. 17

POINT III  THE COURT SHOULD CORRECT THE R&R'S MISTAKE ON
THE LAW OF EQUITABLE ESTOPPEL ....................................... 19

POINT IV   ALTHOUGH NOT BEFORE THE COURT GIVEN THE TIMING OF AND LIMITED RELIEF SOUGHT IN CLEAR CHANNEL'S MOTION, IT SHOULD BE NOTED THAT CLEAR CHANNEL'S BILLBOARDS ARE ALSO PROHIBITED BY THE ZONING LAW ........................................................... 21

CONCLUSION..................................................................................................................... 22

# TABLE OF AUTHORITIES

<u>Page</u>

**Cases**

*Eye Assoc., P.C. v. Incomrx Systems Ltd. Partnership*,
   912 F.2d 23 (2d Cir. 1990) ........................................................................................... 14

*Gen. Elec. Cap. Corp. v. Armadora*,
   37 F.3d 41 (2d Cir. 1994) ............................................................................................. 20

*Giarratano v. Edison Hotel*,
   No. 08 Civ. 1849, 2009 U.S. Dist. LEXIS 14402 (
   S.D.N.Y. Feb. 24, 2009) ............................................................................................... 10

*Gulf Ins. Co. v Transatlantic Reins. Co.*,
   69 AD3d 71 (1st Dep't 2009) ....................................................................................... 15

*Kosakow v. New Rochelle Radiology Associates, PC*,
   274 F. 3d 706 (2d Cir. 2001) ........................................................................................ 19

*Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*,
   595 F.3d 458 (2d Cir. 2010) ......................................................................................... 14

*Norfolk S. Ry. Co. v. Flexi Van Leasing, Inc.*,
   No. 99 Civ. 0055, 2000 U.S. Dist. LEXIS 18198
   (S.D.N.Y. Dec. 18, 2000) .............................................................................................. 10

*Waverly Corp. v City of New York*,
   48 AD3d 261 (1st Dep't 2008) ..................................................................................... 15

**Statutes**

28 U.S.C. § 636(b)(1) ........................................................................................................ 10

City Code § 270-4 ..................................................................................................... 4, 14, 21

City Code § 270-4(E) ................................................................................................... 4, 9, 13

City Code § 270-4(E)(1) .................................................................................................... 13

City Code § 270-4(E)(3) .................................................................................................... 13

City Code § 270-16 ........................................................................................... passim

City Code § 270-16(A) .......................................................................................... 11

New Rochelle Code Chapter 331 ....................................................................... 5, 21

New York Public Authorities Law § 361-a ............................................................ 9

**Rules**

Fed. R. Civ. P. 72(b)(2) ........................................................................................ 10

Fed. R. Civ. P. 72(b)(3) ........................................................................................ 10

Defendants (collectively, the "City") hereby submit these Objections to the Report and Recommendation of Judge Andrew E. Krause, issued on September 9, 2022 (the "R&R"), regarding the motion for partial summary judgment on Count IX brought by Plaintiff ("Clear Channel"). The R&R correctly denied Clear Channel's motion based on the City's equitable defense of laches. The R&R nevertheless contains distinct legal errors wherein it rejects the City's additional and independent reasons to deny Clear Channel's motion. This Court should review the City's arguments *de novo* and issue an Order confirming the denial of Clear Channel's motion on these additional grounds.

### SUMMARY OF ARGUMENTS MADE TO JUDGE KRAUSE ON CLEAR CHANNEL'S MOTION FOR PARTIAL SUMMARY JUDGMENT

This case concerns the City's right to require Clear Channel to finally remove certain billboards within New Rochelle, something the parties agreed to decades ago in a signed settlement agreement. More specifically, in 1998, Universal Outdoor, Inc. ("Universal Outdoor"), the corporate predecessor-in-interest to Clear Channel, challenged the City's efforts to remove several billboards in New Rochelle as part of the City's broad-scale beautification and advertising consolidation efforts. To settle their dispute, the parties agreed in a Stipulation of Settlement dated as of October 2000 (the "Stipulation") that Clear Channel could maintain certain billboards, including a limited number of new I-95 Billboards in the valuable I-95 Corridor (the "I-95 Billboards"). In return, Clear Channel agreed that all of these "Remaining Billboards," as defined in the Stipulation, could remain in place for many years but would be subject to removal under the City's Code as of December 31, 2020. Only now—after many years of internally *and externally* (directly to the City) agreeing that the Stipulation and City Code would require removal of I-95 Billboards—Clear Channel suddenly protested, without merit. Clear Channel moved for partial summary judgment arguing that the City could not force removal of the I-95 Billboards under one specific provision of the City Code, Section

270-16, because the actual construction date of those billboards provided for in the Stipulation came later.  The City pointed to several independent reasons that Clear Channel's motion failed, each of which if viewed alone would be sufficient to overcome the motion.

