UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CLEAR CHANNEL OUTDOOR, LLC

                            Plaintiff,

   -against-

CITY OF NEW ROCHELLE, *et al.*,

                            Defendants.

---

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/28/2022

No. 20-cv-9296 (NSR) AEK

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

Plaintiff Clear Channel Outdoor, LLC ("Clear Channel") brings this action against Defendants the City of New Rochelle (the "City"); Luiz Aragon, in his official capacity as Commissioner of Development; and Paul Vacca, in his official capacity as Building Official (collectively, the "Defendants"), asserting various claims related to the New Rochelle City Code and a September 2020 order requiring that Clear Channel remove several billboards from the City of New Rochelle. (ECF No. 1 ("Compl.") ¶ 94.)

On September 9, 2022, Judge Krause issued a Report and Recommendation ("R&R") on Clear Channel's motion for partial summary judgment on Count IX of the Complaint, which sought a declaration as to whether five of Plaintiff's billboards located within the City limits along the Interstate 95 corridor (the "I-95 Billboards") were subject New Rochelle Code § 270-16 (the "Billboard Ordinance"). (ECF No 170, hereinafter, the "R&R".) In relevant part, the Billboard Ordinance requires removal by December 31, 2020 of certain billboards which existed on March 20, 2001, without any enlargement at any time thereafter. (Compl. ¶¶ 166–72.) *See* New Rochelle Code § 270-16. In September 2020, the City ordered Clear Channel to remove its billboards,

1

including the I-95 Billboards, pursuant to the Billboard Ordinance and soon after amended the Billboard Ordinance to impose daily and escalating fines for failing to remove billboards after receiving notice from a City official. (*See* R&R at 7.)

The R&R determined that the Billboard Ordinance does not apply to the I-95 Billboards. (R&R at 17, 19.) However, the R&R nonetheless recommended denying Clear Chanel's motion for partial summary judgment solely because it deemed that Defendants raised a triable issue of fact regarding their affirmative defense of laches with respect to Count IX. (*Id*. at 21–28.) Defendants based their laches defense on the fact that Plaintiffs did not bring suit when the City issued a Request for Proposals ("RFP") in 2015 or 2016 from advertising media firms to develop advertisements within the City, including billboards on the I-95 corridor, and which purportedly made clear that the then-current billboards on I-95 would have to be removed before January 1, 2021. (*Id*. at 22.)

On October 20, 2022, the Court issued an Order adopting in part and reversing in part Judge Krause's R&R. (*See* ECF No. 190 (hereinafter, the "October 20, 2022 Order")). Specifically, the Court only reversed the R&R's finding that Defendants raise a material dispute of fact regarding the laches defense, and instead found that the laches defense was waived under ¶ 10 of the October 16, 2000 stipulation of settlement between the parties (ECF No. 100-3, hereinafter, the "Stipulation").[1] (*See* October 20, 2022 Order at 12.) Therefore, the Court granted Plaintiff's summary judgment motion as against Count IX of the Complaint. (*Id*. at 17.)

---

[1]   As explained more fully in the October 20, 2022 Order and in the R&R, Plaintiffs' predecessors-in-interest and other outdoor advertising companies had filed a lawsuit on June 2, 1998, challenging the constitutionality of Chapter 270 of the New Rochelle City Code, which required removal of all "off-premises" billboards located anywhere within the City. (*See* R&R at 2.) The parties resolved their lawsuit by entering into a settlement agreement, which was entered on October 16, 2000.

Presently before the Court is Defendants' Motion for Reconsideration, pursuant to Local Civil Rule 6.3 and Fed. R. Civ. P. 59(e), of the Court's October 20, 2022 Order regarding the following findings: (i) that Defendants waived a laches defense under the terms of the Stipulation and (ii) that Defendants fail to raise an affirmative defense under equitable estoppel. (*See* ECF No.195 (Defs.' Reconsideration Br.") at 1.) For the reasons set forth below, Defendants' motion for reconsideration is DENIED.[2]

## BACKGROUND

The Court assumes familiarity with the factual background of this case, as delineated in the Court's October 20, 2022 Order and in Judge Krause's R&R. (*See* R&R and October 20, 2022 Order.)

