USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __5/07/2024__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CLEAR CHANNEL OUTDOOR, LLC,

                                    Plaintiff,

          -against-

CITY OF NEW ROCHELLE, *et al.*,

                                    Defendants.

No. 20 Civ. 9296 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge

Clear Channel Outdoor LLC ("Clear Channel") commenced this action against the City of New Rochelle, Luiz Aragon, in his official capacity as Commissioner of Development, and Paul Vacca, in his officially capacity as Building Official, on November 5, 2011 (collectively, "New Rochelle" or the "City").[1] (ECF No. 1). Clear Channel asserts claims sounding in: (1) multiple provisions of the United States Constitution; (2) New York Highway Law § 88; (3) New York's Eminent Domain Law; (4) breach of contract; and (5) motion to compel compliance with a stipulation entered into by the parties some twenty years prior to this action. Clear Channel also seeks declaratory judgments on a number of its claims.

Presently before the Court are: (1) Clear Channel's motion for partial summary judgment in its favor on causes of action I-VIII, X, and XI (ECF No. 209) and (2) New Rochelle's cross-motion for partial summary judgment on those same claims. (ECF No. 217).

For the following reasons, the Court GRANTS, in part, and DENIES, in part, Clear

---

[1] A separate action, *Vector Media, LLC v. City of New Rochelle, et al.*, No. 21-cv-266-NSR-AEK, was consolidated with the above-captioned matter pursuant to a stipulation dated May 13, 2021. (ECF No. 17). For simplicity and because Vector Media has filed a joinder to the Clear Channel's Motion for Summary Judgment and Opposition to Defendants' Cross Motion for Summary Judgment (*see* ECF Nos. 225 & 232), the Court will only refer to Clear Channel in this Opinion & Order.

Channel's motion for summary judgment, and the Court GRANTS, in part, and DENIES, in part, New Rochelle's cross-motion for summary judgment.

## BACKGROUND

### I.     Factual Background

The parties have submitted briefs, statements of material facts pursuant to Local Civil Rule 56.1, including Clear Channel's Rule 56.1 Statement ("CC 56.1", ECF Nos. 212, 214), New Rochelle's Counter-Statement to Clear Channel's Rule 56.1 Statement ("NR Counter 56.1", ECF Nos. 219, 222), New Rochelle's Rule 56.1 Statement,[2] and Clear Channel's Response to New Rochelle's Rule 56.1 Statement (ECF Nos. 227, 230), and the record and exhibits[3] from discovery in the instant proceeding, which reflect the following factual background.

#### a. The Stipulation

New Rochelle enacted an ordinance requiring the removal of all off-premise billboards within the city limits in 1996. (CC 56.1 ¶ 1). This ordinance was challenged in court, and, in October 2000, the parties settled that dispute pursuant to a stipulation (the "Stipulation"). (*Id*. ¶¶ 2-3; *see also* CC Ex. 3). Clear Channel was not initially a party to the Stipulation but acquired the rights and obligations under it later. (NR Counter 56.1 ¶ 4).

Pertinently, the Stipulation provides that all "Remaining Billboards"[4] would be immune from any New Rochelle code, rule, or regulation requiring the removal of such billboards until December 31, 2020. (Stipulation ¶ 10). The Stipulation also required the removal of seven signs

---

[2] The Court notes New Rochelle never actually filed its own, separate Local Rule 56.1 Statement of Material facts. Happily, Clear Channel filed its response to New Rochelle's 56.1 Statement, and, thus, the Court was able to determine what facts alleged by New Rochelle were in dispute. (*See* ECF Nos. 227, 230).

[3] Citations to "CC Ex." refer to the Exhibits attached to the Declaration of Gordon D. Todd in Support of Motion for Summary Judgment (ECF Nos. 213, 215) and the Supplemental Declaration of Gordon D. Todd in Support of Opposition to the Cross-Motion for Summary Judgment (ECF Nos. 228, 231).

[4] Defined as any "Existing Billboards, any new Billboard permitted to be erected in the I-95 Corridor pursuant to this Stipulation, and such of the Contingent Billboards as are permitted pursuant to this Stipulation." Stipulation ¶ 1(p).

in three phases. (CC 56.1 ¶ 9). The Stipulation does not otherwise require the removal of any signs other than those seven noted previously. (*Id*. ¶ 16). Nor does the Stipulation affirmatively state that Clear Channel has an absolute right to maintain billboards within New Rochelle once the immunity provision expires. (*See* Stipulation). The Stipulation maintains New Rochelle's ability to "repeal, amend, and/or in its sole and absolute discretion, to re-enact any provision of the Sign Ordinance . . . or to enact any other local law governing the erection, maintenance and removal of Billboards." (*Id*. ¶ 14).

### b. The Billboard Ordinance & New Rochelle City Code

On March 20, 2001, New Rochelle amended Section 270-16 of its City Code (the "Billboard Ordinance") to read, in pertinent part, as follows:

> An Existing Billboard, solely in the same location and with the same Sign Area and Height of Sign which existed on March 20, 2001 without any enlargement at any time thereafter permitted, may remain in existence until and shall be removed on or before the earlier to occur of the following events:
> . . .
>
> 2. December 30, 2020.

(*Id*. ¶ 18); *see also* NEW ROCHELLE, N.Y. CODE § 270-16.

A separate provision of the city code permits billboards built "pursuant to" the Stipulation. (CC 56.1 ¶ 19); *see also* NEW ROCHELLE, N.Y. CODE § 270-4(E)(1). These provisions only apply to off-premise signage; the City does not otherwise have legislation mandating the removal of on-premise signage. (*Id*. ¶ 20). An "on-premise" sign advertises goods and services offered at the place where the sign is located. (*Id*. ¶ 24). An "off-premise" sign advertises goods and services offered at another location. (*Id*.). The City defines "billboard" to only apply to off-premise signage. (*Id*. ¶ 25). New Rochelle distinguishes between on-premise and off-premise signage because, in its view and among other reasons, on-premise signage benefits the local economy. (*Id*. ¶ 28).

### c. Clear Channel's Billboard Inventory

Clear Channel owns and operates sixteen billboards within New Rochelle (the "Billboards"). (*Id*. ¶ 56). After enacting the Billboard Ordinance, New Rochelle relied on its home-rule authority to sponsor an amendment to New York State law, which authorized Clear Channel to construct up to six new billboards within the City alongside Interstate 95 ("I-95"). (*Id*. ¶ 29). That legislation went into effect in October 2002. (*Id*. ¶ 30). The legislation was amended again in 2015 to permit the construction of three additional billboards along I-95. (*Id*. ¶ 34). All told, it appears Clear Channel has only built or expanded five billboards in the I-95 corridor (the "I-95 Billboards"). (*See* Report & Recommendation, p.6, ECF No. 170).

Clear Channel's eleven other billboards are located in zones marked as commercial or industrial, or, along with the I-95 Billboards, are located within 660 feet of the nearest edge of the right of way and visible from the main traveled way of one or more I-95, US 1, Main Street, or North Avenue (together with the I-95 Billboards, the "Billboards"). (*Id*. ¶¶ 57-62).

