**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CLEAR CHANNEL OUTDOOR, LLC, <br><br>          *Plaintiff*, <br><br>    v. <br><br> CITY OF NEW ROCHELLE; ADAM SALGADO, *in his official capacity as Commissioner of Development*; *and* PAUL VACCA, *in his official capacity as Building Official*, <br><br>          *Defendants*. | Case No. 7:20-cv-9296 (NSR) (AEK) |

**CLEAR CHANNEL OUTDOOR, LLC'S MEMORANDUM OF LAW
<u>IN SUPPORT OF ITS MOTION FOR ATTORNEY'S FEES, EXPENSES, AND COSTS</u>**

Gordon D. Todd
Daniel J. Hay
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Tel.: (202) 736-8000
Fax: (202) 736-8711
gtodd@sidley.com
dhay@sidley.com

*Counsel for Clear Channel Outdoor, LLC*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 3

ARGUMENT ....................................................................................................................... 4

    I.      CLEAR CHANNEL IS A PREVAILING PARTY .......................................... 5

    II.     CLEAR CHANNEL IS ENTITLED TO THE REQUESTED ATTORNEY'S
         FEES. ............................................................................................................... 6

         A.      Lodestar Method ............................................................................. 7

         B.      The Requested Hourly Rates Are Reasonable. ................................ 8

         C.      Requested Hours are Conservative and Reasonably Expended ..................... 14

         D.      Clear Channel Is Entitled to Attorneys Fees of $3,088,470.00 ...................... 18

    III.    CLEAR CHANNEL IS ALSO ENTITLED TO COSTS AND EXPENSES ............. 18

CONCLUSION ................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*An v. Despins*,
   2024 WL 1157281 (S.D.N.Y. Mar. 18, 2024) ........................................................................11

*Angelo, Gordon & Co. v. MTE Holdings, LLC*,
   2021 WL 1353756 (S.D.N.Y. Apr. 12, 2021)..........................................................................11

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*,
   522 F.3d 182 (2d Cir. 2008)..................................................................................................7, 8

*Blum v. Stenson*,
   465 U.S. 886 (1984)...............................................................................................................8, 9

*Bobulinski v. Tarlov*,
   2025 WL 872178 (S.D.N.Y. Mar. 20, 2025) ....................................................................11, 12

*Chambliss v. Masters, Mates & Pilots Pension Plan*,
   885 F.2d 1053 (2d. Cir. 1989)....................................................................................................9

*Diplomatic Man, Inc. v. Nike, Inc.*,
   2009 WL 935674 (S.D.N.Y. Apr. 7, 2009).........................................................................9, 14

*Farrar v. Hobby*,
   506 U.S. 103 (1992).....................................................................................................................5

*Fox v. Vice*,
   563 U.S. 826 (2011)...............................................................................................................7, 15

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)..................................................................................................4, 5, 6, 14

*Imbeault v. Rick's Cabaret Int'l Inc.*,
   2009 WL 2482134 (S.D.N.Y. Aug. 13, 2009) ........................................................................15

*J.P. v. N.Y. City Dep't of Educ.*,
   2023 WL 2447264 (S.D.N.Y. Mar. 10, 2023) ..................................................................11, 12

*Johnson v. Ga. Highway Express Inc.*,
   488 F.2d 714 (5th Cir. 1974) .....................................................................................................7

*Knick v. Twp. of Scott*,
   588 U.S. 180 (2019)..............................................................................................................4, 10

*Kortright Cap. Partners LP v. Investcorp Inv. Advisers Ltd.*,
    392 F. Supp. 3d 382 (S.D.N.Y. 2019) ......................................................................................11

*Kuzma v. IRS*,
    821 F.2d 930 (2d Cir. 1987) .................................................................................................19

*LeBlanc-Sternberg v. Fletcher*,
    143 F.3d 748 (2d Cir. 1998) ........................................................................................5, 6, 9, 13

*Lilly v. City of New York*,
    934 F.3d 222 (2d Cir. 2019) ...............................................................................................8, 17

*Makinen v. City of New York*,
    2016 WL 1451543 (S.D.N.Y. Apr. 12, 2016) .......................................................................19

*Match Grp., LLC v. Beazley Underwriting Ltd.*,
    No. 22 Civ. 4629 (LGS) (SLC), 2023 WL 9603886 (S.D.N.Y. Dec. 21, 2023) ....................19

*Millea v. Metro-North R.R.*,
    658 F.3d 154 (2d Cir. 2011) .........................................................................................7, 8, 17

*Nnebe v. Daus*,
    2022 WL 612967 (S.D.N.Y. Mar. 1, 2022) .............................................................................8

*Palmco Admin., LLC v. Flower Payment, Inc.*,
    2025 WL 727413 (S.D.N.Y. Mar. 6, 2025) ...........................................................................15

*Simmons v. N.Y.C. Transit Auth.*,
    575 F.3d 170 (2d Cir. 2009) ................................................................................................8, 9

*Singh v. Meadow Hill Mobile Inc.*,
    2021 WL 3862665 (S.D.N.Y. Aug. 29, 2021) .......................................................................15

*Tatum v. City of New York*,
    No. 06–cv–4290 (PGG)(GWG), 2010 WL 334975 (S.D.N.Y. Jan. 28, 2010) .......................19

*Tessemae's LLC v. Atlantis Cap. LLC*,
    2019 WL 2635956 (S.D.N.Y. June 27, 2019) .......................................................................12