*First*, the motion fails based on clear language in the Stipulation and City Code, which unambiguously afforded Clear Channel immunity for its billboards *only through December 31, 2020* and provided that each of the I-95 Billboards were considered erected as of the effective date of the Stipulation.  Two separate portions of the current City Code—Sections 270-16 and 270-4— require removal of all such billboards, specifically including the I-95 Billboards, as of December 31, 2020.

*Second*, the motion fails because, to the extent there are any ambiguities, Clear Channel has repeatedly conceded in extrinsic evidence that the Stipulation and City Code require it to remove the I-95 Billboards as of December 31, 2020.  Several years ago, the City made clear that the Stipulation and City Code required Clear Channel to remove the I-95 Billboards as of December 31, 2020.  To that end, in 2015, the City issued a Request for Proposals ("RFP") for an advertising company to take over the I-95 Billboard space once Clear Channel's billboards were removed as of December 31, 2020.  Clear Channel submitted a bid for that open contract to keep operating past the removal date *without* any reservation of rights or a single word of protest related to the removal of its I-95 Billboards or other billboards in the City.  Further, Clear Channel executives repeatedly confirmed (internally—within Clear Channel—and externally—to the City) that Clear Channel had to remove the I-95 Billboards under the Stipulation and the current City Code and, indeed, budgeted for the required removal.  *See, e.g.*, Exhibit G to the Declaration of Darius P. Chafizadeh, dated February 2, 2022, located at ECF Doc. Nos. 115-116 ("Chafizadeh Declaration") (███████████████████████████████████

███████████████████████████████████

██████████████████████████ ) (emphasis added). This clear and damning evidence runs contrary to Clear Channel's newfound position in this lawsuit and on this motion, which Clear Channel never once expressed to the City, or in its course of conduct.

*Third*, Clear Channel's claims are barred by equitable doctrines, including laches and estoppel. Clear Channel seeks extraordinary damages and remedies in this case and on this motion, including the equitable remedy of a permanent injunction against the removal of the I-95 Billboards. Such remedies, however, are not available to Clear Channel because it has sat on its rights for many years. The parties have taken many significant actions—including the City entering a contract with a non-party to operate the billboard space at issue—based on Clear Channel's and the City's mutual agreement that the Stipulation and City Code require removal of Clear Channel's I-95 Billboards as of December 31, 2020. Clear Channel manifested its agreement and never once protested, much less claimed that it would seek extraordinary damages and equitable relief as it does here. The actions taken by Clear Channel and the City over the past several years cannot be undone for Clear Channel to suddenly raise an objection with its newfound, and baseless, claims.

*Fourth*, Clear Channel also brought its motion prematurely before the parties completed discovery. One of the issues that developed during discovery, but after the motion was briefed, is the fact that the I-95 Billboards must be removed for the additional reason that they violate the City's Zoning Code.[1]

---

[1] The City also demonstrated that Clear Channel's motion could be defeated by the simple practicality that the City may amend its Code to require removal if the Court somehow determines it is not required under the current City Code as written. Notably, the Stipulation provides that Plaintiffs are not "… entitled to damages, legal fees or compensation of any kind under any Federal or State statute…" should the City amend or reenact any statute concerning the removal of billboards. See Stipulation at ¶14. The R&R did not address the merits of the City's contention, noting only that the issues was not before the Court, so the City reserves its right to amend the City Code.

## THE LEGAL ERRORS IN THE R&R THIS COURT SHOULD CORRECT

The R&R correctly denied Clear Channel's motion based on laches.  The R&R committed legal errors with respect to other defenses raised by the City.  This Court should review and correct those errors.

*First*, with respect to unambiguous language in the Stipulation and Code, the R&R focused only on City Code Section 270-16 and disregarded Section 270-4, reasoning that Clear Channel's complaint (Count IX) and its motion centered only on whether Section 270-16 required removal.  So the issue of removal under Section 270-4 was, according to the R&R, "beyond the scope."  R&R, p. 19, fn. 15.  The R&R also noted in a footnote that Section 270-4 prohibits Billboards except as allowed under the Stipulation so the I-95 Billboards would "appear" to be allowed because they arose from that Stipulation.  *Id.*  At any rate, the R&R rejected the City's defense as to Section 270-16, which was in error, and it found that the issue of removal under Section 270-4 was not before the Court based on the limited relief sought in Clear Channel's motion.  It was not necessarily error to forgo a determination on Section 270-4 but that issue will ultimately have to be decided, and the City respectfully submits it may be considered here.  Indeed, Section 270-4E prohibits billboards except pursuant to the Stipulation.  But the Stipulation itself, along with the Immunity Period set forth therein, expired as of December 31, 2020.  Accordingly, by the terms of the Stipulation *and* the City Code, the Billboards are prohibited after December 31, 2020.  To the extent not addressed in the R&R or in this Court's review of the R&R, these issues will be the subject of the City's motion for summary judgment dismissing the Complaint in this matter.[2]