## STANDARD OF REVIEW

Reconsideration of a previous order is "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Initial Pub. Offering Sec. Litig.*, 399 F. Supp. 2d 298, 300 (S.D.N.Y. 2005) (internal citation and quotation omitted), aff'd sub nom. *Tenney v. Credit Suisse First Boston Corp.*, Nos. 05 Civ. 3430, 05 Civ. 4759 & 05 Civ. 4760, 2006 WL 1423785, at *1 (2d Cir. 2006). Motions for reconsideration are governed by Local Civil Rule 6.3. The standard for granting a motion for reconsideration pursuant to Local Rule 6.3 and Fed. R. Civ. P. 59 is strict. *Targum v. Citrin Cooperman & Company, LLP*, 2013 WL 6188339, at * 1 (S.D.N.Y. Nov. 25, 2013); *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012). They are "addressed to the sound discretion of the district court and

---

[2] On November 18, 2022, Vector Media filed a Joinder to Clear Channel's Opposition to Defendants' motion for reconsideration. *See* C.A. No. 7:21-cv-266, ECF No. 55. Because Defendants indicate that all arguments raised in its motion for reconsideration apply to both Clear Channel and Vector Media, this opinion applies to Vector Media equally. (*See* Defendants' Reconsideration Br. at 1 n.1).

are generally granted only upon a showing of exceptional circumstances." *Mendell ex rel. Viacom, Inc. v. Gollust*, 909 F.2d 724, 731 (2d Cir. 1990).

Critically, a motion to reconsider "is not a vehicle for ... presenting the case under new theories ... or otherwise taking a second bite at the apple." *Analytical Surveys, Inc.*, 684 F.3d at 52 (quotation and citation omitted); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Stroh Cos.*, 265 F.3d 97, 115 (2d Cir. 2001) (quoting *Polsby v. St. Martin's Press*, No. 97 Civ. 0690(MBM), 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000)) (in moving for reconsideration, "a party may not advance new facts, issues, or arguments not previously presented to the Court."). Such motions are generally denied "'unless the moving party can point to controlling decisions or data that the court overlooked.'" *Analytical Surveys*, 684 F.3d at 52 (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).

## DISCUSSION

Defendants move to have the Court reconsider its finding that (i) the City waived its laches defense under the Stipulation and that (ii) Clear Channel is not equitably estopped from challenging removal. For the reasons articulated below, the Court reaffirms its findings that Defendants waived their laches defense under the terms of the Stipulation, and that Defendants fail to raise a viable equitable estoppel defense.

### I.   Waiver of Laches Defense in Stipulation

In their reconsideration motion, Defendants argue the Court erred when it determined that Defendants' laches defense was waived under Stipulation ¶ 10. (*See* Defs.' Reconsideration Br. at 5.) Defendants argue that (i) ¶ 10 of the Stipulation only applies to challenges to City Code provisions drafted after December 31, 2020 on grounds that such provisions do not provide just compensation; and (ii) that Defendants could not have waived a laches defense because such right

4

to raise that defense was not known to them at the time that the parties entered into the Stipulation. (*Id*. at 4–9.)

The relevant portion of the Stipulation reads as follows:

> If, at any time after December 31, 2020 a City code, rule or regulation would require the removal of one or more of the Remaining Billboards without the payment of just compensation, *nothing, including without limitation* the dismissal of claims pursuant to this Stipulation, this Stipulation, the entry of this Stipulation, or any applicable statute of limitations, *shall prevent [Plaintiffs] from challenging such City code, statute or regulation*.