### d. The Request for Proposal

In 2015, New Rochelle engaged outsides advisors to write and administer a Request for Proposal ("RFP") for a comprehensive scheme governing advertisements within the City. (CC 56.1 ¶ 68). The RFP contemplated digital billboards, which are significantly more profitable than static billboards, being built along I-95, where they were previously prohibited. (*Id*. ¶¶ 73-74).

The RFP would grant the winning bidder exclusive rights to build new billboards within New Rochelle after December 30, 2020. (*Id*. ¶ 81). The RFP contemplated that the winning bidder would construct nine new billboards along I-95 in New Rochelle. (*Id*. ¶ 82). The RFP also indicated that the "current City ordinance [required] all [I-95 Billboards to] be removed by 2020 . . ." and further indicated the City was "reviewing its options" as to amending its ordinances to take effect

after 2020. (CC Ex. 33, p.12). Among the reasons for initiating the RFP was to generate revenue. (CC 56.1 ¶ 89).

Applicants were instructed to propose a percentage of revenue to be shared with the City if their bid under the RFP was selected as an "opportunity payment". (*Id*. ¶ 90). Three bidders, including Clear Channel, bid on the RFP, with a non-party selected as the winner (the "RFP Winner"). (*Id*. ¶¶ 92, 97). The RFP Winner entered into a "Master License" with the City in 2017, which granted the RFP Winner the exclusive right to operate billboards in New Rochelle after 2020. (*Id.* ¶ 100). The RFP Winner has built two new billboards on I-95 but is prohibited from building any more unless Clear Channel removes the I-95 Billboards. (*Id*. ¶¶ 101-02).

### e. The Removal Order

The parties dispute exactly when a final decision was made by the City to remove all of Clear Channel's billboards, but the parties do *not* dispute that one was made and, absent this litigation, New Rochelle would require the removal of those billboards. (*Id*. ¶ 108; *see also* NR Counter 56.1 ¶ 108). The City's position is that the twenty-year immunity period granted by the Stipulation was sufficient consideration and no additional compensation was due to Clear Channel for the removal of the Billboards. (NR 56.1 ¶ 109). If Clear Channel complied with the City's directive, it would lose all of the Billboards within New Rochelle. (*Id*. ¶ 113).

Until September 2020, the Billboard Ordinance did not contain a fine provision. (NR 56.1 ¶ 115). On September 22, 2022, the City adopted an amendment to the Billboard Ordinance instituting a fine structure for any billboard within New Rochelle that was not removed by December 31, 2020. (CC Ex. 5). The new fines begin accruing after the billboard owner receives a removal order from the City and a fourteen-day grace period has elapsed, after which a $250 daily fine is imposed for the first six months, a $500 daily fine is imposed for the second six

months, a $1,000 daily fine is imposed for the period one year after receipt of the removal order, and, if the billboard is not removed two years after receipt of the removal order, a $10,000 daily fine. NEW ROCHELLE, N.Y. CODE § 270-16(B).

## II.   Procedural History

Clear Channel commenced this action on November 5, 2020. (ECF No. 1). That same day, it filed a motion for preliminary injunction and supporting papers. (ECF Nos. 5-12). New Rochelle requested an extension of time to respond to the preliminary injunction on November 17, 2020, (ECF No. 30), which Clear Channel opposed. (ECF No. 31). On November 18, 2020, the Court granted New Rochelle's request, (ECF No. 32), and the City filed an opposition on December 15, 2020. (ECF No. 36). Clear Channel replied on December 29, 2020. (ECF No. 37).

Clear Channel also requested oral argument on December 29, 2020, (ECF No. 39), which the Court granted on January 4, 2021. (ECF No. 41). On January 12, 2021, New Rochelle filed its answer. Oral argument was held on January 14, 2021. (Minute Entry for proceeding held before Judge Nelson Stephen Román: Oral Argument held on 1/14/2021). At that hearing, the Court directed the parties to confer and decide whether they would consent to an accelerated discovery schedule and maintain the status quo or whether the Court should issue a decision on Clear Channel's motion. (*Id.*) The parties opted for expedited discovery on January 19, 2021. (ECF No. 43).

As discovery was ongoing, the parties stipulated that the above-captioned matter should be consolidated with *Vector Media, LLC v. City of New Rochelle, et al.*, No. 21-cv-266-NSR. (ECF No. 59). The Court ordered those cases consolidated on May 13, 2021. (ECF No. 60).

Discovery progressed, and at a hearing held before Magistrate Judge Andrew E. Krause, Judge Krause granted Clear Channel leave to file a motion for partial summary judgment. (Minute

Entry for proceedings held before Magistrate Judge Andrew E. Krause: Status Conference held on 12/3/2021). Clear Channel filed that motion for partial summary judgment, along with its supporting papers, on December 27, 2021. (ECF Nos. 97-100). New Rochelle filed its opposition and supporting papers on February 2, 2022, (ECF Nos. 115-16), and, on February 16, 2022, Clear Channel replied. (ECF No. 120).

On September 9, 2022, Judge Krause issued a Report & Recommendation on Clear Channel's motion for partial summary judgment, (ECF No. 17), which this Court adopted, in part, and reversed, in part, in an Opinion & Order dated October 20, 2022. (ECF No. 190). The next day, the Court granted leave for Clear Channel and New Rochelle to file a motion for summary judgment and cross-motion for summary judgment. (ECF No. 191).

On November 11, 2022, New Rochelle filed a motion for reconsideration of the Court's October 20, 2022 Opinion & Order, (ECF No. 194). The Court denied this motion on November 28, 2022. (ECF No. 200).

On April 4, 2023, the parties filed their respective papers on the motion and cross-motion for summary judgment. (ECF Nos. 217-36). Those papers consist of, among others: (1) Clear Channel's (a) Memorandum of Law in Support of Motion for Summary Judgement ("CC Mem.", ECF No. 210) and (b) Consolidated Opposition to Cross-Motion for Summary Judgment and Reply in Support of Motion for Summary Judgment ("CC Reply", ECF No. 224); and (2) New Rochelle's (a) Memorandum of Law in Opposition of Motion for Summary Judgment and in Support of Cross-Motion for Summary Judgment ("NR Opp.", ECF No. 217) and (b) Reply Memorandum of Law in Support of Cross-Motion for Summary Judgment. ("NR Reply", ECF No. 233).

**LEGAL STANDARDS**

Under Federal Rule of Civil Procedure 56(c), summary judgment must be granted if "there is no genuine issue of material fact and ... the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 n. 4 (1986). "[G]enuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, [while] materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 5 (2d Cir. 1999) (internal quotations and citations omitted). In order to prove that a genuine issue of material fact exists, a plaintiff "may not rest upon the mere allegations or denials of the pleading[s]," but must by affidavit or otherwise "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "Conclusory statements, conjecture or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).

Courts must resolve all ambiguities and draw all reasonable factual inferences in favor of the non-moving party. *See Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). The moving party bears the initial burden of demonstrating an absence of genuine issues of material fact. *See Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997). If the initial burden is met, the non-moving party "must produce specific facts indicating that a genuine issue of fact exists. If the evidence [presented by the non-moving party] is merely colorable, or is not significantly probative, summary judgment may be granted." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (internal quotations and citations omitted) (alteration in original).