*Tex. State Teachers Ass'n. v. Garland Indep. Sch. Dist.*,
    489 U.S. 782 (1989) ............................................................................................................4, 5

*Themis Cap. v. Democratic Republic of Congo*,
    2014 WL 4379100 (S.D.N.Y. Sept. 4, 2014) ........................................................................10

*Torcivia v. Suffolk Cnty.*,
    437 F. Supp. 3d 239 (E.D.N.Y. 2020) ..................................................................................19

*Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. Vision Constr. &*
  *Installation, Inc.*,
  2024 WL 2963729 (S.D.N.Y. June 12, 2024) .........................................................13

*Vista Outdoor Inc. v. Reeves Fam. Tr.*,
  2018 WL 3104631 (S.D.N.Y. May 24, 2018) .......................................................11

*Wells Fargo Bank, NA v. Konover*,
  2014 WL 3908596 (D. Conn. Aug. 8, 2014), *aff'd sub nom. Wells Fargo Bank,*
  *N.A. v. Konover Dev. Corp.*, 630 F. App'x 46 (2d Cir. 2015)............................................9, 14

*Wells Fargo Tr. Co., N.A. v. Fast Colom. S.A.S.*,
  2023 WL 8591953 (S.D.N.Y. Oct. 16, 2023), *report and recommendation*
  *adopted*, 2023 WL 8433128 (S.D.N.Y. Dec. 5, 2023) .......................................9, 11

**Statute**

42 U.S.C. § 1988..........................................................................................................4

## INTRODUCTION

In this protracted and costly litigation, Plaintiff Clear Channel Outdoor ("Clear Channel") successfully challenged an unlawful order by Defendants (collectively, "New Rochelle" or the "City") requiring Clear Channel to remove sixteen valuable billboards along and near the I-95 corridor to make way for a competing company, preferred by the City, to take over those locations at no charge. Clear Channel filed suit to vindicate its federal constitutional rights against this plainly unlawful taking of property. But for this lawsuit and Clear Channel's hard-fought victory, Clear Channel would have been forced to remove its billboards without just compensation—an outcome this Court found would have violated the Fifth Amendment.

At every stage, the City had a complete remedy to end this litigation: withdraw its illegal removal order and initiate the constitutionally mandated process for taking private property. The City, nonetheless, persisted in its illegal taking, demanding that Clear Channel remove its property or else face crippling financial penalties. Thus, every dollar Clear Channel expended in this action is attributable to Defendants' commitment to their unconstitutional order. The City agreed to temporarily stay its hand only once it became clear that this Court would enter a preliminary injunction, but was adamant that only a permanent injunction from this Court would deter it from its illegal taking. In May 2024, this Court agreed with Clear Channel, granting summary judgment in favor of Clear Channel on its cause of action under 42 U.S.C. § 1983 and permanently enjoining the City from proceeding with an unconstitutional, uncompensated taking of Clear Channel's property. Accordingly, Clear Channel is now entitled to recover its reasonable attorney's fees, costs, and expenses under 42 U.S.C. § 1983.

Clear Channel is undoubtedly a prevailing party. Through the Court's entry of a permanent injunction, Clear Channel obtained all of the relief it sought in this case—a binding judicial order confirming its right to continue using its valuable property. And it achieved this outcome in the

face of unrelating delay and obstruction from the City. From the very outset of the case, Clear Channel was clear that no litigation would be necessary if the City simply withdrew its demand for the removal of Clear Channel's property without compensation. *E.g.*, ECF No. 10-3. Rather than voluntarily conform its conduct to what the Constitution requires, the City subjected Clear Channel to over four years of drawn-out litigation. At every stage—on its motion for a preliminary injunction, motion for partial summary judgment, motion for summary judgment, and nine disputes over the Defendants' discovery violations—Clear Channel prevailed. Achieving success in the face of this resistance required in-depth counseling on highly complex constitutional and commercial legal issues that warrants award of attorney's fees.

The fees and hours for which Clear Channel seeks compensation are also reasonable. As detailed below and in the accompany affidavits, Clear Channel seeks hourly rates between $250 for paralegals and $1,400 for senior partners. These rates are significantly below counsels' standard rates for work in this District as well as below the rates counsel actually charges Clear Channel for this matter, and are also well in line with the rates that have been awarded in similar commercial and constitutional cases. Likewise, Clear Channel throughout the life of this case appropriately staffed this matter, using less senior lawyers where appropriate, and has voluntarily written off hundreds of hours from lawyers who, for example, were not part of the core litigation team or were second chairing a hearing or a deposition. These voluntary write offs, along with the overall billing judgment exercised and the reasonable rate requested, more than satisfy the requirement for the award of fees in a case like this. Finally, the expenses Clear Channel incurred are reasonable and the proper subject of a § 1988 application.

Accordingly, Clear Channel respectfully requests that the Court grant Clear Channel's application for $3,088,470.00 in reasonable attorney's fees and $150,302.79 in expenses.

## BACKGROUND

Given the Court's detailed ruling on summary judgment, ECF No. 254, Clear Channel presumes familiarity with the facts of this case and offers only a summary background section for context.