*Second*, with respect to extrinsic evidence, the R&R determined the Stipulation was unambiguous and, at any rate, rejected such evidence by reasoning that Clear Channel's conduct

---

[2]      The City will be filing a letter before this Court seeking permission to file a motion for summary judgment.

in more recent years does not shed light on what the parties intended many years ago when they entered the Stipulation.  R&R, pp. 17-18.  This is error.  The R&R itself identified areas of potential ambiguity—specifically including the effect of Stipulation's end of immunity period for the billboards—that call for extrinsic evidence.  Contrary to the R&R's holding, New York law provides that subsequent course of conduct evidence can be crucial to determine the parties' understanding as to contractual language.  The fact that the course of conduct occurred over the course of many years *strengthens*, not weakens, the probative value of this evidence.

*Third,* although the R&R accepted the City's laches defense, it rejected its equitable estoppel defense that was based on Clear Channel repeatedly announcing its understanding that its billboards would have to be removed as of December 31, 2020 and even bidding on the RFP.  In direct contravention of New York law, the R&R held that Clear Channel would have to make an affirmative fraudulent misrepresentation about its position to the City, and its erroneous understanding of the Stipulation and the Code throughout the years was not enough.  R&R, p. 29.  That is incorrect.  New York law explicitly provides that a party's mistaken views on its contractual obligations and its silence in the face of others asserting contrary rights forms the basis of an equitable estoppel defense.  In short, Clear Channel is equitably estopped from asserting rights it long ago conceded to the City that it did not have.

*Fourth,* with respect to discovery that was still ongoing at the time of Clear Channel's motion, the City's objection on that point turned out to be well-founded.  Following initial briefing on the motion, the City was able to determine that Clear Channel's billboards are prohibited under the City's Zoning Law – specifically, Chapter 331 of the City Code.  The City informed the Court of this fact while the motion was still pending, ECF Doc. No. 146, but the R&R stated that it did not consider this issue.  R&R, p. 10, fn. 11.  Although perhaps not in error, the City believes the

Zoning Law prohibition on billboards (i.e., they are not a permitted use) may be considered here. At the least, the City would like to make clear it is not precluded from raising it in the future on its motion for summary judgment seeking dismissal of the Complaint and the removal of the billboards.

Based on the foregoing, the Court should affirm the R&R's decision to deny Clear Channel's motion based on laches and it should further deny Clear Channel's motion for these additional and independent reasons.

## BACKGROUND

The facts relevant to the instant motion are set forth in the Chafizadeh Declaration submitted with respect to the City's original opposition papers, located at ECF Doc. Nos. 115-116, and they are summarized below for the Court's convenience. Certain documents and statutory provisions referenced below, including the Stipulation, City Code and Clear Channel correspondence regarding the same, are quoted throughout the Argument Section and are attached to the Chafizadeh Declaration. Where appropriate, and for the sake of brevity, those documents and statutory provisions are not also quoted in this Section.

On July 26, 1996, in furtherance of its urban renewal goals, the City amended its Code to remove billboards within the City. *See* Chafizadeh Declaration at ¶ 2. On June 2, 1998, Clear Channel's corporate predecessor filed a complaint in this Court seeking to invalidate the City Code. *Id.* at ¶ 3. To settle their dispute, the parties entered into the Stipulation, filed in this Court on October 16, 2000. *Id.* at Exhibit B.

The Stipulation provides, *inter alia*, for Clear Channel's immediate removal of certain billboards, its continued use of certain other billboards, and its construction of a limited number of new billboards along the highly-valuable I-95 Corridor. *See* Exhibit B at ¶¶ 5-7. The Stipulation

defines each of the allowable billboards as a "Remaining Billboard," irrespective of when such billboard was, or is, erected. *See id.* at ¶ 1(p).

By the Stipulation's plain language, Clear Channel's right to maintain these billboards was not absolute. *See id.* at ¶ 10. Rather, Clear Channel agreed that it would eventually remove its billboards after receiving compensation through amortization for the billboards for approximately 20 years and it also agreed that it would not be entitled to any damages or compensation after December 31, 2020. *Id; see also* ¶ 14. To be sure, the Stipulation provided for the "Immunity of Remaining Billboards," which ran from the date of the Stipulation's entry through December 31, 2020. *Id.* In return for being allowed to maintain certain billboards and erect the I-95 Billboards, Clear Channel agreed that all such "Remaining Billboards" would be subject to all City codes, rules and regulations requiring their removal as of December 31, 2020. *Id.*; *see also* ¶ 14.