Stipulation ¶ 10 (emphasis added)

From the outset, the Court rejects Defendants' interpretation that ¶ 10 of the Stipulation only applies to challenges to City Code provisions drafted after December 31, 2020. Stipulation ¶ 10 clearly allows Clear Channel to bring a lawsuit "[i]f, at any time after December 31, 2020 a City code, rule or regulation would require the removal of one or more of the Remaining Billboards without the payment of just compensation." *See* Stipulation ¶ 10. A plain reading of the Stipulation shows that ¶ 10 is not limited to City code, rules or regulations that are *drafted* after December 31, 2020, but rather, applies to those laws, like the Billboard Ordinance, that would require Defendants to remove their billboards after that date. Not only do Defendants misread the Stipulation, but this is also the first time that Defendants raise such a reading of the Stipulation, despite having had the opportunity to present it on two prior motions—when briefing on the partial summary judgment motion before Judge Krause and when responding the Plaintiff's objections to the R&R. Therefore, Defendants inappropriately raise this argument. *See Nussbaum v. Metro-N. Commuter R.R.*, No. 12-CV-00367 (NSR), 2014 WL 1870801, at *1 (S.D.N.Y. May 8, 2014) (motion for reconsideration "cannot assert new arguments or claims which were not before the court on the original motion"); *Wechsler v. Hunt Health Sys., Ltd.*, No. 94 CIV. 8294 (PKL), 2004 WL 2210261, at *4 (S.D.N.Y. Sept. 30, 2004); *accord, e.g.*, *In re Foxamax Prods. Liab. Litig.*,

5

815 F. Supp. 2d 649, 651 (S.D.N.Y. 2011) ("L.C.R. 6.3 affords relief where the court has erred by overlooking a factual or legal argument presented, not where a party failed to present relevant factual or legal arguments.").

Defendants for the first time also argue that the specific claim Clear Chanel raises in Count IX falls outside of the Stipulation ¶ 10, because Count IX does not pertain to the payment of just compensation. As indicated above, it is inappropriate for Clear Channel to raise new arguments on a reconsideration motion, particularly as Defendants had the opportunity to make this argument in prior motion practice. In any event, Plaintiffs do indeed raise a challenge to the Billboard Ordinance because they allege that the City is forcing uncompensated removal of their billboards. (*See* ECF No. 193 ("Pl.'s Reconsideration Opp.") at 6.)

Lastly, the Court rejects Defendants' argument that despite the language in Stipulation ¶ 10, they could not have waived a laches defense since it was not a "known right" at the time that the Stipulation was entered into, and therefore they could not have manifested a clear intention to waive that right. (*See* Defs.' Reconsideration Br. at 5–7.) Like the arguments described above, this is the first time Defendants raise this specific argument, which is inappropriate on a reconsideration motion.

In addition, the Court agrees with Plaintiff that parties to contracts may waive future rights and defenses pursuant to the terms they agreed upon. *See, e.g., XXIII Cap. Ltd. v. Decade, S.A.C., LLC*, No. 1:17-CV-6910-GHW, 2018 WL 4387555, at *10 (S.D.N.Y. Sept. 13, 2018) (finding that guarantors expressly waived defenses under the agreement); *L. Constr. Corp. v. Cont. Disp. Resol. Bd.*, 45 N.Y.S.3d 385, 386 (1st Dep't 2016) (affirming finding that petitioner waived its claims pursuant to language in governing contract)*; see also Airport Mart Inc. v. Dunkin' Donuts Franchising LLC*, No. 18-CV-170 (KMK), 2019 WL 4413052, at *8 (S.D.N.Y. Sept. 16, 2019)

6

("Limitation on liability provisions routinely are agreed upon by parties to contracts and enforced by courts . . .") (citing *In re Lehman Bros. Holdings Inc.*, 544 B.R. 62, 70 (Bankr. S.D.N.Y. 2015)). Here, Stipulation ¶ 10 clearly states that "*nothing, including without limitation . . . would prevent Plaintiffs from challenging a City code, statute, or regulation.*" Stipulation ¶ 10 (emphasis added). As previously explained in the Court's October 20, 2022 Order, a laches defense necessarily falls under Stipulation ¶ 10 because laches defenses are capable of preventing challenges to a City code, statute, or regulation. (*See* October 20, 2022 Order at 12.) Defendants do not contest that reading of the provision in their motion for reconsideration.