The same standard of review applies when the Court is faced with cross-motions for summary judgment, as here. *See Lauria v. Heffernan*, 607 F. Supp. 2d 403, 407 (E.D.N.Y. 2009)

(citations omitted).   When evaluating cross-motions for summary judgment, the Court reviews each party's motion on its own merits, and draws all reasonable inferences against the party whose motion is under consideration. *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).

## DISCUSSION

### I.   New Rochelle's Laches & Equitable Estoppel Defenses

At the outset, the Court notes that Defendants have requested the Court consider whether the doctrines of laches and equitable estoppel prevent Clear Channel from raising its claims. (NR Opp. p.35). The Court previously denied New Rochelle's invocation of those defenses. *See Clear Channel I*, 2022 WL 12404476, at *5-8.

#### a.   Laches

"Laches is an equitable defense that bars a plaintiff's claim where he has engaged in 'unreasonable and inexcusable delay that has resulted in prejudice to the defendant.'" *Backyard Brine, Inc. v. Backyard Food Company, LLC*, 2024 WL 815249, at *3 (E.D.N.Y. Feb. 26, 2024) (quoting *Eppendorf-Netheler-Hinz GMBH v. Nat'l Sci. Supply Co.*, 14 Fed. App'x 102, 105 (2d Cir. 2001)).   "[A] party asserting the affirmative defense of laches . . . has the burden to demonstrate two independent elements: (1) unreasonable delay; and (2) prejudice." *Howard Univ. v. Borders*, No. 20-CV-4716 (LJL), 2022 WL 602829, at *15 (S.D.N.Y. Mar. 1, 2022). To establish "unreasonable delay," a defendant has the burden to prove that the plaintiff was "aware of [its] claim and inexcusably delayed in taking action." *Id.* (internal quotation and citation omitted). "The opposing party need not have had actual knowledge of the claim; rather, it is sufficient that the opposing party should have known." *Id.*

In *Clear Channel I*, the Court held that New Rochelle had waived its laches defense pursuant to the Stipulation. *Clear Channel I*, 2022 WL 12404476, at *5-6. New Rochelle does not

assert any new facts or arguments in support of its laches defense, opting instead to rely on its initial arguments. (NR Opp. p.35). Accordingly, the Court finds no basis to shift from that position now and holds that New Rochelle waived a laches defense pursuant to the Stipulation. *See Clear Channel I*, 2022 WL 12404476, at *6; *see also* Stipulation ¶ 10.

### b. Equitable Estoppel

To sustain a defense of equitable estoppel, the asserting party must show: (1) that the opposing party made a material misrepresentation; (2) upon which the asserting party relied; (3) to her detriment. *Reliance Standard Life Ins. Co. v. Luna*, 2023 WL 9232955, at *8 (S.D.N.Y. Dec. 8, 2023) (quoting *Clear Channel I*, 2022 WL 12404476, at *8). The opposing party must have made an "actual misrepresentation" if no fiduciary relationship exists between the parties. *Id*. (citing *Clear Channel I*, 2022 WL 12404476, at *8) (internal quotations omitted).

New Rochelle's equitable estoppel defense fails much like it did with laches. New Rochelle reiterates that Clear Channel made a "longstanding concession" that it understood all of its billboards would be removed without additional compensation as of December 31, 2020. (NR Opp. p.35). As the Court noted in *Clear Channel I*, however, a dispute over legal interpretation renders equitable estoppel inapplicable, *Clear Channel I*, 2022 WL 12404476, at *8 (citing *Coggins v. Cnty. Of Nassau*, 615 F. Supp.2d 11, 23 n.4 (E.D.N.Y. 2009)), a point New Rochelle, itself,

reinforces by noting in its brief that "[t]he issues in the case are hotly contested, as evidenced by multiple years of litigation . . . ." (NR Opp. p.34).

As such, the Court holds again that New Rochelle is barred from raising an equitable estoppel defense and DENIES the City's cross-motion for summary judgment on these points.

## II.    The Scope of the Billboards At Issue

The parties are in dispute as to which of Clear Channel's billboards are at issue in this matter. New Rochelle argues that provisions of its City Code separate from the Billboard Ordinance mandate removal.

### a.   City Code § 270-4(E)(1)

Clear Channel takes the position, correctly that the Court has already ruled that I-95 Billboards are exempt from the Billboard Ordinance and thus cannot be removed pursuant to said ordinance.[5] (CC Mem. p.5); *see also Clear Channel I*, 2022 WL 12404476, at *5. New Rochelle concedes that the I-95 Billboards are, per *Clear Channel I*, exempt from the Billboard Ordinance, but contends that New Rochelle City Code Section § 270-4(E)(1) ("City Code § 270-4(E)(1)") nevertheless requires the removal of those billboards. (NR Opp. pp.8-10).

City Code § 270-4(E)(1)) prohibits all billboards except those "[l]egally existing billboards or [pursuant to the [Stipulation]] . . . ." NEW ROCHELLE, N.Y. CODE § 270-4(E)(1). A "legally existing" billboard is one that existed as of March 20, 2001. *Id*. § 270-2(B). New Rochelle's argument is that, since the Stipulation expired on December 31, 2020, (Stipulation ¶ 18), City Code § 270-4(E)(1)'s prohibition on billboards thus mandates the I-95 Billboards' removal. (NR Opp. p.10). Clear Channel counters that City Code § 270-4(E)(1) authorizes the I-95 Billboards. (CC

---

[5] Clear Channel also erroneously argues at points that this Court issued a permanent injunction preventing the removal of the I-95 Billboards in *Clear Channel I*. (CC 56.1 ¶ 62; *see also* ECF No. 190). Clear Channel points to a proposed order it submitted, which the Court did not so-order. (*See* ECF No. 101). In reality, the Court ruled on the narrow legal issue of whether the Billboard Ordinance applied to the I-95 Billboards.

Reply p.4). More specifically, Clear Channel reads City Code § 270-4(E)(1) to exempt the I-95 Billboards from the Billboard Ordinance. (*Id*. pp.4-5). In sum, Clear Channel's argues that once built pursuant to the Stipulation, a billboard is exempt from the Billboard Ordinance and that City Code § 270-4(E)(1) does not, itself, mandate removal.

For all of its arguments of statutory interpretation with respect to City Code § 270-4(E), (*see, e.g.,* CC Reply pp.4-7), Clear Channel never adequately contends with the fact that the immunity from the City's regulations granted Stipulation evaporated as of December 31, 2020 and has no more legal effect. (Stipulation ¶ 10). Clear Channel argues that "pursuant to", as used in City Code § 270-4(E), is not limited to the time period in which the Stipulation is effective. (CC Reply p.7, n.5). For support, Clear Channel focuses on the use of "pursuant to" in City Code § 270-3(P). City Code § 270-3(P) authorizes billboards built pursuant to the Master License. NEW ROCHELLE, N.Y. CODE § 270-3(P). Under the Master License, the ownership of billboards constructed transfers to the City upon the expiration of the Master License. (CC Ex. 39, ¶ 11). In essence, Clear Channel argues that, with the Master License's expiration, those billboards would become "illegal" and thus it "would make no sense" for New Rochelle to take title to those signs. (CC Reply p.7, n.5). The Court struggles to see why so. It is apparent that taking title to the sign at the expiration of the Master License would then allow New Rochelle considerable latitude in deciding whom, if anyone, would be able to operate billboards built pursuant to the Master License, keeping with the considerable thought and exertion the City has expended in planning for billboards throughout New Rochelle. Moreover, if those billboards are illegal, it is best for the City to take title and then issue a new license to an entity to operate those billboards legally.