In September 2020, the City ordered Clear Channel to remove its billboards and terminate its lease agreements in New Rochelle without a hearing or just compensation. Clear Channel subsequently retained Sidley Austin as legal counsel. Sidley Austin has represented Clear Channel in dozens of matters in federal and state courts across the country and is very familiar with the billboard industry and the sorts of constitutional and statutory claims at issue here, making Sidley a logical and efficient choice of counsel. *See* Decl. of Gordon D. Todd ("Todd Decl.") ¶ 3. When the City refused to abandon or at least forestall its threat, Clear Channel commenced this action against the City of New Rochelle and several City officials on November 5, 2020. ECF Nos. 1, 8. Clear Channel moved for a preliminary injunction to prevent New Rochelle's forced removal of the billboards, asserting claims under the U.S. Constitution, N. Y. High. Law § 88, and New York's Eminent Domain Law, as well as common law contract and tort claims. *Id.*

The Court held a hearing on Clear Channel's preliminary injunction motion on January 14, 2021. Following the hearing, and at the Court's urging, New Rochelle agreed to forebear any action to force the removal of Clear Channel's billboards until the Court entered final judgment. ECF No. 43. Given the urgency of this matter, Clear Channel insisted upon the City's agreement that the case proceed on an "expedited … litigation schedule." *Id.* at 1; *see also* ECF No. 45 (initial scheduling order setting October 1, 2021 deadline for close of discovery).[1]

---

[1] Unfortunately, the City's failure to provide complete and timely discovery dragged this case out far longer than the original, agreed-upon schedule. *See* ECF No. 156 (Sixth Amended Scheduling Order).

On October 20, 2022, this Court entered partial summary judgment in favor of Plaintiffs on Count IX of Clear Channel's Complaint to the extent it sought a declaratory judgment that New Rochelle Code § 270-16 does not apply to any billboard erected after March 20, 2001. ECF No. 190; *see also* ECF No. 200 (order denying the City's motion to reconsider that ruling).  The parties then proceeded to summary judgment, and the Court granted summary judgment to Clear Channel on its claims arising under the Takings Clause and the New York State Highway Law.  ECF No. 254.  The Court also resolved some other claims seeking overlapping relief in favor of the City, while declining to resolve certain other claims asserted under the Declaratory Judgment Act.  *Id.* The Court entered final judgment in this case on March 21, 2025.  ECF Nos. 265, 266.

## ARGUMENT

Under 42 U.S.C. § 1988, a "prevailing party" in certain civil rights actions, including claims brought under § 1983, may seek "a reasonable attorney's fee."  42 U.S.C. § 1988(b).  The purpose of 42 U.S.C. § 1988 is "to ensure effective access to the judicial process for persons with civil rights grievances." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).  This encompasses civil rights claims alleging unconstitutional takings the Fifth Amendment. *See Knick v. Twp. of Scott*, 588 U.S. 180, 202 (2019) (holding that property owner may bring a § 1983 claim upon the government violating the Takings Clause of the Fifth Amendment).

Clear Channel is entitled to its fees under § 1988 because it is the prevailing party in a § 1983 action—specifically, a claim asserting that New Rochelle's billboard removal order attempted to deprive Clear Channel of its property without just compensation, in violation of the Fifth Amendment—and secured an injunction against that unconstitutional taking.  This is the precise relief Clear Channel has been seeking since before it even filed its complaint, and it obtained that outcome in full.

I.      **Clear Channel Is a Prevailing Party.**

A plaintiff is a "prevailing party" under § 1988 if it "succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *Tex. State Teachers Ass'n. v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 789 (1989).  This means that "a plaintiff prevails when actual relief on the merits of his claim *materially alters the legal relationship between the parties* by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111 (1992) (emphasis added).  This standard is generous, and a prevailing plaintiff should recover unless "special circumstances" would "render such an award unjust." *Hensley,* 461 U.S. at 429 (quoting S. Rep. No. 94–1011, at 4, 1976 U.S.C.C.A.N. 5908, 5912).

Here, Clear Channel not only prevailed on some significant issue; it prevailed at every stage of this litigation and on the ultimate relief it sought:  the City agreed to a voluntary forbearance to avoid entry of a preliminary injunction; Clear Channel overcame the City's repeated, unjustified refusal to meet its discovery obligations; and Clear Channel obtained relief on both its motion for partial summary judgment and its motion for summary judgment.  And in particular, as relevant to the § 1988 analysis, Clear Channel prevailed on its Fifth Amendment claim, obtaining a permanent injunction against the City from "removing or ordering the removal of any billboard owned by Clear Channel Outdoor within the City of New Rochelle without just compensation and procedure in accordance with New York's Eminent Domain Procedure Law." ECF No. 266.  This is not just "some of the benefit" Clear Channel sought from its § 1983 claim; it is *everything* Clear Channel could have hoped for.  *See Tex. State Teachers Ass'n.,* 489 U.S. at 789.  The Court's injunction has altered the legal relationship between Clear Channel and the City, as it confirms that Clear Channel has a vested, constitutionally protected right to operate its

billboards unless and until the City completes a taking procedure and actually pays Clear Channel just compensation.