On March 20, 2001, the City amended its Code in two pertinent ways to effectuate the settlement reached in the Stipulation. *See* Exhibit C. First, the City amended City Code Section 270-4—which prohibits billboards in the City except in specified instances—to add subsection E. *Id.* This subsection created a carve-out to the blanket prohibition on billboards to allow for the Remaining Billboards specified in the Stipulation. *Id.* This subsection further provides that the billboards constructed under the Stipulation must be proposed no later than December 31, 2020, incorporating the immunity period in the Stipulation. *Id.* Second, City Code Section 270-16 was amended to specify that all legally existing billboards within the City shall be removed as of December 31, 2020. *Id.* Concurrently, New York State provided that up to six (6) billboards could be erected in the I-95 Corridor via New York Public Authorities Law Section 361-a, which likewise effectuates the terms of the Stipulation. *See* Chafizadeh Declaration at

¶ 10.[3]  The Public Authorities Law and the City Code, operating in tandem, codify the purpose of the Stipulation: to allow the Remaining Billboards to exist only for the Immunity Period.  *Id.*

After delays and an unsuccessful challenge by Clear Channel in this Court over certain zoning issues, Clear Channel ultimately received approval and erected five (5) of the six (6) I-95 Billboards in the early 2000s.  *Id.* at ¶ 11; *see also id.* at Exhibit A.  The City's Code meanwhile remained in place for many years to require Clear Channel's billboards to be removed as of December 31, 2020.  *Id.* at ¶ 11.

The indisputable evidence produced during discovery demonstrates that Clear Channel understood that once the Immunity Period lapsed, the City Code would require removal of the I-95 Billboards as of December 31, 2020.  *Id.* at ¶ 12.  Clear Channel's course of conduct and its internal documents make this clear.  *Id.*

For example, in 2015, the City issued an RFP to collect bids from advertising companies to operate billboards in the I-95 Corridor after the removal of Clear Channel's billboards as of December 31, 2020.  *Id.* at Exhibit D.  The RFP and the public Questions and Answers that followed, (*id.* at Exhibit E), both specify that the contract winner would be permitted to operate the full number of billboards only after Clear Channel's billboards were removed as of December 31, 2020.  *See id.* at Exhibits D and E.  Notably, Clear Channel did *not* object to this interpretation when submitting its response to the RFP, reserve any rights, nor protest the City's RFP.  *See* Chafizadeh Declaration at ¶ 16 and Exhibit F.  To the contrary, Clear Channel participated in the process and submitted a bid to the RFP despite its newfound position on this motion that City Code Section 270-16 does not require its I-95 Billboards to be removed (ignoring

---

[3]  The number of billboards permitted by New York Public Authorities Law Section 361-a was later amended to permit nine (9) billboards along I-95.

that the immunity and Stipulation expired on December 31, 2020 and ignoring Section 270-4E and the City Zoning Code). *Id.*[4]

Clear Channel was not the highest bidder to the RFP, and it did not win the contract awarded thereunder. *Id.* at ¶ 17. Based on the recommendation of its consultant, New Rochelle chose non-party Outfront Media as the RFP winner and it entered a contract with that company to operate the full amount of allowable billboards on I-95 as of January 1, 2021 (limited to nine (9) under New York Public Authorities Law Section 361-a). *Id.* Tellingly, Clear Channel did *not* challenge, through an Article 78 proceeding or otherwise, the RFP process or the award of the contract to Outfront. *Id.* at ¶ 18. Since being awarded the RFP, Outfront has erected two (2) of the billboards along the I-95 Corridor, is waiting to construct a third and is waiting for removal of Clear Channel's billboards so that it may operate the full amount of billboards awarded in the RFP contract and permitted under the Public Authorities Law. *Id.*

Clear Channel executives meanwhile corresponded and *repeatedly* agreed over the course of several years that the Stipulation and the current City Code require removal of the I-95 Billboards. *See id.* at ¶ 19, Exhibits G-K. Documentary evidence reveals that Clear Channel has even budgeted for its planned removal of these billboards. *Id.* Clear Channel also attempted to negotiate a fee or swap from Outfront to have it pay for taking over the I-95 Billboards as they currently exist. *Id.*

When its negotiations with Outfront apparently failed, Clear Channel filed the instant lawsuit just before the required removal of its billboards. *Id.* at ¶ 20. It was not until this lawsuit that Clear Channel has suddenly invented an argument that the Stipulation and the Code somehow

---

[4] Clear Channel bid on an RFP for a contract with the City for billboards it now amazingly claims are not subject to removal. Further, no reasonable reading of any statute or the RFP leads anyone to the conclusion that the RFP did not include the billboards along I-95 or that the RFP was the subject of nine (9) additional billboards along 1-95, in addition to the existing billboards.

do not require removal of the I-95 Billboards, ignoring the language of the Stipulation and the City Code.  *Id.*

Clear Channel moved for partial summary judgment with respect to certain of its I-95 Billboards, focusing only on the effect of Section 270-16.  The R&R denied Clear Channel's motion based on laches.  The City now respectfully submits these Objections to the R&R on other grounds.