Defendants also fail to point to any controlling case law indicating that the Court erred in its finding that the laches defense cannot be waived under the terms of the Stipulation. In their opening brief, Defendants elevate two New York intermediate appellate court in order to argue that Defendants must have been aware of their laches defense at the time of entry of the Stipulation for such defense to be waived. (Defs.' Reconsideration Br. at 5–6) (citing *Orange Steel Erectors, Inc. v. Newburgh Steel Prods., Inc.*, 225 A.D.2d 1010 (3d Dep't 1996) and *Board of Education of Yonkers City School District v. Yonkers Federation of Teachers*, 143 A.D.2d 1010 (2d Dep't 1998)). However, these cases do not support Defendants' argument. In *Orange Steel Erectors, Inc.,* the court rejected defendant's argument that plaintiffs waived its right to recover moneys due under a work contract because it found that the relevant agreement "does not contain any unequivocal statement indicating that plaintiff is forgoing its right to proceed against the latter for amounts owed." 225 A.D.2d at 1012. In addition, *Board of Education of Yonkers City School District* dealt with whether a union waived its right to arbitrate collective bargaining agreement violations when it elected to intervene in a federal lawsuit—the court did not tackle the issue of

7

whether a right or defense was expressly waived under contractual language. *See* 143 A.D.2d at 1011.

In their reply brief, Defendants point to additional cases in this Circuit to argue that parties cannot categorically waive a right not known to them at the time of contracting. (*See* ECF No. 197 ("Defs.' Reconsideration Reply") at 3–5.) Upon a careful review, the Court finds that these cases are either not on point or that they stand for the well-established proposition that parties may waive their rights and defenses pursuant to clear terms under their contract. *See Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 510 (2d Cir. 2002) (finding that plaintiff waived her ERISA claims because she failed to timely file an application and also filed an untimely appeal.); *Tencza v. TAG Ct. Square, LLC*, No. 10 CIV. 3752 PAE, 2013 WL 2449178, at *11 (S.D.N.Y. June 6, 2013) (finding that insurance company did not waive defenses because it properly asserted and preserved them in a benefits review letter); *Trs. of the N.Y. City Dist. Council of Carpenters Pension Fund v. Metro. Enters.*, 2016 U.S. Dist. LEXIS 129740, *10-11 (S.D.N.Y. at Sept. 11, 2016) (rejecting waiver arguments because contractual language did not evince clear, unmistakable, and unambiguous intent to waive future claims related to delinquencies beyond those that made Plaintiff whole by a settlement agreement). Defendants, for example, cite to *Remington Rand Corp.*, where the court found that certain settlement-related releases shielded a bank from liability for conduct through their effective settlement date, but not from liability arising from subsequent conduct after the settlement stipulation came into effect. *Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478, 1481, 1485 (2d Cir. 1995). However, the court made that finding after determining that the explicit terms of the release only shielded the bank

8

from liability on claims that arose from the "beginning of time to the effective date of this Stipulation and Order." *Remington Rand Corp.*, 68 F.3d at 1481, 1485.[3]

Here, it is clear that the parties agreed to a broad waiver provision by including the language "nothing, without limitation . . ." *See* Stipulation ¶ 10. There is also no language indicating that the provision does not apply to defenses raised after the date in which the parties entered into the Stipulation.

Accordingly, the Court declines to reconsider its ruling on Defendants' laches defense.

## II.     Equitable Estoppel Affirmative Defense

Defendants ask the Court to reconsider its decision affirming the R&R's finding that Defendants fail to establish an affirmative defense under equitable estoppel. (Defs.' Reconsideration Br. at 10–12.) Defendants reiterate their argument that they can base their equitable estoppel defense on Plaintiff's decision to remain silent during the RFP process even though Defendants had announced at that time that Plaintiff had to remove its I-95 Billboards by December 31, 2020. (Defs.' Reconsideration Br. at 11.) For the reasons stated below, the Court rejects Defendants' reconsideration arguments on this issue and reaffirms its finding that Defendants fail to establish equitable estoppel.