Reading "pursuant to" as time limited is also the least strained interpretation of the statute. It would be a strange interpretation to read the Stipulation to provide a contractual twenty-year

immunity period but which that extends indefinitely into the future because of a legislative quirk. As such, the Court holds that City Code § 270-4(E) requires the removal of the I-95 Billboards and City Code § 270-16 requires the removal of Clear Channel's other billboards.

III.    **Whether New Rochelle Has a Legal Basis To Remove the Billboards Without Just Compensation – Count VII**

Clear Channel alleges that New Rochelle is legally barred from removing its Billboards without just compensation and requests injunctive relief from New Rochelle ordering the removal of said Billboards absent the prior payment of just compensation. (Compl. ¶¶ 151-58, p.33 ¶ A).

Clear Channel first argues that the Stipulation grants New Rochelle no affirmative right to remove the Billboards. (CC Mem. pp.16-17). New Rochelle does not contest this argument, (*see* NR Opp. p.7-8), as discussed in more detail in Section VIII.a.i, *infra*.

Clear Channel's remaining argument is that, because of an interwoven set of federal, state, and local laws, New York law prohibits New Rochelle from removing the Billboards. (CC Mem. pp.18-21). The Billboard Ordinance does not provide for additional compensation, and thus, Clear Channel insists, it runs afoul of those interwoven laws,[6] most pertinently New York Highway Law § 88(7) ("Section 88(7)"). (*Id.*)

a.   **New York Highway Law § 88(7)**

Section 88(7) provides, in pertinent part, that: (1) "notwithstanding the provisions of . . . any . . . local law, no outdoor advertising sign for which compensation must be paid pursuant to this subdivision, nor [(2)] any outdoor advertising sign in a commercial or industrial zone or area which is controlled pursuant to this section, [(3)] shall be removed, or required to be removed, by

---

[6] Clear Channel provided a useful explanation of the interplay between Federal and State highway laws. (CC Mem. pp.10-14). For purposes of this Order & Opinion, it is only necessary to focus on N.Y. High. Law § 88(7) and will proceed accordingly.

. . . any municipal corporation . . . without the payment of [just] compensation in accordance with article five of the eminent domain procedure law . . . ." N.Y. High. Law § 88(7). By its clear terms, Section 88(7) supersedes the Billboard Ordinance. The questions then become: (1) whether the Billboards are located in a commercial or industrial zone, or another zone controlled by Section 88(7), and (2) if so, whether just compensation has been, or must still be, paid prior to any removal.

### i.   Geographic Scope of New York Highway Law § 88(7)

Section 88(7) plainly covers all of the Billboards. In addition to covering billboards located in commercial or industrial zones, Section 88(7) extends to all signs within "six hundred sixty feet of the nearest edge of the right of way and visible from the main traveled way of the interstate and primary highway systems . . . ." N.Y. High. Law § 88(2). The parties do not dispute that seven of the Billboards are located within six hundred and sixty feet of I-95. (CC 56.1 ¶ 57). The same is true of the I-95 Billboards. (*Id*. ¶ 62). The four remaining billboards are located in areas zoned as "Light Industry" or "Neighborhood Business", which are each considered "Commercial and Industrial Districts" under the City Code. (CC 56.1 ¶¶ 58-61); *see also* NEW ROCHELLE, N.Y. CODE § 331-5. As such, all of the Billboards are covered by Section 88(7). The Court will now turn to the issue of just compensation.

### ii.   Just Compensation Under New York Highway Law § 88(7)

New Rochelle has not provided just compensation as required by Section 88(7). The parties hotly contest whether the twenty-year immunity period granted under the Stipulation functioned as amortization sufficient to qualify as just compensation within the meaning of Section 88(7).

New York law generally provides for amortization if billboards are required to be removed, unless such signs are subject to Section 88(7). N.Y. Gen. Mun. Law § 74-c(2). Clear Channel thus

argues amortization is prohibited for billboards within Section 88(7)'s ambit. (CC Mem. pp.20-21).

New Rochelle responds with a line of case law beginning with *Harbison v. City of Buffalo*. (NR Opp. p.14). In that case, the New York Court of Appeals blessed the use of an amortization period when a municipality requires the removal of billboards on land owned by the billboard operator. *Harbison v. City of Buffalo*, 12 N.Y.2d 553, 563 (N.Y. 1958). Next, the Court of Appeals laid out a test for determining whether an amortization period was reasonable in *Modjeska Sign v. Berle*, 43 N.Y.2d 468, 479-80 (N.Y. 1977). (*See also* NR Opp. p.14).

New Rochelle also cites *Suffolk Outdoor Adv. Co. v. Hulse* (hereinafter, *Hulse*), which states "we find no merit that . . . section 88 of the Highway Law precludes the removal of nonconforming billboards without compensation." *Hulse*, 43 N.Y.2d 483, 491 (N.Y. 1977); (*see also* NR Opp. p.14). Further, the City relies on *Matter of Suffolk Outdoor Adv. Co. v. Town of Southampton* (hereinafter, *Southampton*), which involved N.Y. High. Law § 88(9) and held that amortization was a proper means of compensation unless and until the legislature amended the section to require additional compensation. *Southampton*, 60 N.Y.2d 70, 75-76 (N.Y. 1983); *see also* NR Opp. p.14). Section 88(9) provides that "[n]othing in this section shall be construed to abrogate or affect the provisions of any other statute, lawful ordinance, regulation pursuant thereto or resolutions which are more restrictive than the provisions of this section or the agreement ratified and approved by this section."

In response, Clear Channel highlights an amendment to Section 88(7) that went into effect after the decision in *Southampton* was issued, with the amendments bolded:

> [N]otwithstanding the provisions of this section or any other general, special or local law, no outdoor advertising sign for which compensation must be paid pursuant to this subdivision, **nor any outdoor advertising sign in a commercial or industrial zone or area which is controlled pursuant to this section, shall be**

> **removed, or required to be removed,** by . . . any municipal corporation or subdivision, **without the payment of such compensation** in accordance with the provisions of article 5 of the eminent domain procedure law . . . ."

Act of July 10, 1989, ch. 335, § 1, 1989 N.Y. Laws 335 (codified at N.Y. High. Law § 88(7)); (*see also* CC Ex. 19 p.6). Clear Channel also provided documents from the New York State Executive branch indicating their understanding that the above amendment overruled the *City of Buffalo-Southampton* line of cases. (*See* CC Ex. 19 at pp.13, 22).