A prevailing party is entitled to a fee award upon showing "substantial success" in the litigation, and injunctive relief amounts to substantial success when it "remove[s] a substantial threat of … interference." *LeBlanc-Sternberg v. Fletcher,* 143 F.3d 748, 759 (2d Cir. 1998). That Clear Channel prevailed on some additional non-constitutional claims and the City prevailed on others is irrelevant to the prevailing-party analysis, because those claims were based on the same nucleus of facts and sought the same or even lesser remedies than the permanent injunction Clear Channel ultimately obtained. When a plaintiff succeeds on fewer than all claims, a full fee award is warranted when "the failed claim was intertwined with the claims on which" the plaintiff succeeded. *Id.* at 762. Stated differently, fees should not be reduced unless the unsuccessful claims were "unrelated" or "based on different facts and legal theories." *Id.* Here, all of Clear Channel's claims challenged the City's unlawful demand for Clear Channel to remove its billboards, and all involved a common nucleus of facts and discovery. Clear Channel sought primarily the very injunctive relief it sought, and it further sought damages and other remedies as a contingency in the event the City successfully forced the removal of Clear Channel's billboards. Given the "significance of the overall relief obtained by the plaintiff," a full award is warranted by Clear Channel obtaining the complete relief it sought when it first filed this lawsuit. *See Hensley,* 461 U.S. at 435.

## II.    Clear Channel Is Entitled to the Requested Attorney's Fees.

Clear Channel is entitled to its requested fees of $3,088,470.00. Over the course of more than four years, Sidley Austin attorneys and support staff spent roughly 3,800 hours litigating this case against New Rochelle—hundreds if not thousands of which were attributable to New Rochelle's discovery non-compliance, and all of which were caused by the City's attempted,

unconstitutional taking.  At the firm's standard 2025 billing rates,[2] this would amount to over $4.1 million in fees.  Thus, Clear Channel is already seeking less than 75% of its full measure of fees. This is because this petition seeks hourly rates substantially below Sidley's standard rates, but comfortably in line with the rates awarded in comparable commercial and constitutional cases. Additionally, Clear Channel has written off over two hundred hours from its fee request, such as time billed by second chairs to hearings and argument or by attorneys who were not part of the core litigation team.  This is more than enough to demonstrate that Clear Channel's requested fees are reasonable.  In evaluating attorney's fee awards, "trial courts need not, and indeed should not, become green-eyeshade accountants.  The essential goal in shifting fees (to either party) is to do rough justice." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

A.    **Lodestar Method**

The Second Circuit awards attorney's fees according to the "presumptively reasonable fee," which begins by calculating the lodestar, or "the product of a reasonable hourly rate and the reasonable number of hours required by the case."  *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).  In determining a reasonable hourly rate, the court should take into account "all case-specific variables."  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 189–90 (2d Cir. 2008).  District courts further assess the reasonableness of the requested hourly rate by considering the factors from *Johnson v. Ga. Highway Express Inc.*, 488 F.2d 714 (5th Cir. 1974).[3]

---

[2] As explained below (at 8), the law of the Circuit requires applying counsel's current billing rate, rather the rate in effect at the time the fees were incurred.

[3] The *Johnson* factors are:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the

*(continued on next page)*

The court then multiplies that hourly rate by the "number of hours reasonably expended" to arrive at a lodestar rate. *Nnebe v. Daus*, 2022 WL 612967, at *3 (S.D.N.Y. Mar. 1, 2022). Once this "presumptively reasonable fee" is calculated, the court may, in "extraordinary circumstances," adjust the fee if it neglects to consider a factor that "may properly be considered in determining a reasonable fee." *Millea*, 658 F.3d at 167. Such adjustment occurs only in "rare circumstances" because the lodestar figure includes "most, if not all, of the relevant factors" constituting a reasonable fee. *Id.* Indeed, the Second Circuit has found it "inappropriate for a district court to increase or decrease the lodestar figure on [the *Johnson*] factors because they are already accounted for in calculating the reasonable hourly rate or reasonable hours billed to determine the lodestar." *Lilly v. City of New York*, 934 F.3d 222, 228 (2d Cir. 2019).

## B. The Requested Hourly Rates Are Reasonable.

An attorney's fee award should be calculated based on the "prevailing market rates" in the "relevant community." *Blum v. Stenson*, 465 U.S. 886, 889 (1984). In this Circuit, the "relevant community" is the judicial district, and not the county where the Court sits. *See, e.g.*, *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009); *Arbor Hill*, 522 F.3d at 190. Thus here, the relevant community includes the entire Southern District of New York, including Manhattan, where Sidley's New York office is located. Fees should be aligned with those in the community "for similar services by lawyers of reasonably comparable skill, experience, and reputation."

---

preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Lilly v. City of New York*, 934 F.3d 222, 228 (2d Cir. 2019).

*Chambliss v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053, 1058–59 (2d. Cir. 1989) (citation omitted); *Blum*, 465 U.S. at 895 n.11. Courts look to current rates to compensate for delay in payment, rather than the rate the year the services were rendered. *See, e.g.*, *LeBlanc-Sternberg,* 143 F.3d at 764; *Wells Fargo Tr. Co., N.A. v. Fast Colom. S.A.S.,* 2023 WL 8591953, at *6–9 (S.D.N.Y. Oct. 16, 2023).

Ultimately, this fee "boils down to" what a "reasonable, paying client would be willing to pay." *Simmons*, 575 F.3d at 174. Here, the Court need not speculate about what a reasonable client would pay for a matter of this kind, because Clear Channel *has paid* substantially more than it seeks here in fees. That Clear Channel, "a sophisticated business client, has paid these bills presumably after careful review by its [in-house legal counsel] is *prima facie* evidence of the reasonableness of the amount as a whole." *Diplomatic Man, Inc. v. Nike, Inc.*, 2009 WL 935674, at *6 (S.D.N.Y. Apr. 7, 2009); *accord, e.g.*, *Wells Fargo Bank, NA v. Konover*, 2014 WL 3908596, at *6 (D. Conn. Aug. 8, 2014) ("[W]hen a sophisticated client pays attorneys' fees that it does not know it will necessarily recover, the rate paid is presumptively reasonable."), *aff'd sub nom. Wells Fargo Bank, N.A. v. Konover Dev. Corp.*, 630 F. App'x 46 (2d Cir. 2015).