## APPLICABLE STANDARD

Any party may serve and file written objections to a report and recommendation of a magistrate judge on a dispositive matter within fourteen (14) days after being served with a copy thereof.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Any portion of such a report and recommendation to which a timely objection has been made is reviewed *de novo*. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

With respect to the standard on the underlying motion, summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Giarratano v. Edison Hotel*, No. 08 Civ. 1849, 2009 U.S. Dist. LEXIS 14402, *10 (S.D.N.Y. Feb. 24, 2009).  To defeat a motion for summary judgment, the non-moving party need only produce "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.*  With respect to contract disputes, summary judgment is only appropriate where the language of the contract is wholly unambiguous.  *Norfolk S. Ry. Co. v. Flexi Van Leasing, Inc.*, No. 99 Civ. 0055, 2000 U.S. Dist. LEXIS 18198 *14 (S.D.N.Y. Dec. 18, 2000).  On a motion for summary judgment, any ambiguity must be construed against the moving party.  *Id.*

## ARGUMENT

## POINT I

## THE COURT SHOULD CORRECT THE R&R'S MISINTERPRETATION OF UNAMBIGUOUS PROVISIONS IN THE STIPULATION AND CITY CODE

A. *The R&R Incorrectly Found that the Stipulation and Code Section 270-16 Does Not Alone Require Removal of I-95 Billboards*

The Stipulation explicitly provides the City with the right to require removal of all of Clear Channel's billboards.  *See* Stipulation, Exhibit B to the Chafizadeh Declaration, at ¶ 14 ("From and after the Entry Date, the City shall have the right to repeal, amend, and/or in its sole and absolute discretion, to re-enact any provision of the Sign Ordinance . . . or to enact any other local law or ordinance governing the erection, maintenance and removal of Billboards.").  The limitation on the City's right to require Clear Channel to remove its billboards is an Immunity Period set forth in paragraph 10 of the Stipulation that explicitly expires as of December 30, 2020.  *See id.* at ¶ 10 ("The immunity provided Remaining Billboards by the terms of this Stipulation shall, in all events, expire on December 31, 2020, at which time all Billboards covered by this Stipulation shall become subject to all City codes, rules, and regulations then in effect.").  The Stipulation thereby manifests the clear intent of the parties: to allow Clear Channel to operate the billboards allowed under the Stipulation until December 31, 2020, but not any longer.

Although the R&R recognized that the Stipulation allows the City to require Clear Channel to remove the I-95 Billboards, it mistakenly found that Section 270-16 does not effectuate that removal.  The Court focused on language in Section 270-16 wherein that provision requires removal of billboards that existed on March 20, 2001.  Enacted on March 20, 2001, City Code Section 270-16(A) treats "legally existing billboards" as follows:

> (1) Legally existing billboards. A legally existing billboard, solely in the same location and with the same sign area and height of sign

11

which existed on March 20, 2001, without any enlargement at any time thereafter permitted, may remain in existence until and shall be removed on or before the earlier to occur of the following events: …

(2)    December 31, 2020.

*See* Chafizadeh Declaration, Exhibit C.

Although certain I-95 Billboards were constructed by Clear Channel after March 20, 2001, they have always been treated by the parties as having come into existence as of the date of the Stipulation in October of 2000.  Indeed, the billboards at issue here were constructed only as the result of and in accordance with the terms of the Stipulation.  Notably, the Stipulation defines *all* billboards authorized under its terms, specifically including the I-95 Billboards, as "Remaining Billboards," irrespective of when such billboards were erected.  *Id.* at ¶ 1(p) ("Remaining Billboards" shall mean the Existing Billboards, any new Billboards permitted to be erected in the I-95 Corridor pursuant to this Stipulation, and such of the Contingent Billboards as are permitted to remain pursuant to this Stipulation"); *see also* ¶ 5 ("Erection of I-95 Billboards: . . . Once erected, such Billboards shall, for purposes of this Stipulation, be deemed Remaining Billboards.").

By proactively denominating all later-erected billboards as "Remaining Billboards," the parties agreed in the Stipulation that the I-95 Billboards (regardless of when erected) would be treated as legally existing as of the entry of the Stipulation on October 16, 2000.  Had the parties wished otherwise, they could have easily defined Remaining Billboards to not include the I-95 Billboards, or included specific language that the I-95 Billboards should be deemed legally existing when actually erected.  To be sure, the Stipulation makes no distinction between those Remaining Billboards erected prior to the Stipulation's entry, within a month of the Stipulation's entry, or within years of the Stipulation's entry, indicating unambiguously that all "Remaining

Billboards" came into effect as of the date of the Stipulation's entry. Thus, the Court should correct the R&R's incorrect finding with respect to Section 270-16.