In order to establish an affirmative defense under equitable estoppel, Defendants must demonstrate: "(1) an act constituting a concealment of facts or misrepresentation; (2) an intention or expectation that such acts will be relied upon; (3) actual or constructive knowledge of the true facts by the wrongdoers; (4) reliance upon the misrepresentation which causes the innocent party

---

[3]     The Court notes that there is a separate line of cases pertaining to waiver of objections or defenses under Fed. R. Civ. P. 12(b), which state that "a party cannot be deemed to have waived objections or defenses which were not known to be available at the time they could first have been made." *Bennett v. City of Holyoke*, 362 F.3d 1, 7 (1st Cir. 2004); *see also Holzsager v. Valley Hosp.*, 646 F.2d 792 (2d Cir. 1981) (same). Because those cases pertain to objections and defenses under Fed. R. Civ. P. 12(b), and not defenses waived under contractual language, the Court does not find that line of cases relevant for this instant motion.

to change its position to its substantial detriment." *Gaia House Mezz LLC v. State St. Bank & Tr. Co.*, 720 F.3d 84, 90 (2d Cir. 2013) (citing *Gen. Elec. Capital Corp. v. Armadora, S.A.*, 37 F.3d 41, 45 (2d Cir.1994)). In addition, where a defendant seeks to raise equitable estoppel based on the other party's purported silence or failure to disclose, "a party's silence does not give rise to a claim of equitable estoppel when the party has no duty to speak." *Gaia House Mezz LLC*, 720 F.3d at 90.

In its ruling, the Court affirmed the R&R's finding that Defendants do not establish an equitable estoppel defense because (i) there was no actionable misrepresentation; (ii) any purported "silence" is not actionable because Defendants fail to show that Plaintiff had any duty to disclose its intention to sue if forced to remove its I-95 Billboards. (October 20, 2022 Order at 16.)

First, Defendants fail to point to controlling law that the Court overlooked with respect to its finding that there is no actionable misrepresentation based on Clear Channel's apparent understanding of its legal rights and obligations under the Stipulation. As explained in the R&R and affirmed in the Court's opinion, Clear Channel's understanding does not amount to an "actual misrepresentation," as legal opinions or interpretations do not serve as the basis for an application of equitable estoppel. (*See* R&R at 29; October 20, 2022 Order at 16.) *MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*, 842 F. Supp. 2d 682, 714 (S.D.N.Y. 2012) (equitable estoppel did not apply where alleged misrepresentation concerned the plaintiff's legal opinions, "not facts")*;* *In re Zarro*, 268 B.R. 715, 722 (Bankr.S.D.N.Y.2001) ("The misrepresentation must be one of fact, and an opinion or misrepresentation of law will not suffice."). Defendants do not address this finding.

Defendants instead focus on their position that Clear Channel's "silence"— *i.e.* its failure to speak up during the RFP when the City indicated that billboards on I-95 would have to be removed and its decision to instead participate in the RFP— is actionable under equitable estoppel. (Defs.' Reconsideration Br. at 11.) Defendants suggest that the Court overlooked *Gen. Elec. Cap. Corp. v. Armadora*, 37 F.3d 41 (2d Cir. 1994), where the Second Circuit stated that "silence in the face of an explicit contrary assumption by an innocent party may constitute a concealment of facts or a false misrepresentation for estoppel purposes." *Id*. at 45 (Defs.' Reconsideration Br. at 11.). However, *Armadora* is distinguishable— there, the defendant knew that the plaintiff asserted an incorrect interpretation of a calculation under their Loan Agreement, but went along with the interpretation and even sent a letter that appeared to adopt that interpretation, and only revealed its contrary position after Plaintiff gave away its right to block a prepayment of the loan. *Armadora*, 37 F.3d at 45–46; *see also Royal Mortg. Corp. v. FDIC*, 20 F. Supp. 2d 664, 669 (S.D.N.Y. 1998) ("In General Electric, the defendant deliberately misled plaintiff as to its interpretation of a previously executed contract."), *aff'd*. 194 F.3d 389 (2d Cir. 1999).