New Rochelle responds that, whatever the amendment to Section 88(7), Section 88(9) has never been modified despite the Court of Appeals' focus on that provision in *Southampton*. (NR Reply p.4); *see also Southampton*, 60 N.Y.2d at 76 ("In the absence of specific amendment to subdivision 9, . . . as a matter of State law, . . . petitioners are entitled to no more than a reasonable amortization period"). True enough. It is also true that Court of Appeals has yet to weigh in on the amended Section 88(7). Finally, the City contends that the amended Section 88(7) only requires compensation to entities that own both the billboard at issue and the land on which it stands. (*Id.*)

The statute's plain language settles the dispute in Clear Channel's favor. Here, if New Rochelle has its way, Clear Channel's billboards will be "required to be removed" and thus "payment of . . . compensation in accordance with the provisions of article five of the eminent domain procedure law . . ." is required. N.Y. High. Law § 88(7). The bill memorandum for the amended version of Section 88(7) further supports this conclusion, stating its purpose is to "require[] just compensation to be paid for the removal of lawfully erected outdoor advertising devices in non-residential, non-agricultural areas and those on the Federal Interstate and Primary Highway System." (CC Ex. 19 p.10). Indeed, the only New York State court to weigh in on Section 88(7), conveniently in a matter involving a request to remove billboards, reached the same conclusion. *Town of Macedon v. Hsarman*, 844 N.Y.S.2d 825, 831 (N.Y. Sup. Ct. 2007) (holding

that compensation, and not amortization, was required by Section 88 after reviewing the statute's unambiguous language and legislative history). The Court sees no reason to depart from the New York State court's holding in *Hsarman*.

The Court accordingly GRANTS Clear Channel's motion for summary judgment with respect to its Count VII, DENIES New Rochelle's cross-motion with respect to the same, and ENJOINS New Rochelle from requiring the removal of the Billboards absent prior payment of just compensation in accordance with Section 88(7) to Clear Channel.

## IV.   Whether the Removal of the Billboards Constitutes an Unconstitutional Taking – Counts I and II

Clear Channel's Counts I and II allege violations of the Fifth Amendment's Takings Clause for lack of public purpose and failure to pay just compensation, respectively, and requests declaratory judgment stating as much. (Compl. ¶¶ 103-117, pp.33-34 ¶ B).

The Takings Clause guarantees private property shall not "be taken for public use, without just compensation." U.S. CONST. amend. V. The Takings Clause protects against actual, physical taking of property as well as regulatory action that goes "'too far' in restricting a landowner's ability to use his own property." *Community Housing Improvement Program v. City of New York*, 59 F.4th 540, 553 (2d Cir. 2023) (quoting *Horne v. Department of Agriculture*, 576 U.S. 350, 360 (2015)). To determine whether a regulatory taking has occurred, courts are to apply the "ad hoc, factual inquiry" set forth in *Penn Central Transp. Co. v. City of New York*, which focused on: (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action. *Id.* (quoting *Penn Central*, 438 U.S. 104, 124 (1978)). A Takings Clause ripens when a "state regulatory agency . . . render[s] a final decision on [the challenged action.]" *Sagaponack*

*Realty, LLC v. Village of Sagaponack*, 778 Fed. App'x 63, 64 (2d Cir. 2019) (summary order) (citing *Knick v. Township of Scott, Pennsylvania*, 588 U.S. 180, 187-88 (2019)). A taking will be upheld when it is done for a public purpose and the owner receives just compensation. *Brinkmann v. Town of Southold, New York*, 96 F.4th 209, 211 (2d Cir. 2024).

That billboards are protected by the Takings Clause is evident in the case law and, as the Court has already found, Section 88(7)'s mandate that the any removal pertinent to this case must comply with New York's eminent domain procedure law. *See Schulman v. Assessor of Town of Thompson*, 156 N.Y.S.3d 509, 510 (N.Y. App. Div. 2021); *see also* N.Y. High. Law § 88(7). Given New Rochelle's position, and the Court's holding, that a combination of the Billboard Ordinance and City Code § 270-4(E)(1) require the removal of the Billboards, there would indisputably be a regulatory taking.

Even so, New Rochelle asserts the Takings Clause claims are nevertheless not ripe. The City correctly notes that no taking has actually yet occurred. (NR Opp. p.23). The parties do not dispute, however, that a final decision was made to remove the Billboards. (CC 56.1 ¶ 108; New Rochelle Tr. p.307, 9-25; p.308, 1-17). It is of no moment that the City decided to abstain from removal for the pendency of this litigation—at the time this action commenced, New Rochelle fully intended to remove the Billboards. (*See* ECF No. 43) That is, a final decision to remove the

Billboards was made, and Channel's Claims are ripe. *See Sagaponack Realty, LLC* 778 Fed. App'x at 64.

### a. Whether New Rochelle Had a Public Purpose – Count I

Count I is premised on the theory that New Rochelle violated the Takings Clause because it lacks a public use for removing the Billboards. (Compl. ¶¶ 103-08).

New Rochelle asserts that removing the Billboards serves the public use of public aesthetics and safety. (NR Opp. p.24). Clear Channel charges that the City is removing its signs so that the RFP Winner may construct signs in New Rochelle and that any discussion of aesthetics and safety is mere pretext. (CC Mem. pp.22-24; CC Reply p.23). Clear Channel otherwise concedes that regulating to promote public health, safety, and welfare is otherwise a proper exercise of regulatory power. (CC Reply p.32).

The Second Circuit recently held "that when [a] taking is for a public purpose, courts do not inquire into alleged pretexts and motives." *Brinkmann v. Town of Southold, New York*, 96 F.4th 209, 211 (2d Cir. 2024). That is, a taking will satisfy the public use prong "if viewed objectively, the [taking] bears at least a rational relationship to [a] well-established category of public use[.]" *Id*. at 214 (quoting *Goldstein v. Pataki*, 516 F.3d 50, 58-59 (2d Cir. 2008)) (internal quotations omitted). Public health, safety, and welfare is one such well-established public use. *See, e.g., Kelo v. City of New London, Conn.*, 545 U.S. 469, 481 (2005) (noting that "'[t]he concept of public welfare is broad and inclusive [and t]he values it represents are spiritual as well as physical, aesthetic as well as monetary.'" (quoting *Berman v. Parker*, 348 U.S. 26, 33 (1954)); *see also*

*Berman*, 348 U.S. at 32 ("Public safety [and] public health . . . are some of the more conspicuous examples of the traditional application of the police power to municipal affairs").

Removal of the Billboards is rationally related to New Rochelle's claims of safety and aesthetics: by their nature, they are intended to catch the attention of drivers on I-95 and elsewhere throughout the City. With the inquiry into pretext "wisely foreclose[d]", then, the Court must take New Rochelle's stance at face value. *Brinkmann*, 96 F.4th at 214.

Therefore, the Court DENIES Clear Channel's motion for summary judgment with respect to Count I and GRANTS New Rochelle's with respect to the same.

### b.  Whether New Rochelle Must Pay Just Compensation – Count II

Count II alleges that New Rochelle violated the Takings Clause by failing to pay just compensation. (Compl. ¶¶ 109-117).

New Rochelle's position is that the twenty-year amortization period granted by the Stipulation suffices as compensation. (NR Opp. p.24; NR Reply p.9). Neither the Supreme Court nor the Second Circuit have addressed the issue of whether a period of amortization would satisfy the constitutional requirement of just compensation, and this Court need not address the issue.