Based upon its review of similar cases in this District, Clear Channel requests the Court award fees at the following hourly rates:

- **Senior Partners:** $1,400

- **Junior Partners:** $1,150

- **Senior Associates:** $750

- **Mid-level/Junior Associates**: $600

- **Paralegals:** $250

Numerous factors below confirm that these rates are reasonable for work of this kind in this District, and have been awarded in other complex cases in this District.  Moreover, these rates are as much as nearly 60% below the rates Sidley Austin actually charges, including to Clear Channel in this and dozens of other matters.  *See infra* 14.

> **Amount in Controversy and Amount Obtained.**  Clear Channel's counsel obtained exceptional results in this case—indeed, Clear Channel obtained the best case scenario it could have hoped for when it brought this action.  Clear Channel filed this lawsuit with one goal in mind: to retain ownership of its valuable billboards.  It did so knowing that "equitable relief is generally unavailable" in takings cases.  *See Knick*, 588 U.S. at 201.  To obtain this exceptional and extraordinary result required Clear Channel to prevail on disputed questions of first impression involving constitutional and New York statutory law, as well as reconstructing the purpose of and consideration exchanged in a nearly quarter-century-old contract, all to demonstrate that this is the rare case where an injunction, as opposed to damages, was available to remedy an unconstitutional taking.  The stakes here, also, were significant.  Expert appraisers hired by both sides agreed the billboards were worth between $12 and $14.8 million dollars as of December 31, 2020—and no doubt millions more today with inflation.  *See* Pl.'s Mot. for Summ. J. Exs. 28, 29 (filed under seal at ECF No. 215).  And as further detailed in connection with Clear Channel's motion for a preliminary injunction, the business and strategic value of these signs far exceeds their dollar value.  *E.g.*, ECF No. 9 ¶¶6, 10, 24–27.

> **Fee Awards in Similar Cases.**  The rates Clear Channel seeks are also well within the reasonable rates awarded in similar cases in this District.

As Judge Engelmayer recognized nearly a decade ago, "partner billing rates in excess of $1,000 an hour[ ] are by now not uncommon in the context of complex commercial litigation."

*Themis Cap. v. Democratic Republic of Congo*, 2014 WL 4379100, at *7 (S.D.N.Y. Sept. 4, 2014). More recently, courts in this District have awarded partner rates for similar firms in similarly complex cases rates comparable or greater than the $1,150–$1,400 per hour Clear Channel seeks for partners in this action. *See, e.g.*, *An v. Despins*, 2024 WL 1157281, at *2 (S.D.N.Y. Mar. 18, 2024) ($1,760 and $1,440 for Davis Polk partners), *appeal dismissed*, 2024 WL 4524742 (Aug. 13, 2024); *Vista Outdoor Inc. v. Reeves Fam. Tr.*, 2018 WL 3104631, at *6 (S.D.N.Y. May 24, 2018) ($1,170 to $1,260 for partners at Gibson Dunn); *Wells Fargo,* 2023 WL 8591953, at *6–9 ($1,400 for White & Case's lead partner, $1,000 for lower-level partners), *report and recommendation adopted*, 2023 WL 8433128 (S.D.N.Y. Dec. 5, 2023); *Bobulinski v. Tarlov*, 2025 WL 872178, at *2 (S.D.N.Y. Mar. 20, 2025) ($1,338.75 for lead partner and $807.50 for junior partner at Torridon Law in complex commercial dispute); *Kortright Cap. Partners LP v. Investcorp Inv. Advisers Ltd.*, 392 F. Supp. 3d 382, 407 (S.D.N.Y. 2019) ($1,200 for partners at Cadwalader).

Clear Channel's requested rates of $600–$750 for associates and $250 for paralegals is also in line with rates awarded in this District in recent years in comparable cases. *See, e.g.*, *Angelo, Gordon & Co. v. MTE Holdings, LLC*, 2021 WL 1353756, at *3 (S.D.N.Y. Apr. 12, 2021) (approving rate of $753 for associates); *Wells Fargo Tr. Co., N.A.,* 2023 WL 8591953, at *6–9 ($900 for associates and $400 for legal assistants); *Despins*, 2024 WL 1157281, at *2 ($895 for associates); *Bobulinski*, 2025 WL 872178, at *2 ($637.50–722.50) for associates and $297.50 for paralegal); *Kortright Cap.*, 392 F. Supp. 3d at 407 ($650 for "non-partner level attorneys"). This rate is also less than half the standard rate Sidley charges for these associates' time.

These fees are particularly warranted given the complexity of the case. A case is complex if it "presented novel or complex legal or factual issues." *J.P. v. N.Y.C. Dep't of Educ.*, 2023 WL

2447264, at *10 (S.D.N.Y. Mar. 10, 2023).  This case presented complex commercial and constitutional issues, as well as previously unresolved questions of state and local statutory interpretation.  It involved multiple overlapping constitutional questions and numerous state and local statutes. Attorneys carefully developed arguments to rebut a laches and estoppel affirmative defense, establish the purpose of a contested contract, and address land use and zoning laws. The City, like Clear Channel, retained experienced outside counsel to defend it, who vigorously defended this case at every stage.  This, in other words, is not a case "with only a single issue unresolved at the time of the due process hearing" where defendant "agreed to most of [p]laintiff's requests before the [decision] was issued."  *Id.* at *5.