   B. *Although the R&R Determined that The Issue Was "Beyond the Scope" Given Clear Channel's Decision to Move With Respect to the Meaning of Section 270-16 Only, it Should Be Noted that Section 270-4 Also Requires Removal*

Section 270-4(E)(1), also enacted in March of 2001, requires Clear Channel to remove the I-95 Billboards. Section 270-4(E) states in relevant part that "Billboards shall be *prohibited*, except for: [1] Legally existing billboards *or* [2] [pursuant to the court-ordered settlement in that matter entitled *Universal Outdoor, Inc. et al v. City of New Rochelle et al* (U.S.D.C. 98 Civ 3908)]." *Id.* (emphasis added).

Under the plain terms of the City Code, billboards are prohibited except in certain limited instances. The first instance is if the billboards were "legally existing" as of March 20, 2001. The entire basis of Clear Channel's motion is that certain billboards along I-95 were not erected and therefore not legally existing until after March 20, 2001. Therefore, according to Clear Channel's newfound reading of the Stipulation and the City Code—which the City emphatically disagrees with—the *only* exception to City Code § 270-4(E) that these billboards could fit in is they were authorized by the Stipulation. In a provision nowhere addressed by the R&R, however, the Stipulation, by its explicit terms, has *expired* as of December 31, 2020, and is no longer of any force or effect. *See* Stipulation at ¶ 18. The Stipulation's Immunity Period also has expired and now the City Code applies which prohibits billboards unless there is an agreement with the City. *Id.*, at ¶ 10; *See* City Code Section 270-4E(3). Importantly, after the award of the RFP to Outfront Media, the City amended § 270-4E to permit billboards "… pursuant to a City granted license [the Outfront license]…" *See* City Code § 270-4E(3). Billboards are no longer authorized pursuant to an expired Stipulation but they are permitted pursuant the City's license with Outfront.

13

This Court may determine it is appropriate to decide the issue of Section 270-4 now.  At the least, since the R&R is limited only to the meaning of Section 270-16, the City reserves its right to maintain and raise its Section 270-4 defense in the future on a motion for summary judgment to dismiss the Complaint.

## POINT II

### THE COURT SHOULD CORRECT THE R&R'S FAILURE TO CONSIDER CLEAR CHANNEL'S COURSE OF CONDUCT TO RESOLVE ANY AMBIGUITIES IN THE STIPULATION AND SECTION 270-16

Language utilized in the Stipulation and Code is ambiguous if the terms "could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 466 (2d Cir. 2010).  "Where contract language is susceptible of different meanings, the nonmovant on a summary judgment motion must be given an opportunity to present extrinsic evidence to establish what was intended by the written words." *Eye Assoc., P.C. v. Incomrx Systems Ltd. Partnership*, 912 F.2d 23, 28 (2d Cir. 1990).

The R&R incorrectly adopted Clear Channel's interpretation of the Stipulation as it applies to Section 270-16.  The City respectfully submits that interpretation is incorrect or, at the very least, there is a good faith disagreement as to the meaning of the Stipulation and that Code provision that requires an examination of extrinsic evidence, and therefore, the R&R was incorrect. As detailed below, Clear Channel and the City mutually operated on the understanding that the Stipulation and Code required removal of the I-95 Billboards as of December 31, 2020.

14

The R&R incorrectly found that much of the evidence detailed below would be of limited value to the parties' intent because it encompasses conduct that occurred many years after the drafting of the Stipulation and Code undertaken by persons not associated with the drafting of either one. R&R, pp. 17-18. Contrary to the R&R's holding, New York law provides that extrinsic evidence need not come from the person or persons that were involved in the drafting. Indeed, the parties' post-contract course of performance is "highly probative of their state of mind at the time the contract was signed." *See Gulf Ins. Co. v Transatlantic Reins. Co.*, 69 AD3d 71, 85-86 (1st Dep't 2009); *Waverly Corp. v City of New York*, 48 AD3d 261, 265 (1st Dep't 2008) ("The best evidence of the intent of parties to a contract is their conduct after the contract is formed"). The fact that the conduct at issue here occurred over the course of many years following the drafting of the Stipulation and Code strengthens it probative value. Accordingly, the City respectfully requests this Court correct the R&R and consider the following evidence.

A. *Clear Channel's RFP Response Establishes its Agreement that the I-95 Billboards Were Required to Be Removed as of December 31, 2020*

In 2015-2016, with the removal of Clear Channel's billboards on the horizon, New Rochelle issued an RFP seeking an advertising company to come in and operate up to nine (9) billboards in the I-95 Corridor after the removal of Clear Channel's on December 31, 2020. *See* Chafizadeh Declaration, Exhibit D. Given the limits on the number of billboards under the Public Authorities Law, the RFP specified that the winner would be able to begin operations of six (6) of the nine (9) billboards only after the forthcoming removal of Clear Channel's billboards on December 31, 2020. *Id.*

Indeed, with respect to Clear Channel's billboards, the RFP makes clear that "[u]nder the current City ordinance *all billboards must be removed by 2020*." *Id.* (emphasis added). Questions submitted by companies such as Clear Channel and publicly answered by the City after the initial

RFP similarly make clear that Clear Channel's I-95 Billboards must be removed as of December 31, 2020:

> Q:     Will the City affirmatively seek to remove or have removed any of the existing billboards by the 2020 sunset date?
>
> **A:     All billboards must be removed by 2020. The City will use its enforcement powers to remove any billboards requiring removed[al] by the 2020 sunset date.**

*See* Chafizadeh Declaration, Exhibit E (emphasis in original).