Here, Clear Channel did not allegedly conceal any facts unknown to Defendants, nor is it fair to say that it attempted to induce Defendants into certain action for its benefit. The City was a signatory to the Stipulation and was, or should have been, aware of its full terms, including Plaintiff's rights under those terms. Defendants' position that Clear Channel "induced" Defendants to enter into a contract with a third-party pursuant to the RFP is therefore disingenuous, given that all parties were aware of the terms of the Stipulation. (*See* Defs.' Reconsideration Br. at 12.)[4]

---

[4] In their opening brief on this motion, Defendants argue that that "Clear Channel not only remained silent in the face of the City's assumption, it actively conceded that the billboards had to be removed." (Defs.' Reconsideration Br. a 11.) Defendants point to nothing on the record showing that Clear Channel communicated its concession directly to Defendants. Rather, in Defendants' Objections to the R&R (ECF No. 177), only point to instances in the record

11

In addition, Defendants fail to explain what duty Clear Channel had to Defendants to voice its understanding of its legal rights and obligations under the Stipulation. There is no dispute that there is no fiduciary duty among the parties. Nor are the parties in an ongoing business relationship, where there could be a duty that arises based on good faith principles. *See Mattis v. Zheng*, No. 05 CIV. 2924 (DC), 2006 WL 3155843, at *7 (S.D.N.Y. Oct. 27, 2006) ("In an ongoing business relationship, one party may have a duty to speak where that party knows his silence will affect the rights of the repudiating party vis-à-vis others.") (citing discussing *DeCarlo v. Archie Comic Publications, Inc.*, 127 F. Supp. 2d 497, 510–11 (S.D.N.Y. 2001) and *Electrolux Corp. v. Val-Worth, Inc.*, 6 N.Y.2d 556, 564 (N.Y.1959); *Columbia Broad. Sys., Inc. v. Stokely-Van Camp, Inc.*, 522 F.2d 369, 378 (2d Cir. 1975) (The New York law of estoppel is that the duty to speak need not be a purely legal one, but rather may be founded in principles of ethics and good faith: when one party in a relationship with another has an opportunity to speak in order to avoid harm or injury to the other party and fails to do so to the ultimate prejudice of the other party, he will be estopped from relying thereafter on that relationship.") (internal citations omitted); *see also Associated Press v. Meltwater U.S. Holdings, Inc.*, 931 F. Supp. 2d 537, 566 (S.D.N.Y. 2013) ("Meltwater has offered no evidence of any relationship or communication with AP that imposed upon AP the duty to speak.").[5] Because Defendants fail to establish that Plaintiff had a duty to speak, they cannot avail themselves of a defense under equitable estoppel.

---

where Clear Channel had internally agreed that it would have to remove its I-95 Billboards as of December 31, 2020. (*See* ECF No. 177 at 20 (citing Chafizadeh Declaration (ECF No. 115 and 116), Exhibits G-K)).

[5]  Defendants spend the bulk of their reply brief on the equitable estoppel issue by discussing *DeCarlo v. Archie Comic Publications, Inc.*, 127 F. Supp. 2d 497, 510–11 (S.D.N.Y. 2001), which is not controlling nor has it been raised at any earlier point throughout the course of briefing on the partial summary judgment motion, the objections to the R&R, or even in the opening brief to the instant reconsideration motion. *See MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*, 842 F. Supp. 2d 682, 715 (S.D.N.Y. 2012) ("The moving party must demonstrate controlling law or factual matters put before the court on the underlying motion that the movant believes the court overlooked and that might reasonably be expected to alter the court's decision."); *Linden v. Dist. Council 1707-AFSCME*, 415 F. App'x 337, 339 (2d Cir. 2011) (affirming dismissal of reconsideration motion as movant did not identify any relevant

## CONCLUSION

In light of the foregoing, Defendants' motion for reconsideration is DENIED. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 194.

Dated:    November 28, 2022                                                            SO ORDERED:
          White Plains, New York

_____
NELSON S. ROMÁN
United States District Judge

---

facts or controlling authority that the lower court overlooked); *Lichtenberg v. Besicorp Grp. Inc.*, 28 F. App'x 73, 75 (2d Cir. 2002) ("In order to prevail, the moving party "must demonstrate that the Court overlooked controlling decisions or factual matters that were put before the Court on the underlying motion."). In any event, *Decarlo* is distinguishable because the plaintiff in that case failed to voice his understanding of his rights under the contract during the time that the parties had an ongoing business relationship. *See DeCarlo*, 127 F. Supp. 2d at 510 (finding that a party to two copyright agreements had a duty to voice his discontentment to his counterparty and that plaintiff instead "conducted himself in a manner that gave ACP a right to believe it was intended to rely on his acquiescence in its actions.").