The Court has already found that New York law requires additional compensation before the Billboards can be removed. The Court has also found that the Stipulation does not, by its terms alone, require the removal of the Billboards. Thus, the amortization period functioned as consideration for the benefits bestowed upon New Rochelle by the Stipulation, including the removal of "Phase I, Phase II, and Phase III" billboards, an indemnity, a limitation on fees and costs, and, most generally, the cessation of litigation during the term of the Stipulation. Stipulation ¶¶ 3, 6-7, 15-16. To tie things together, the amortization period functioned as consideration for an agreement that does not require removal of the billboard—it cannot then dually serve as just

compensation for constitutional purposes when New Rochelle seeks to exercise its regulatory powers.

As such, the Court GRANTS Clear Channel's motion for summary judgment with respect to Count II and DENIES New Rochelle's cross-motion for summary judgment with respect to the same.

## V.     Whether the Billboard Ordinance Violates the First Amendment – Count V

Count V alleges the Billboard Ordinance violates the First Amendment and seeks declaratory judgment to that effect. (Compl. ¶¶ 132-42, p.33-34 ¶ B). Clear Channel expands on this claim in its moving papers, asserting that the Billboard Ordinance is unconstitutional on its face and as applied to the Billboards. (NR Mem. p.26). The posting of billboards is conduct protected by the First Amendment. *See Clear Channel Outdoor, Inc. v. City of New York*, 608 F. Supp.2d 477, 502 (S.D.N.Y. 2009) (in a case challenging a ban on billboards on New York City's arterial highways and parkways, noting that the plaintiffs were "certainly engaged in protected speech . . ." with their billboards). In particular, Clear Channel argues that the Billboard Ordinance's removal requirement and fee structure for off-premise advertising, while leaving on-premise advertising unbothered, violates the First Amendment.

### a.  The Level of Scrutiny To Be Applied

The parties dispute what level of scrutiny the Court should review this claim. (CC Mem. pp.26-30; NR Opp. pp.24-26). Relying on *City of Austin v. Reagan National Advertising of Austin, LLC*, 596 U.S. 61 (2022) (hereinafter, "*Reagan*"), Clear Channel argues the Billboard Ordinance, while facially a content-neutral restriction, is nevertheless subject to strict scrutiny. (CC Mem. pp.26-28). New Rochelle responds that *Reagan* "conclusively" rejected Clear Channel's argument

21

and upheld on-premise/off-premise regulations as reviewable under intermediate scrutiny. (NR Opp. pp.24-26).

In *Reagan*, the Supreme Court held regulations regarding off-premise signs, including billboards, are not subject to strict scrutiny—with the important caveat that "evidence [of] an impermissible purpose or justification . . ." may nevertheless result in a facially content neutral regulation being subjected to strict scrutiny. *Reagan*, 596 U.S. at 64, 77. Clear Channel asserts that the Billboard Ordinance serves two impermissible purposes: First, that it prioritizes the speech of local businesses over those that advertise on the Billboards, who may not be local. (CC Mem. p.27). Second, Clear Channel argues the Billboard Ordinance effects an unconstitutional permitting fee system. (*Id*. pp.27-28).

Clear Channel's first basis runs aground on *Reagan*. Clear Channel argues that the Billboard Ordinance preference to one type of speaker, that of local businesses advertising on their property, over those who advertise via the Billboards—and who, thus, may not be local. (*Id*. p.27). This is a blatant attempt at an end run around *Reagan* and consequently fails. Just as in *Reagan*, the Billboard Ordinance "requires an examination of speech only in service of drawing neutral, location-based lines [. . .]" and it is otherwise "agnostic as to content." *Reagan*, 596 U.S. at 69.

Clear Channel's fee system argument also fails. The Billboard Ordinance, specifically defined in both the Complaint and Clear Channel's Memorandum in Support of Motion for Summary Judgement as City Code § 270-16, (*See* Compl. ¶ 68; *see also* CC Mem. p.2 ("New Rochelle Code § 270-16(A) (the 'Billboard Ordinance')"), implements an escalating series of fines against non-conforming billboard owners who fail to remove a billboard after receiving an order to do so. NEW ROCHELLE, N.Y. CODE § 270-16(B)(2), (3). Curiously, Clear Channel refers to these fines as a "permitting fee" and an "opportunity payment" for, it appears, the placement of

billboards. (CC Mem. p.27). These are an odd fit and do not "permit" the billboards to remain: the escalating fees are obviously designed to force removal of the billboards. *See* NEW ROCHELLE, N.Y. CODE § 270-16(B)(2). The escalating nature of the fines also precludes comfortably describing them as "opportunity payments".

In its memorandum arguing this point, Clear Channel references its arguments that City's order to remove the Billboards violates the Takings Clause. (CC Mem. p.27 ("New Rochelle's application of its on/off-premise advertising distinction imposes an unconstitutional permitting fee on protected speech. *Supra* p.24 . . ."). That reference resolves this curious argument: the relevant page makes no mention of the Billboard Ordinance and is, instead, solely focused on the RFP. (*See Id*. p.24). The RFP is not the Billboard Ordinance—again, as specifically defined by Clear Channel. (*See* Compl. ¶ 68; *see also* CC Mem. p.2). Moreover, the Billboard Ordinance does not directly implicate the RFP. It only: (1) defines legally existing billboards; (2) directs the Building Official to issue an order of removal to any billboard in violation of the City Code and (3) sets a serious of escalating fines. NEW ROCHELLE, N.Y. CODE § 270-16(A)-(B). Taken together, Clear Channel appears to be attempting to convert its First Amendment claim with respect to the Billboard Ordinance into one challenging the RFP. This it plainly cannot do and, instead, Clear Channel should have sought leave to amend its complaint.

In sum, Clear Channel has failed to show a "content-based purpose or justification" such that the Court reviews the Billboard Ordinance under strict scrutiny. *Reagan*, 596 U.S. at 69 Instead, the Court will analyze the claim under intermediate scrutiny. *Id*.

### b.  The Merits of Count V

A reasonable restriction on the time, place, or manner of protected speech will survive intermediate scrutiny if it is "narrowly tailored to serve a significant government interest, and . . .

leaves open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 701 (1989). Such a restriction is narrowly tailored when it "'promotes a substantial government interest that would be achieved less effectively absent the regulation,' and is 'not substantially broader than necessary to achieve the government's interest.'" *Case v. City of New York*, 408 F. Supp.3d 313, 331 (S.D.N.Y. 2019) (quoting *Rock Against Racism*, 491 U.S. at 799-800). When it comes to outdoor commercial advertising, a municipality's regulation will receive deference and survive constitutional muster so long as it is reasonable. *Clear Channel Outdoor, Inc.*, 594 F.3d at 104 (citing *Rock Against Racism*, 491 U.S. at 800). That is, courts are "loath to second-guess the government's judgment" in enacting a restriction traditionally within its purview to regulate. *Vugo, Inc. v. City of New York*, 931 F.3d 42, 58 (2d Cir. 2019) (quoting *Board of Trustees of State University of New York v. Fox*, 492 U.S. 469, 478 (1989)) (cleaned up).