**Qualifications and Experience of Counsel.**  Courts also consider the qualifications and experience of counsel in determining an appropriate fee. *Tessemae's LLC v. Atlantis Cap. LLC,* 2019 WL 2635956, at *3 (S.D.N.Y. June 27, 2019) (citing *Arbor Hill,* 522 F.3d at 186 n.3).  This makes sense, as the qualifications and experience of counsel are frequently the *decisive* factor in determining rates in the private market.  Here, Sidley is one of the oldest, largest, and most prestigious law firms in the United States, and the firm generally and the attorneys who worked on this case specifically have extensive experience litigating disputes in the outdoor advertising industry.  The attorneys representing Clear Channel all graduated from top law schools, completed prestigious clerkships, and have substantial experience in trial litigation, outdoor advertising, commercial disputes, and constitutional law.  A brief summary of counsel's experience is provided below, and firm biographies for those still in private practice are attached as Exhibit 5.

- **Gordon Todd** is a Sidley senior partner and co-leader of Sidley's Regulatory Litigation practice group, and has tried dozens of cases to judges and juries.  Mr. Todd clerked for judges of the U.S. Supreme Court and the U.S. Court of Appeals for the Eighth Circuit.  Mr. Todd also held several positions in the U.S. Department of Justice:  as Counsel to the Assistant Attorney General for Civil Rights, Special Counsel for Supreme Court Nominations, and Deputy Associate Attorney General.  Mr. Todd

graduated from Princeton University (cum laude) and the University of Virginia School of Law (Order of the Coif). These are qualifications similar to those that Judge Oetken recently described as "one of the most impressive resumes a litigator could have." *Bobulinski*, 2025 WL 872178, at *2.

- **David Rody** was a senior partner at Sidley. Mr. Rody joined the firm after twelve years as an Assistant United States Attorney in this District, where he prosecuted organized crime and terrorism. At Sidley, he litigated complex commercial litigation and white collar matters as a partner for 11 years. Mr. Rody clerked for judges of the Southern District of New York and Second Circuit, after graduating from the University of Chicago Law School. Mr. Rody departed Sidley in 2022 to serve as Deputy Assistant Attorney General for the Criminal Division within the U.S. Department of Justice, and is now a partner at Zuckerman Spaeder LLP.

- **Daniel Hay** is a junior partner at Sidley,[4] where he has litigated complex commercial cases for eight and a half years. Before Sidley, Mr. Hay clerked for a judge on the U.S. Court of Appeals for the Eighth Circuit. Mr. Hay is a graduate of Vanderbilt University Law School (Order of the Coif), where he served as editor in chief of the *Vanderbilt Law Review*.

- **Laura Craig** was a Sidley senior associate. Ms. Craig clerked at the United States District Court for the Eastern District of Pennsylvania before joining the firm, where she litigated commercial cases for multiple years. Ms. Craig graduated from the George Washington University Law School (Order of the Coif and Highest Honors). Ms. Craig departed Sidley in 2025 to serve as Corporate Counsel at Amazon.com.

- **Mackenzi Ehrett** is a mid-level associate at Sidley, where she has been litigating commercial cases for a total of over six years. Ms. Ehrett previously served as Deputy Associate Counsel to the President in the Office of the White House Counsel. Ms. Ehrett graduated magna cum laude from George Mason University Antonin Scalia Law School.

- **Lauri A. Bonacorsi** was a junior associate at Sidley, and graduated from Northwestern University School of Law (Order of the Coif) before joining Sidley. Ms. Bonacorsi departed Sidley in 2023 to begin clerkships for U.S. District Court and Circuit Court judges.

---

[4] Mr. Hay was promoted to partner at Sidley on January 1, 2025. Because Circuit law awards fees based on current rates, *see LeBlanc-Sternberg,* 143 F.3d at 764, Clear Channel seeks fees for Mr. Hay's work comparable to those charged by junior partners. Moreover, Mr. Hay played a day-to-day managing role throughout the matter, serving effectively as a junior partner, particularly following Mr. Rody's departure.

*Actual Rates Charged.* In setting an appropriate fee, the Court's goal is to determine what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Tr. of N.Y.C. Dist. Council of Carpenters Pension Fund,,* 2024 WL 2963729, at *4 (S.D.N.Y. June 12, 2024).

Here, the fees Clear Channel seeks should begin with a presumption of reasonableness because Clear Channel—a sophisticated client that engages firms of all sizes in a variety of litigation matters—*did* agree to pay rates substantially higher than what it seeks to recover here. *See Diplomatic Man*, 2009 WL 935674, at *6; *Wells Fargo Bank*, 2014 WL 3908596, at *6.  In fact, as the chart below demonstrates, the rates Clear Channel seeks here are between 28.2% and 59.6% below the market rates Sidley currently charges.

| Name | Position | 2025 Rate[5] | Proposed Rate | Discount |
|---|---|---|---|---|
| Gordon D. Todd | Senior Partner | $1,950 | $1,400 | 28.2% |
| David M. Rody | Senior Partner | $1,950 | $1,400 | 28.2% |
| Daniel J. Hay | Junior Partner | $1,710 | $1,150 | 32.7% |
| Laura Craig | Senior Associate | $1,505 | $750 | 50.1% |
| Mackenzi Ehrett | Mid-Level Associate | $1,485 | $600 | 59.6% |
| Lauri A. Bonacorsi | Junior Associate | $1,265 | $600 | 52.6% |
| | Paralegals | Starting at $370 | $250 | ≥32.4% |