Actively acknowledging that its billboards would be removed as of December 31, 2020, Clear Channel was one of three companies to submit a response to the RFP. *See* Chafizadeh Declaration, Exhibit F. Clear Channel responded to the City's RFP—essentially bidding on billboards it now claims it does not have to remove—without any reservation of rights or a single word of protest. *Id.* Tellingly, Clear Channel did *not* raise any argument that the Stipulation or the City Code did not apply to its I-95 Billboards, whether through correspondence with the City, or an Article 78 proceeding to seek a declaration of the validity of the RFP process and/or Clear Channel's rights under the Stipulation. *See* Chafizadeh Declaration, ¶ 18.

Based on recommendations from its consultant, the City ultimately chose to—and did— enter a contract with non-party Outfront in 2016 to operate the billboards in the I-95 Corridor once Clear Channel's billboards were removed. *Id.* at ¶ 17. When the City entered its contract with Outfront, Clear Channel again did not raise any protest whatsoever or file a lawsuit to argue that its I-95 Billboards were exempt from removal. *Id.* at ¶ 18. To the contrary, Clear Channel conceded it would lose its I-95 Billboards and apparently attempted to negotiate a payment or swap from Outfront to transition its assets over. *See* Chafizadeh Declaration, Exhibit K. Indeed, in early 2020, Clear Channel's Area Sales Manager for the New York Market wrote:



*See id.*

It was only on the eve of removal—after receiving nearly 20 years of revenue under the Stipulation—that Clear Channel suddenly protested the removal of the I-95 Billboards. *Id.* at ¶ 20. Apparently unable to extract a payment from Outfront, Clear Channel decided to attempt to challenge the City's removal. *Id.* And for the first time, Clear Channel suddenly invented the theory found in the instant motion (ignoring the Stipulation and other sections of the City Code) that the I-95 Billboards are exempt from removal under the Stipulation and the Code. *Id.*

Clear Channel's bid on the City's RFP to operate billboards in the I-95 corridor beyond December 31, 2020 alone establishes it has always understood that the Stipulation and City Code require their removal. But there is much more.

B. *Clear Channel's Internal Documents Reveal it Has Always Agreed the Stipulation and City Code Require it to Remove Its I-95 Billboards by December 31, 2020*



*See* Chafizadeh Declaration, Exhibit G.

Clear Channel has held this plain reading of the Stipulation and the Code for many years.

17

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████ *See* Chafizadeh Declaration,

Exhibit H.  ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████

*Id.*  (emphasis added).

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████

*See* Chafizadeh Declaration, Exhibit I.

Clear Channel's Senior Vice President also discussed the Stipulation in a separate

correspondence in 2016.  ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████
████████████████

*Id.*

Yet another Clear Channel executive—its Vice President of Real Estate—confirmed the

same plain reading of the Stipulation and the City Code.  ████████████████████████

██████████████████████████████████████████

████████████████████████████

*See* Chafizadeh Declaration, Exhibit J.

This evidence is damning to Clear Channel's newfound interpretation of the Stipulation and City Code. The City respectfully requests the Court consider this evidence and correct the R&R's interpretation of the Stipulation and Code.

**POINT III**

### THE COURT SHOULD CORRECT THE R&R'S MISTAKE ON THE LAW OF EQUITABLE ESTOPPEL

Based on the overwhelming evidence set forth above, the R&R correctly denied Clear Channel's motion based on laches. Indeed, Clear Channel knew—and agreed—that its billboards were going to be removed and it sat on its newfound rights to protest that removal for several years. The R&R misinterprets New York law, however, wherein it rejects the City's equitable estoppel defense by holding that an "actual misrepresentation" is required and "misrepresentations regarding legal opinions or interpretations" do not qualify. R&R, p. 29.

To the contrary, an affirmative or actual misrepresentation is not required under New York law top set forth an equitable estoppel defense. "Application of the doctrine requires only reliance and prejudice; it does not require the existence of fraud or an intent to deceive." Indeed, "[t]he doctrine of equitable estoppel is properly invoked where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or [even] conduct." *Kosakow v. New Rochelle Radiology Associates, PC*, 274 F. 3d 706, 725 (2d Cir. 2001).