The Billboard Ordinance is a reasonable restriction and does not run afoul of the First Amendment. The purpose of the overarching portion of City Code of which the Billboard Ordinance is a part "is to promote and protect the public health, welfare, and safety by regulating signs of all types [. . .] protected pedestrian and vehicular safety, protect property values, protect and enhance the aesthetic environment and enhance [New Rochelle's] ability to attract sources of economic development and growth." NEW ROCHELLE, N.Y. CODE § 270-1. Clear Channel does not contest that this stated purpose is a significant interest that can support a constitutionally sound restriction. (CC Mem. p.28).

Nor could it, because the Supreme Court itself has upheld restrictions distinguishing between on-premise and off-premise signage. *See Metromedia, Inc. v. City of San Diego*, 453 U.S. 490 (1981). Indeed, the Supreme Court has found billboards "undoubtedly . . . divert a driver's

attention from the roadway" and thus function as "traffic hazards". *Metromedia, Inc.*, at 508-09. Moreover, the Supreme Court found it was "not speculative" that billboards can amount to "esthetic harm[s.]" *Id.* at 510 (1981). The Supreme Court also approved of a municipality's conclusion that a commercial business and the public have a greater interest in "identifying [a] place of business and advertising the products or services available there . . ." than in allowing advertisements for enterprises that may located elsewhere. *Id*. at 512. With the Supreme Court's imprimatur in hand, this Court sees no reason to stray from *Metromedia*.

Accordingly, the Court DENIES Clear Channel's motion for summary judgment with respect to Count V and GRANTS New Rochelle's as to the same.

**VI.    Whether the Removal Order Violates the Due Process Clause – Counts III, IV, & VIII**

Clear Channel argues that the New Rochelle's decision to remove the Billboards violates the Due Process Clause, (*see* Compl. ¶¶ 118-31), and further argues New Rochelle will violate New York State's Eminent Domain Procedure Law ("EDPL") in effectuating that removal without just compensation. (*See Id.* ¶¶ 159-65). Clear Channel also seeks declaratory judgment to that effect. (*Id*. pp.33-34, ¶ B).

The Court declines to exercise its permissive jurisdiction under the Declaratory Judgment Act with respect to each of these claims. The Declaratory Judgment Act empowers courts to "declare the rights and other legal relations of any interested party seeks such a declaration" in the event of an "actual controversy." 28 U.S.C. § 2201(a). When deciding whether to exercise its "permissive jurisdiction, a district court may consider equitable, prudential, and policy arguments, . . . and must examine the situation in its entirety." *Frontier Airlines, Inc. v. AMCK Aviation Holdings Ireland Ltd.*, 676 F. Supp.3d 233, 254 (S.D.N.Y. 2023) (cleaned up). In particular, "[a] court must also consider (1) whether the judgment will serve a useful purpose in clarifying or

settling the legal issues involved and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *Id.* (cleaned up).

The Court has already held that Highway Law 88(7) requires New Rochelle to pay just compensation for the removal of the Billboards in accordance with the EDPL. *See supra* III.a.ii. The EDPL's purpose is to "

> assure that just compensation shall be paid to those persons whose property rights are acquired by the exercise of the power of eminent domain; to establish opportunity for public participation in the planning of public projects necessitating the exercise of eminent domain; to give due regard to the need to acquire property for public use as well as the legitimate interests of private property owners, local communities and the quality of the environment, and to that end to promote and facilitate recognition and careful consideration of those interests; to encourage settlement of claims for just compensation and expedite payments to property owners; to establish rules to reduce litigation, and to ensure equal treatment to all property owners.

N.Y. EM. DOM. PROC. LAW § 101. More succinctly, the EDPL is designed to provide constitutionally sound procedure and just compensation to owners whose property is taken. The Court's prior holding, then, obviates the need to issue declaratory relief with respect to Counts III, IV, and VIII.

## VII.   Whether the Billboard Ordinance Violates the Excessive Fines Clause – Count VI

Clear Channels Count VI asserts the Billboard Ordinance violates the Excessive Fines Clause located in the Eighth Amendment, and requests declaratory judgment to that effect. (Compl. ¶¶ 143-50, pp.33-34, ¶ B).

The Eighth Amendment provides "Excessive bail shall not be required nor excessive fines imposed . . . ." U.S. CONST. amend. VIII. The Excessive Fines Clause has been incorporated against the States. *Timbs v. Indiana*, 139 S. Ct. 682, 687 (2019). Any "payment to a sovereign as punishment for some offense [. . .]" falls within the ambit of the Excessive Fines Clause. *State v. United Parcel Service, Inc.*, 253 F. Supp.3d 583, 691 (S.D.N.Y. 2017) (quoting

*United States v. Bajakajian*, 524 U.S. 321, 327-28 (1998)). Civil fines that serve "retributive or deterrent purposes" are governed by the Excessive Fines Clause. *Austin v. United States*, 509 U.S. 602, 621-22 (1993). A fine violates the Excessive Fines Clause if it is "grossly disproportional to the gravity" of the offending conduct. *United Parcel Service, Inc.*, 253 F. Supp.3d at 691 (quoting *Bajakajian*, 524 U.S. at 334).

The parties first dispute whether the Billboard Ordinance's fine structure is punitive and thus governed by the Eighth Amendment. New Rochelle cites to a case for the proposition that fines "intended to secure compliance" are outside the scope of the Excessive Fines Clause. *Kirsh v. City of New York*, No. 94 Civ. 8489 (RSWS), 1995 WL 383236, at *8 (S.D.N.Y. 1995), *aff'd* 159 F.3d 1347 (2d Cir. 1998). Clear Channel marshals a case in direct contravention, holding that deterring violations was, in fact, a punitive goal governed by the Excessive Fines Clause. *Rojas v. Triborough Bridge and Tunnel Authority*, 18-cv-1433 (PKC), 2022 WL 748457, at *7 (S.D.N.Y. Mar. 10, 2022). The Court is inclined to agree with Clear Channel. It cannot be that the Constitution can countenance, for example, a parking ticket in the millions of dollars solely because it is intended deter violations and to spark compliance with local parking rules.

Having held that the Billboard Ordinance's fine structure is punitive, it is nevertheless not grossly disproportional. Clear Channel focuses on the fact that the Billboard Ordinance could result in a $150 million fine per year and $10,000 daily fine. (CC Mem. p.33). Fines of that magnitude would only result, however, after *years* of willful noncompliance from Clear Channel. Most pertinently, the daily $10,000 fine is not imposed until two years have elapsed from the date of a written notice of removal. *See* NEW ROCHELLE, N.Y. CODE § 270-16(B)(2). Initially, billboard owners are given a fourteen-day grace period from the date they receive a notice of removal, after which the fines ramp up from $250 per day until six months have elapsed, $500

per day until one year has elapsed, $1,000 per day until two years have elapsed, and then, as noted, $10,000 per day thereafter. *Id*.