## C.    Requested Hours are Conservative and Reasonably Expended

Once a reasonable hourly rate is determined, the final step is for those rates to be "multiplied by a reasonable number of hours expended to determine the award amount." *T.P. v. N.Y. City Dep't of Educ.,* 2024 WL 986587, at *4 (S.D.N.Y. Mar. 7, 2024).  The court should

---

[5] For attorneys who have departed the firm prior to the filing of this motion, Clear Channel supplies the rates currently charged by attorneys of comparable seniority and experience.

award hours that are "reasonably expended on the litigation" and not "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 433-34 (1983).  At the same time, the hours award need not be precise, as the "goal in shifting fees (to either party) is to do rough justice."  *Fox*, 563 U.S. at 838.

Sidley Austin attorneys and support staff spent 3,798.6 hours litigating this case.  This petition, however, requests fees for only six of its attorneys, plus paralegals.  This is a total of 3,521.8 hours expended by Gordon Todd (457.7), David Rody (152.6), Daniel Hay (842.2), Laura Craig (835.1), Mackenzi Ehrett (206.0) Lauri Bonacorsi (738.7), and paralegals (289.5).  Clear Channel does not seek fees for other attorneys who worked on this matter in more limited capacities, or for the hours spent by summer associates, legal assistants, research librarians, docket clerks, and other support staff who worked on this case.  Clear Channel also does not seek fees for tasks that could be seen as duplicative, such as attorneys second-chairing depositions and court appearances.  While all of those fees would be reasonably sought in this petition, Clear Channel has written them off to provide the Court assurance that this is a conservative, reasonable estimate of time spent litigating the matter.

Clear Channel's counsel also appropriately delegated tasks to more junior (and less expensive) attorneys where appropriate. Indeed, this District has considered doing so to be "a measure of sound billing judgment," *Imbeault v. Rick's Cabaret Int'l Inc.,* 2009 WL 2482134, at *5 (S.D.N.Y. Aug. 13, 2009), and has reduced awards to account for a failure to delegate tasks to junior attorneys and support staff. *Singh v. Meadow Hill Mobile Inc.*, 2021 WL 3862665, at *18 (S.D.N.Y. Aug. 29, 2021).  In fact, Clear Channel's hours leverage in this case—*i.e.*, the ratio of associate hours to partner hours—was a robust 4.3.  *See Palmco Admin., LLC v. Flower Payment,*

*Inc.*, 2025 WL 727413, at \*5 (S.D.N.Y. Mar. 6, 2025) (stating that the ratio of associate to partner/counsel hours "should typically reflect more associate hours than partner/counsel hours").[6]

The total number of hours sought is reasonable for a case of this duration—just over 66 hours per month, or fewer than 800 hours per year over the life of this four-plus-year case, which was aggressively litigated by both sides. Sidley attorneys appeared before the Court twenty times over the course of four years (not including an all-day mediation conference before Judge Krause). The team took six depositions and defended three more. But Sidley did not involve more attorneys than necessary and delegated work to less senior attorneys where appropriate. For example, with the exception of the preliminary injunction hearing (which was appropriately led by the team's lead trial lawyer), all other arguments and court appearances in this case on behalf of Clear Channel were led by or involved the substantial participation of associates. Two Sidley associates (Mr. Hay and Ms. Craig) took three of the six depositions Clear Channel noticed, including the Rule 30(b)(6) deposition of the City of New Rochelle, and defended one of the three depositions noticed by the City. And for those depositions and arguments, while other attorneys reasonably attended and substantially contributed as second chairs, Clear Channel seeks hours only for the attorneys who actually argued motions and took or defended depositions.

These hours are particularly warranted in light of the City's repeated discovery deficiencies. Over the life of the case, Clear Channel had to come before Judge Krause no fewer than nine times to contest the City's dilatory discovery efforts, concerning virtually every stage of discovery. *See* ECF No. 57 (scope of collections and pace of production); ECF No. 62 (motion to

---

[6] As noted above, one of Sidley's partners, Daniel Hay, was an associate for all but the final steps of this case. Clear Channel therefore counts Mr. Hay's hours towards the associate side of the leverage ratio. Mr. Hay's hours account for less than a third of all associate hours on this case, demonstrating that hours were further delegated to less senior associates.

compel responses to Requests for Admission); ECF No. 70 (failure to timely produce documents and respond to interrogatories); ECF No. 79 (gaps in production and collection and improper redactions); ECF No. 81 (deficient privilege log); ECF No. 83 (failure to produce financial documents); ECF No. 93 (custodian gaps and privilege log deficiencies); ECF No. 112 (privilege log deficiencies); ECF No. 132 (interrogatory deficiencies).  Each time, the Court ordered New Rochelle to correct its repeated discovery violations.

In addition, the fees Clear Channel seek are effectively the work for two cases, not one. As the Court is aware, there is a companion case involving another outdoor advertising company, Vector Media, that also owns a billboard in New Rochelle.  Recognizing the inefficiency in having these cases litigated separately, counsel for Clear Channel and Vector entered into a joint defense agreement, with Clear Channel's counsel effectively shouldering all substantive work.  Vector's complaint was substantially verbatim to Clear Channel's; Vector joined all of Clear Channel's substantive filings in this case; and Vector almost entirely relied on the depositions and discovery obtained by Clear Channel.  In other words, but for the efficiency the parties showed in joining efforts and Clear Channel agreeing to shoulder the lion's share of the work (and expense), the fees the City could have been required to pay for losing not one but two federal civil rights claims could have been millions of dollars higher.