New York courts routinely invoke equitable estoppel where, as here, one party to a contract asserts rights thereunder and the other party remains silent but then seeks to challenge those rights

19

at a later time. Indeed, "silence in the face of an explicit contrary assumption by an innocent party may constitute a concealment of facts or a false misrepresentation for estoppel purposes." *Gen. Elec. Cap. Corp. v. Armadora*, 37 F.3d 41 (2d Cir. 1994) (applying New York law) ("Armadora's silence in the face of GECC's assertion of its interpretation of Section 2.09 of the Loan Agreement falsely misrepresented its intent to challenge that calculation.").

This is a textbook case to invoke equitable principles to bar Clear Channel's claims in this case in their entirety or, at minimum, the newfound theory it attempts to raise on this motion regarding the I-95 Billboards. The Stipulation and the relevant Code provisions have been in place for approximately two decades. The City has repeatedly announced that it would require Clear Channel to remove its I-95 Billboards under the Stipulation and Code as of December 31, 2020. Clear Channel has internally agreed that it would have to remove its I-95 Billboards as of December 31, 2020. *See* Chafizadeh Declaration, Exhibits G-K. Clear Channel outwardly announced this same understanding to the City in 2015-2016 when it bid on the RFP to operate I-95 Billboards beyond the December 31, 2020 sunset date. *Id.* at Exhibit F. The City could not have been clearer that the RFP and the subsequent contract it entered with Outfront were based on and required removal of Clear Channel's I-95 Billboards as of December 31, 2020. *Id.* at Exhibits D and E. Yet Clear Channel did not say a word in protest and it actively participated in the RFP process.

In sum, Clear Channel remained silent in the face of the City asserting its rights to require Clear Channel to remove its billboards. Clear Channel never once challenged the City's RFP or its contract with Outfront via an Article 78 proceeding or otherwise. Further, Clear Channel effectively ratified the City's RFP contract with Outfront by attempting to negotiate with Outfront to benefit from that contract. *Id.* at Exhibit K.

The City has expended significant time, effort, and money and it now has a contract with Outfront to take over the operations of billboards in the I-95 Corridor. Clear Channel now seeks to reverse years of its conduct on which the City has justifiably relied which would harm the City in myriad ways. Thus, the Court should correct the R&R and find that Clear Channel's motion—raising its newfound position—should be denied not just on laches but on the additional ground of equitable estoppel.

**POINT IV**

**ALTHOUGH NOT BEFORE THE COURT GIVEN THE TIMING OF AND LIMITED RELIEF SOUGHT IN CLEAR CHANNEL'S MOTION, IT SHOULD BE NOTED THAT CLEAR CHANNEL'S BILLBOARDS ARE ALSO PROHIBITED BY THE ZONING LAW**

Discovery was ongoing at the time Clear Channel made its motion for partial summary judgment. The City objected to the timing of the motion based on Federal Rule 56 because the parties had not yet developed facts relevant to the motion. One of the issues that developed subsequent to the initial briefing is that Clear Channel's billboards must be removed because they violate New Rochelle's Zoning Law. The City promptly alerted Magistrate Krause of this issue via letter at ECF Doc. No. 146. The R&R limited its analysis to Section 270-16 based on the nature of Clear Chanel's motion and did not consider the Zoning Law argument. R&R 10, fn. 11.

The City respectfully submits this Court may consider the City's Zoning Law argument. Indeed, as discovery progressed, it became apparent that *all* of Plaintiff's billboards, as of January 1, 2021, were illegal under the New Rochelle Zoning Law and therefore, must be removed. Indeed, billboards are not a permitted use, specially permitted use or permitted accessory use in the districts where the billboards are currently located. *See* New Rochelle Code Chapter 331. As such, the billboards are subject to removal not only under the Sign Code at Chapter 270 (270-16 and 270-4) but also the Zoning Code at Chapter 331. While the billboards may have been immune

21

from removal under the Zoning Code up until December 31, 2020, that immunity has expired. This is an additional reason Plaintiff's motion should be denied and it must remove its billboards.

For these reasons, the Court may find that the billboards must be removed based on the Zoning Law.  Alternatively, the City will raise this issues on a motion for summary judgment dismissing the Complaint.

## CONCLUSION

For the foregoing reasons, the Court should affirm the R&R's denial of Clear Channel's motion for partial summary judgment but it should correct legal errors and affirm that denial based on the additional grounds set forth herein, and grant the City such other and additional relief it deems just and proper.

Dated: September 23, 2022
      White Plains, NY

                    Respectfully submitted,

                    HARRIS BEACH PLLC

                    By: *s Darius P. Chafizadeh*
                    Darius P. Chafizadeh, Esq.
                    James P. Nonkes, Esq.
                    Katerina M. Kramarchyk, Esq.
                    *Attorneys for Defendants*
                    445 Hamilton Avenue, Suite 1206
                    White Plains, New York 10601
                    Phone: (914) 683-1212
                    Fax: (914) 683-1210
                    dchafizadeh@harrisbeach.com
                    jnonkes@harrisbecah.com
                    kkramarchyk@harrisbeach.com