Blatant disregard for a valid exercise of governmental authority for a period of two years that results in a $10,000 per day fine is not "grossly disproportional". *United Parcel Service, Inc.*, 253 F. Supp.3d at 691 (quoting *Bajakajian*, 524 U.S. at 334). Such open, extended contempt for governmental authority cannot go unpunished. The fourteen-day grace period and the six-month intervals at which the applicable fines are increased are sufficient to place the Billboard Ordinance within the safe harbor of constitutionality.

Clear Channel's motion for summary judgment as to Count VI is DENIED, and New Rochelle's with respect to the same is GRANTED.

## VIII.   Breach of the Stipulation and Motion to Compel Compliance – Counts X & XI

Clear Channel asserts that New Rochelle breached the terms of the Stipulation in its Count X, (Compl. ¶¶ 173-80), and, accordingly, moves to compel New Rochelle to comply with the terms of the Stipulation in its Count XI. (*Id*. ¶¶ 181-85).

### a.   Breach of the Stipulation – Count X

Generally, a stipulation is an independent contract which is subject to the principles of contract law. See *McWade v. McWade*, 253 A.D.2d 798, 799 (2nd Dep't 1998). A breach of stipulation or contract claim consists of four elements: (1) a valid contract existed between the parties; (2) the defendant breached the contract; (3) the claimant performed its obligations under the contract; and (4) the claimant was damaged by the defendant's breach. *Mohegan Lake Motors, Inc. v. Maoli*, 559 F. Supp.3d 323, 345-46 (S.D.N.Y. 2021) (citing *Clear Choice Enters., Inc. v.*

*Cellebrite USA, Inc.*, No. 14-CV-3372 ADS SIL, 2015 WL 1469298, at *6 (E.D.N.Y. Mar. 28, 2015)).

Clear Channel alleges New Rochelle breached the stipulation in three ways: First, Clear Channel argues that the Stipulation does not mandate or require the removal of Clear Channel's Billboards. (CC Mem. pp.18, 33). Second, Clear Channel argues that New Rochelle's position that the twenty-year immunity period constitutes amortization sufficient such that no further compensation is required for removal of the Billboards breaches the Stipulation. (*Id*. p.34). Finally, New Rochelle breached the Stipulation by attempting to enforce the Stipulation's requirements outside of that agreement's Paragraph 17. (*Id*. pp.34-35). The Court will address each in turn.

### i. Whether the Stipulation Requires Removal of Billboards

Clear Channel contends that the Stipulation grants it the right to operate its billboards through at least 2020, with that right only being curtailed if New Rochelle enacts a law requiring the removal of those billboards. (CC Mem. pp.33-34 (citing Stipulation ¶ 10)). In other words, Clear Channel argues that the Stipulation does not compel the removal of its billboards. (*Id*. p.16). Clear Channel also relies on *Clear Channel I* where this Court held that the Stipulation did not require Clear Channel to remove the "Remaining Billboards", as defined in the Stipulation. (*Id*. p.33); *see also Clear Channel I*, 2022 WL 12404476, at *4-5. New Rochelle seems to agree, stating that it only "seeks to do what was bargained for: enforce legislation as set forth in its City Code . . ." and further stating that Clear Channel's argument that the Stipulation alone does not grant the power to remove the billboards "misses the point." (NR Opp. pp.7-8). That is, New Rochelle does

not indicate that it purports to exercise, or intends to exercise, any removal power granted under the Stipulation.

There being no dispute as to the powers granted under the Stipulation, then, the Court GRANTS Clear Channels' motion for summary judgment to the extent that the Court declares the Stipulation does not mandate the removal, nor grant New Rochelle the power to remove, Clear Channel's Billboards.

### ii.   Whether the Twenty-Year Immunity Period Amounts to Amortization & Sufficient Consideration for Removal

The Court has already held that the twenty-year immunity period granted by the Stipulation is insufficient compensation to require the removal of the Billboards. *See* III.a.ii, *supra*. Again, however, New Rochelle does not assert that the Stipulation grants the right to remove the Billboards, the City expressly relies on its City Code for that power. (NR Opp. p.7). That is, while the twenty-year immunity period is insufficient as just compensation for the removal of the Billboards, taking that legally incorrect position does not amount to a breach of the Stipulation. Clear Channel's proper remedy for this position is, as analyzed above, to rely on the provisions of Highway Law 88(7)—as it has.

The Court therefore DENIES Clear Channels' motion for summary judgment to the extent that Clear Channel contends New Rochelle's erroneous position that the twenty-year immunity period granted by the Stipulation was sufficient consideration for the removal of the Billboards amounted to a breach of the Stipulation.

### iii.   Whether New Rochelle Breached the Stipulation's Paragraph 17

Finally, Clear Channel argues that New Rochelle breached the Stipulation by "attempting to enforce the Stipulation's requirements outside of the procedures contained in Paragraph 17."

(CC Mem. p.34). Paragraph 17 grants the parties a right to seek an order of the court to enforce the Stipulation in the event of a default. (Stipulation ¶ 17).

Clear Channel does not state with particularity what it contends New Rochelle is "attempting to enforce". Nor does Clear Channel indicate, unsurprisingly, that it is somehow in default, a necessary prerequisite to New Rochelle turning to Paragraph 17. (*See Id.*) Once again, and as stated by New Rochelle, "Clear Channel conflate[s] the . . . authority of the City to remove billboards through its regulations . . . to some nebulous violation of the Stipulation." (NR Opp. p.7).

The Court DENIES Clear Channel's motion for summary judgment to the extent it is premised on alleged breaches of Stipulation Paragraph 17.

### b. Motion to Compel Compliance with the Stipulation – Count XI

Given the Court has not found that New Rochelle has breached the Stipulation under any of Clear Channel's proffered bases, it DENIES Clear Channel's motion to compel compliance with the stipulation as moot.

### CONCLUSION

Clear Channel's motion for summary judgment is GRANTED, in part, and DENIED, in part. New Rochelle's cross-motion for summary judgment is also GRANTED, in part, and DENIED, in part.

The Court DENIES Clear Channel's motion for summary judgment with respect to Counts I, V, VI, X, and XI. Consequently, the Court GRANTS New Rochelle's cross-motion with respect to Counts I, V, VI, X, and XI. The Court also DENIES New Rochelle's motion that equitable defenses preclude Clear Channel from bringing this action.

The Court also declines to exercise its permissive jurisdiction under the Declaratory Judgment Act over Counts III, IV, and VIII.

The Court GRANTS Clear Channel's motion with respect to Counts II and VII, and, accordingly, denies New Rochelle's cross-motion with respect to Counts II and VII. Further, New Rochelle is ENJOINED from removing any of Clear Channel's billboards within the City limits without just compensation and procedure in accordance with New York State's Eminent Domain Procedure Law.

Clear Channel's Count XII remains outstanding and, accordingly, a telephonic Pretrial Conference is scheduled for June 13, 2024 at 11:45am. To access the teleconference, please follow these directions: (1) Dial the Meeting Number: (877) 336-1839; (2) Enter the Access Code: 1231334 #; (3) Press pound (#) to enter the teleconference as a guest. The Clerk of Court is directed to terminate the motions at ECF Nos. 209 and 217.

Dated: May 7, 2024                                      SO ORDERED:
White Plains, New York

_____
NELSON S. ROMÁN
United States District Judge