District courts may consider "[t]he novelty and complexity of [the] case" in assessing the reasonableness of hours billed to a particular case.  *Millea,* 658 F.3d at 167 (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010)).  This factor also supports the rates sought.  This litigation is not the type of "garden-variety" litigation that requires a baseline amount of expertise. *Lilly*, 934 F.3d at 232.  As discussed, it involved extensive discovery, research, motions drafting,

and appearances in court. Multiple complex issues of state and federal law were presented and highly disputed by parties.[7]

**D.    Clear Channel Is Entitled to Attorneys Fees of $3,088,470.00**

For the reasons described above, Clear Channel respectfully requests that the Court entered a total fee award of $3,088,470.00, based on the following hourly rates and hours expended:

| Name | Rate | Hours | Total |
|------|------|-------|-------|
| Gordon D. Todd | $1,400 | 457.7 | $640,780.00 |
| David M. Rody | $1,400 | 152.6 | $213,640.00 |
| Daniel J. Hay | $1,150 | 842.2 | $968,530.00 |
| Laura Craig | $750 | 835.1 | $626,325.00 |
| Mackenzi Ehrett | $600 | 206.0 | $123,600.00 |
| Lauri A. Bonacorsi | $600 | 738.7 | $443,220.00 |
| Paralegals | $250 | 289.5 | $72,375.00 |
| **Total** | | **3521.8** | **$3,088,470.00** |

**III.    Clear Channel Is Also Entitled to Costs and Expenses.**

Under § 1988, a prevailing party is also entitled to "[i]dentifiable, out-of-pocket disbursements for items such as photocopying, travel, and telephone costs," *Kuzma v. Internal Revenue Service*, 821 F.2d 930, 933-34 (2d Cir. 1987), and "[c]omputerized research expenses" are permitted as part of the costs awarded in addition to the attorney's fee. *Arbor Hill,* 522 F.3d at 98. Here, Clear Channel seeks $150,302.79. These costs and expenses are attributable to:

---

[7] Clear Channel is also entitled to seek "fees on fees"—*i.e.*, the fees associated with bringing and briefing this fee petition. *Lilly*, 934 F.3d at 235;  *Hines v. City of Albany*, 862 F.3d 215, 223 (2d Cir. 2017) ("Prevailing parties under Section 1988 are therefore entitled to recover a reasonable fee for preparing and defending a fee application."). Because Clear Channel's fees on fees will not be clear until the close of briefing, Clear Channel intends to file a short supplement with or shortly following the filing of its reply brief documenting the fees incurred in connection with this application.

- Courier services: $2,061.21

- Court costs and filing fees:  $1,124.00

- Court reporters and deposition transcription fees:  $31,438.13

- Duplication, scanning, OCR, and reprographic costs:  $18,719.13

- E-Discovery Hosting:  $78,846.00

- E-Discovery Technician Time:  $13,222.50

- Process Server: $750.00

- Research: $1,618.00

- Travel:  2,523.82[8]

*See* Ex. C.

These costs are all properly sought in a § 1988 petition.  *See, e.g.*, *Tatum v. City of New York*, No. 06–cv–4290 (PGG)(GWG), 2010 WL 334975, at *13 (S.D.N.Y. Jan. 28, 2010) (awarding costs for filing fees, subpoena fees, exhibit preparation, photocopies, and travel); *Torcivia v. Suffolk Cnty.*, 437 F. Supp. 3d 239, 258 (E.D.N.Y. 2020) (awarding costs for "complaint filing, service of summons and complaint, deposition transcripts, travel expenses, copying costs, and service of trial subpoenas"); *Match Grp., LLC v. Beazley Underwriting Ltd.*, No. 22 Civ. 4629 (LGS) (SLC), 2023 WL 9603886, at *10 (S.D.N.Y. Dec. 21, 2023) ("Several courts in this District have deemed e-discovery vendor costs recoverable"), *report and recommendation adopted*, No. 22 CIV. 4629 (LGS), 2024 WL 863468 (S.D.N.Y. Feb. 29, 2024) (collecting cases); *Vista Outdoor, Inc.*, 2018 WL 3104631, at *10–11 (awarding "$284,599.23 in

---

[8] Clear Channel does not seek fees associated with its out-of-state counsel traveling to White Plains for court hearings.  *Makinen v. City of New York*, 2016 WL 1451543, at *8 (S.D.N.Y. Apr. 12, 2016).  Rather, these travel expenses are limited to the costs associated with deposing two out-of-state witnesses and car service to and from court hearings.

costs paid to its e-discovery vendor"). Further, these costs are all reasonably detailed, properly incurred, and actually paid by Clear Channel.

## **CONCLUSION**

For the reasons set forth above, Clear Channel respectfully requests that this court award reasonable attorney's fees, litigation expenses, and costs as requested.

Dated:  May 23, 2025                                 Respectfully submitted,

/s/ Gordon D. Todd
Gordon D. Todd
Daniel J. Hay
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Tel.: (202) 736-8000
Fax: (202) 736-8711
gtodd@sidley.com
dhay@sidley.com

*Counsel for Clear Channel Outdoor, LLC*